**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 1:20-cv-25144-GAYLES/TORRES**

| | |
|---|---|
| **JETAIRE AEROSPACE, LLC,** | ) |
| | ) |
| **Plaintiff/Counter-Defendant,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **AERSALE, INC.,** | ) |
| | ) |
| **Defendant/Counter-Plaintiff.** | ) |

**AERSALE, INC.'S OPENING CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

I. INTRODUCTION ..... 1

II. LEGAL STANDARDS ..... 1

III. CONSTRUCTION OF DISPUTED CLAIM TERMS ..... 3

A. "thickness dependent upon size and type of aircraft fuel tank" / "thickness in-dependent upon size and type of aircraft fuel tank" (claims 1-3 of the '998 patent") ..... 3

B. "level surface" (claims 1-3 of the '998 patent) ..... 4

C. "proximate a pre-determined starting point of the installation" / "proximate the selected compartment" / "proximate the aft compartment" (claims 1-3 of the '998 patent) ..... 5

D. "FAA-certified fuel gauge calibrating procedures for the aircraft" / "FAA-certified fuel gauge calibrating procedures for the subject aircraft" (claims 1-3 of the '998 patent) ..... 6

E. "performing an inspection of the installed RPF blocks" (claims 1-3 of the '998 patent) ..... 7

F. "emptying and purging the tank" / "emptying and purging all compartments of the fuel tank" / "emptying and purging all compartments of the center wing tank" (claims 1-3 of the '998 patent) ..... 8

G. "each" / "each of" (claims 1-3 of the '998 patent) ..... 9

H. "cutout(s)" (All Asserted Claims of the '998, '109, and '541 patents) ..... 10

I. "verifying the [fuel] tank's maximum fuel quantity" / "verifying a quantity of the fuel in the fuel tank" (claims 1-3 of the '998 patent; claims 1-14 and 21 of the '109 patent) ..... 11

J. "channel void to reduce weight" (All Asserted Claims of the '109 patent; claims 5 and 18 of the '541 patent) ..... 12

K. "determining interior dimensions of the fuel tank" (claims 1-14 of the '109 patent) ..... 13

L. "providing a bulk quantity of foam material" (All Asserted Claims of the '109 patent) ....................14

M. "a first foam block among the plurality of foam blocks comprises the upper cutout … a second foam block among the plurality of foam blocks comprises the lower cutout … the first foam block and the second foam block are stacked in a vertically-oriented column within the fuel tank" (All Asserted Claims of the '109 patent) ....................15

N. "the plurality of foam blocks further comprises a third foam block placed between the first foam block and the second foam block in the vertically-oriented column" (All Asserted Claims of the '109 patent) ....................16

O. "at least one foam block among the first plurality of foam blocks comprises an upper cutout in a top surface for clearance around an upper stiffener of the fuel tank, an arcuate cutout in a side surface for clearance around a fuel pump of the fuel tank, and a lower cutout in a bottom surface for clearance around a lower stiffener of the fuel tank" (All Asserted Claims of the '541 patent) 17

P. "flexible foam material" (claims 13-15 of the '541 patent)....................18

IV. CONCLUSION....................19

# TABLE OF AUTHORITIES

**Cases**

*Alcon Research Ltd. v. Barr Labs., Inc.*,
745 F.3d 1180 (Fed. Cir. 2014)....................14

*Ball Metal Beverage Container Corp. v. Crown Packaging Tech., Inc.*,
838 F. App'x 538 (Fed. Cir. 2020) .................... 6-7

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2017)....................5

*Dow Chem. Co. v. Nova Chems. Corp. (Can.)*,
803 F.3d 620 (Fed. Cir. 2015) ....................12

*Eastman Chem. Co. v. BASF Aktiengesellschaft*,
47 F. App'x 566 (Fed. Cir. 2002).................... 7-8

*Edwards Lifesciences LLC v. Cook Inc.*,
582 F.3d 1322 (Fed. Cir. 2009)....................2

*In re Fenofibrate Patent Litig.*,
No. 11 MDL 2241 (JSR), 2011 U.S. Dist. LEXIS 95061
(S.D.N.Y. Aug. 23, 2011) ....................9

*Infinity Computer Prods., Inc. v. Oki Data Ams., Inc.*,
987 F.3d 1053 (Fed. Cir. 2021)....................11

*Interval Licensing LLC v. AOL, Inc.*,
766 F.3d 1364 (Fed. Cir. 2014)....................2, 5, 19

*Liberty Ammunition, Inc. v. United States*,
835 F.3d 1388 (Fed. Cir. 2016)....................19

*Liquid Dynamics Corp. v. Vaughan Co.*,
355 F.3d 1361 (Fed. Cir. 2004).................... 1-2

*MySpace, Inc. v. Graphon Corp.*,
672 F.3d 1250 (Fed. Cir. 2012)....................2, 13

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014)....................2, 7

*In re Neurografix ('360) Patent Litig.*,
201 F. Supp. 3d 206 (D. Mass. 2016) ....................6

*NuVasive, Inc. v. Alphatec Holdings, Inc.*,
No. 3:18-CV-347-CAB-MDD, 2021 U.S. Dist. LEXIS 165000
(S.D. Cal. Aug. 31, 2021) .......... 5-6

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .......... 2

*Process Control Corp. v. HydReclaim Corp.*,
190 F.3d 1350 (Fed. Cir. 1999) .......... 8

*Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*,
No. 09-022-RGA-MPT, 2012 U.S. Dist. LEXIS 128954 (D. Del. Sept. 11, 2012) .......... 11

*ResQNet.com, Inc. v. Lansa, Inc.*,
346 F.3d 1374 (Fed. Cir. 2003) .......... 9

*RideApp, Inc. v. Lyft, Inc.*,
No. 18-CV-07152-JST, 2019 U.S. Dist. LEXIS 226540 (N.D. Cal. Oct. 16, 2019) .......... 6

*SanDisk Corp. v. Memorex Prods., Inc.*,
415 F.3d 1278 (Fed. Cir. 2005) .......... 2

*SIPCO, LLC v. Emerson Elec. Co.*,
794 F. App'x 946 (Fed. Cir. 2019) .......... 8

*In re Skvorecz*,
580 F.3d 1262 (Fed. Cir. 2009) .......... 9

*Spillman v. Murphy*,
No. 16-CV-00437-LJV-JJM, 2016 U.S. Dist. LEXIS 99842
(W.D.N.Y. July 28, 2016) .......... 9

*Symantec Corp. v. Computer Assocs. Int'l, Inc.*,
522 F.3d 1279 (Fed. Cir. 2008) .......... 8

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) .......... 2, 4, 13-14

**Statutes**

35 U.S.C. 112, ¶ 2 .......... 2

## I. INTRODUCTION

Pursuant to the Court's Orders (ECF Nos. 26, 50), Defendant and Counter-Plaintiff AerSale, Inc. ("AerSale") submits this opening claim construction brief for the disputed claim terms of U.S. Patent Nos. 9,849,998 (ECF No. 1-1, "the '998 patent"), 10,633,109 (ECF No. 1-2, "the '109 patent"), and 10,800,541 (ECF No. 1-3, "the '541 patent") (collectively, the "Asserted Patents").

The '998 patent was filed on September 11, 2015. ECF No. 1-1. The '109 patent was filed on November 17, 2017 as a continuation-in-part of the '998 patent, thereby incorporating the specification of the '998 patent. ECF No. 1-2. The '541 patent was filed on October 19, 2018 as a continuation of the '109 patent, thereby incorporating the specifications of the '998 and '109 patents. ECF No. 1-3.

The technology in this case relates generally to foam-based ignition-mitigation inserts for aircraft fuel tanks, a technology that has been known and used for decades. The scope of many of the terms and phrases used in the claims of the Asserted Patents are not reasonably certain and are therefore indefinite. For those claim terms that are not indefinite, the constructions proposed by AerSale are straightforward and supported by the intrinsic evidence. By contrast, Plaintiff Jetaire Aerospace, LLC ("Jetaire") asserts that none of the claim terms below needs any construction, without any explanation as to how or why. Jetaire plainly intends to reveal its interpretation of these claim terms via expert testimony at trial, and not before.

AerSale respectfully requests adoption of its proposed constructions.

## II. LEGAL STANDARDS

This Court is familiar with the basic tenets of claim construction: first, that the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and prosecution history. *Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361,

1367 (Fed. Cir. 2004). Second, that in most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term, making reliance on extrinsic evidence improper. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). Third, that the specification is always highly relevant to the claim construction analysis, and usually is the single best guide to the meaning of a disputed term. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005). Fourth, that "[a]n inventor is entitled to claim in a patent what he has invented, but no more." *MySpace, Inc. v. Graphon Corp.*, 672 F.3d 1250, 1256 (Fed. Cir. 2012). Fifth, where the specification clearly limits the invention to a particular form, the claims should be construed consistently with that limitation. *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1329 (Fed. Cir. 2009). And sixth, when the patentee makes clear and unmistakable prosecution arguments limiting the meaning of a claim term in order to overcome a rejection, courts limit the relevant claim term to exclude the disclaimed matter. *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1286 (Fed. Cir. 2005).

35 U.S.C. 112, ¶ 2 requires that "a patent's claim language, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). Otherwise, there would be a "zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims." *Id.* at 899. The patent claims must provide objective boundaries for those of skill in the art. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370-71 (Fed. Cir. 2014). While some modicum of uncertainty is allowed, a patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them. *Nautilus*, 572 U.S. at 909. Patent claims cannot rely on the "unpredictable vagaries of any one person's opinion." *Interval Licensing LLC*, 766 F.3d at 1376.

## III. CONSTRUCTION OF DISPUTED CLAIM TERMS

### A. "thickness dependent upon size and type of aircraft fuel tank" / "thickness in-dependent upon size and type of aircraft fuel tank" (claims 1-3 of the '998 patent")

| AerSale | Jetaire |
|---|---|
| Indefinite | No construction necessary |

Claims 1 and 3 of the '998 patent recite that the foam sheets to be installed in the aircraft fuel tank comprise "a thickness ***dependent*** upon size and type of aircraft fuel tank." Conversely, Claim 2 of the '998 patent recites that the foam sheets comprise "a thickness ***in-dependent*** upon size and type of aircraft fuel tank." There is only one portion of the '998 patent specification that discusses thickness of the foam sheets, which states: "In preparing for installation of RPF blocks in the center wing tank 112, a plurality of planar sheets of reticulated polyurethane foam (RPF) material is manufactured. Each of said sheets, in the preferred embodiment, generally comprises a thickness 57 of 2.0 inches. However, in general applicability, the thickness is dependent upon the size and type of aircraft fuel tank in which the RPF blocks are to be inserted." '998 patent at 7:44-51. This portion of the specification, while disclosing the mere fact that foam thickness can be dependent upon the size and type of aircraft fuel tank, does not disclose what it means to select a thickness dependent on size/type of fuel tank (i.e. the ***relationship*** between thickness of foam and size/type of fuel tank), let alone how someone would do so in practice. If, for example, a thickness of 2.0 inches is selected for the foam, and a thickness of 2.0 inches would be appropriate for use in any aircraft fuel tank, the specification does not indicate whether that thickness is "dependent" or "independent" of the size and type of aircraft fuel tank.

The "type" of aircraft fuel tank introduces additional uncertainty. Does the "type" of a fuel tank refer to whether the tank is a center tank or a wing tank, or does it refer to whether the tank is

designed to hold diesel or jet fuel, or possibly something else entirely? The ’998 patent offers no guidance as to the distinction or how the thickness of the foam may depend on such distinction.

The distinction between “dependent” and “independent” is important in this case, as Jetaire has asserted that the same accused product of AerSale infringes both Claims 1 and 3 of the ’998 patent (reciting “dependent”) and Claim 2 of the ’998 patent (reciting “independent”). When confronted with the fact that Jetaire is asserting mutually exclusive claim limitations against the same product, Jetaire’s response is “[i]t has to be done one way (‘thickness dependent’) or the other (‘thickness independent’).” ECF No. 64 at 16 n.7. But Jetaire now asserts that neither of these claims terms requires construction, instead wanting to lie-in-wait to reveal its ultimate position on what these terms allegedly mean later in the case. *Vitronics Corp.*, 90 F.3d at 1583 (plaintiff “may not proffer an interpretation for the purposes of litigation that would alter the indisputable public record consisting of the claims, the specification and the prosecution history, and treat the claims as a ‘nose of wax.’”). These contradictory claim terms, read in the context of the ’998 patent, do not provide reasonable certainty as to their scope and are therefore indefinite.

### B. <u>“level surface” (claims 1-3 of the ’998 patent)</u>

| **AerSale** | **Jetaire** |
|---|---|
| Indefinite | No construction necessary |

Claims 1-3 of the ’998 patent all recite the step of “parking the aircraft on a level surface.” But the ’998 patent does not describe what is, or is not, a “level surface.” The specification of the ’998 patent only mentions this term once: “To install the shaped block reticulated polyurethane foam in the center wing tank 112, the aircraft 110 must be positioned on a ***level surface*** and at a convenient height for access to the center wing tank 112.” ’998 patent at 8:26-29 (emphasis added).

How "level" must a "level surface" be for purposes of the '998 patent claims? Is a surface with a single degree of pitch sufficiently level? Two degrees? Or must it be zero and only zero degrees (i.e. completely 100% level)? The '998 patent does not say. When a patent claim uses a word of degree (like "level"), the specification must provide some standard for measuring that degree that the public would understand. *Interval Licensing LLC*, 766 F.3d at 1370-71. *See also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1364 (Fed. Cir. 2017) (finding the term "minimal redundancy" indefinite because the patent lacked objective boundaries for that term). Here, the '998 patent does not provide any guidance, let alone any objective criteria, as to what is, and more importantly is not, a "level surface", in order to provide the required clarity needed to inform the public as to the scope of the patent claims. The term "level surface" is a subjective limitation that fails to inform the public about the scope of the invention with reasonable certainty, and is therefore indefinite.

**C. <u>"proximate a pre-determined starting point of the installation" / "proximate the selected compartment" / "proximate the aft compartment" (claims 1-3 of the '998 patent)</u>**

| AerSale | Jetaire |
|---|---|
| Indefinite | No construction necessary |

Claims 1-3 of the '998 patent all use the term "proximate." Similar to the term "level surface" discussed above, nothing in the '998 patent claims or specification discloses what the limits of "proximate" are or any standard for measuring whether something is, for example, "proximate to the aft compartment" (claim 3). The '998 patent specification does not even use the term "proximate" so it cannot provide any guidance, let alone any objective boundaries, as to what this term means. *See, e.g., NuVasive, Inc. v. Alphatec Holdings, Inc.*, No. 3:18-CV-347-CAB-MDD, 2021 U.S. Dist. LEXIS 165000, at *8-16 (S.D. Cal. Aug. 31, 2021) (holding the claim term

"proximate to the medial plane" indefinite as the patent specification did not provide any standard for determining what is, or is not, "proximate"); *RideApp, Inc. v. Lyft, Inc.*, No. 18-CV-07152-JST, 2019 U.S. Dist. LEXIS 226540, at *35 (N.D. Cal. Oct. 16, 2019) ("proximity" claim term indefinite where "specification is silent on how proximity is to be calculated"); *In re Neurografix ('360) Patent Litig.*, 201 F. Supp. 3d 206, 223 (D. Mass. 2016) (finding "near" indefinite "[b]ecause nothing in the [asserted] patent shed[] light on the limits of proximity required by the" term).

### D. <u>"FAA-certified fuel gauge calibrating procedures for the aircraft" / "FAA-certified fuel gauge calibrating procedures for the subject aircraft" (claims 1-3 of the '998 patent)</u>

| AerSale | Jetaire |
| --- | --- |
| Indefinite | No construction necessary |

Claims 1-3 of the '998 patent each reference "FAA-certified fuel gauge calibrating procedures." However, the '998 patent specification does not disclose ***which*** FAA-certified fuel gauge calibrating procedures are being recited in the claims. FAA procedures and fuel gauge technologies change over time, so it is unclear if the '998 patent claims are infringed if someone uses outdated procedures that were once FAA-certified, or if someone uses procedures that are not yet FAA-certified, but eventually become FAA-certified. It is also unclear what sort of certifications are contemplated by the FAA. For example, are they publicly-known and available certifications as one could conceivably find in an aircraft's maintenance manual? Are they operator-specific certifications granted upon application to the FAA? The '998 patent specification is silent on these points, rendering the claim term indefinite. *See, e.g., Ball Metal Beverage Container Corp. v. Crown Packaging Tech., Inc.*, 838 F. App'x 538, 542-43 (Fed. Cir. 2020) ("Under our case law, then, a claim may be invalid as indefinite when (1) different known

methods exist for calculating a claimed parameter, (2) nothing in the record suggests using one method in particular, and (3) application of the different methods result in materially different outcomes for the claim's scope such that a product or method may infringe the claim under one method but not infringe when employing another method. Such a claim lacks the required degree of precision 'to afford clear notice of what is claimed, thereby apprising the public of what is still open to them.'" (quoting *Nautilus*, 572 U.S. at 909)).

### E. **"performing an inspection of the installed RPF blocks" (claims 1-3 of the '998 patent)**

| AerSale | Jetaire |
|---|---|
| "inspecting each RPF block after all of the RPF blocks have been installed" | No construction necessary |

Claims 1-3 of the '998 patent each recite the step of "performing an inspection of the installed RPF blocks." In each claim, this claim step occurs after claim steps where the "first sequential RPF block" is installed in the fuel tank/compartment, and after claim steps where "each successively-ordered RPF block" is installed in the fuel tank/compartment until "filled" (steps (l) and (m) in Claims 1-3). Thus, the claim language itself dictates that the inspection step is performed after the installation steps are complete, and the claim term "performing an inspection of the installed RPF blocks" means "inspecting each RPF block after all of the RPF blocks have been installed." If Jetaire desired an alternative result, for example that each RPF block would be inspected after it was installed, Jetaire could have drafted its patent claims to cover that scenario (e.g., by claiming "performing an inspection of each installed RPF block upon said RPF block's installation"). Additionally, the claim language states that the "inspection" is of "the installed RPF blocks", not just a subset of such installed RPF blocks. In patent claims "the word 'the' must have an antecedent basis." *Eastman Chem. Co. v. BASF Aktiengesellschaft*, 47 F. App'x 566, 573-74

(Fed. Cir. 2002). That the "installed RPF blocks" referred to in this disputed limitation are the same "RPF blocks" installed until the tank/compartment was "filled" referred to earlier in the claim is reflected in the use of the term "all" in AerSale's proposed construction. If Jetaire had only intended that certain RPF blocks be inspected, it could have drafted its claims to read differently. *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1356-57 (Fed. Cir. 1999) (finding "the discharge rate" is the same as the "a discharge rate" referred to earlier in the claims to avoid "any lack of antecedent basis problem" and despite that the "interpretation results in a nonsensical construction of the claim as a whole" and invalidates the claim). AerSale's proposed construction should be adopted.

### F. "emptying and purging the tank" / "emptying and purging all compartments of the fuel tank" / "emptying and purging all compartments of the center wing tank" (claims 1-3 of the '998 patent)

| AerSale | Jetaire |
|---|---|
| Indefinite | No construction necessary |

Claims 1-3 of the '998 patent each recite steps of "emptying" and "purging" the fuel tank. The '998 patent specification does not disclose what the difference is between "emptying" and "purging" actions. Indeed, the specification does not even mention emptying the fuel tank or purging the fuel tank prior to installing the foam blocks therein. These two terms presumptively have different meanings as they are two different words. *See, e.g., SIPCO, LLC v. Emerson Elec. Co.*, 794 F. App'x 946, 949 (Fed. Cir. 2019) ("Because the patentee chose to use different terms to define the 'receiver address' and the 'scalable address,' we presume that those two terms have different meanings."); *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1289 (Fed. Cir. 2008) ("When construing terms in the body of a claim, the general assumption is that different terms have different meanings."). Even if one were to assume that "emptying" the fuel tank meant

removing all fuel from the fuel tank, it remains unclear what the separate step of "purging" the fuel tank refers to. These terms are therefore indefinite.

**G. "each" / "each of" (claims 1-3 of the '998 patent)**

| AerSale | Jetaire |
|---|---|
| "every" / "every one of" | No construction necessary |

Claims 1-3 of the '998 patent use the terms "each" and "each of" numerous times. *See, e.g.*, Claim 1 ("***each*** cutout confirming to ***each of*** the scaled engineering drawings … placing ***each*** successively-ordered RPF block at its designated location within the fuel tank"); Claim 2 ("rendering a scaled engineering drawing of a vertically-oriented cross-sectional profile at ***each*** measured linear increment in ***each*** compartment … composing instructions for ***each*** compartment"); Claim 3 ("numerically sequencing ***each*** drawing corresponding to a respective drawing location along the measured linear increments … arranging the aggregate of said RPF blocks in a progressive sequence corresponding to the sequence of ***each*** RPF cutout part number for ***each*** of the forward, center, and aft compartments"). When patent claims use a term like "each", courts construe that term to mean "every." *See, e.g., ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1379 (Fed. Cir. 2003) (interpreting "each" as "each (and every)"); *In re Skvorecz*, 580 F.3d 1262, 1267-68 (Fed. Cir. 2009) (interpreting "each wire leg" as "every wire leg"); *In re Fenofibrate Patent Litig.*, No. 11 MDL 2241 (JSR), 2011 U.S. Dist. LEXIS 95061, at *11 (S.D.N.Y. Aug. 23, 2011) (interpreting the term "each granule" as "each and every granule"). *See also Spillman v. Murphy*, No. 16-CV-00437-LJV-JJM, 2016 U.S. Dist. LEXIS 99842, at *4 (W.D.N.Y. July 28, 2016) (interpreting the term "each" in 28 U.S.C. 1446(b)(2)(B) as "every one"). Jetaire asserts that no construction is necessary for this term, but if "each" does not mean "every", then it remains unclear what "each" actually means.

### H. "cutout(s)" (All Asserted Claims of the '998, '109, and '541 patents)

| AerSale | Jetaire |
|---|---|
| Indefinite | No construction necessary |

All asserted claims of the Asserted Patents use the term "cutout." The '998 patent provides irreconcilable descriptions of a "cutout," which leaves the term hopelessly indefinite. The '998 patent explains that "cutouts" are areas of foam excised from a foam block, such as block 51 having cutouts 52, 53, and 54. *See* '998 patent at 6:57-7:5 (referring to "RPF block 51" having "four upper ***cutouts*** 52," "arcuate ***cutout*** 53," and "three ***cutouts*** 54"), FIG. 5. Figure 5 is instructive to demonstrate that block 51 includes several cutouts 52, 53, 54, each of which is an empty space where foam was removed.



FIG. 5

The '998 patent then describes a "cutout" as the foam block itself: "Once the entirety of the aggregate RPF blocks 50 required for the center wing tank 112 have been excised, each ***cutout*** is painted with a part number (P/N) and numerical sequencing corresponding to the sequential placement of each RPF block ***cutout*** along the line of measured increments within each of the forward, center, or aft compartments 131, 132, 133." *Id*. at 8:13-19 (emphasis added). A "cutout" cannot be both a block (that can, for example, be painted with a part number per the language above) and an empty space where foam was removed from a block (that cannot be painted with a part number). Yet, that is exactly what Jetaire appears to have included in the asserted claims. *Compare* '998 patent, claim 1 (reciting "excising an aggregate of ***cutouts*** of RPF blocks from said planar sheets of RPF, each ***cutout*** conforming to each of the scaled engineering drawings, and further, designating each ***cutout*** by a part number, an orientating 'UP' arrow, and an orientating

'FORWARD' arrow) *with* '109 patent, claim 1 (reciting "the plurality of foam blocks comprise an upper ***cutout*** for clearance around an upper stiffener of the fuel tank, an arcuate ***cutout*** for clearance around a fuel pump of the fuel tank, and a lower ***cutout*** for clearance around a lower stiffener of the fuel tank") (emphasis added).

Because the '998 patent presents two different and inconsistent explanations of what a "cutout" is, each having a different scope, one of skill in the art would not have been able to tell with reasonable certainty what scope applies. As such, the term is indefinite. *Infinity Computer Prods., Inc. v. Oki Data Ams., Inc.*, 987 F.3d 1053 (Fed. Cir. 2021) (claim terms "computer" and "passive link" indefinite due to inconsistent positions in the intrinsic evidence). As the '998 patent specification is incorporated by reference into the '109 and '541 patents, the infection has been spread to all of the Asserted Patents, rendering all the asserted claims in the Asserted Patents invalid as indefinite.

**I. "verifying the [fuel] tank's maximum fuel quantity" / "verifying a quantity of the fuel in the fuel tank" (claims 1-3 of the '998 patent; claims 1-14 and 21 of the '109 patent)**

| AerSale | Jetaire |
|---|---|
| Indefinite | No construction necessary |

Claims 1-3 of the '998 patent each recite the step of "verifying" the fuel tank's maximum fuel quantity. Claims 1-14 and 21 of the '109 patent each recite "verifying" a quantity of fuel in the fuel tank. The ordinary meaning of "verifying" is something more than determining or establishing, as it refers to a comparison to establish the correctness of something. *See*, *e.g.*, *Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*, No. 09-022-RGA-MPT, 2012 U.S. Dist. LEXIS 128954, at *67 (D. Del. Sept. 11, 2012) (in construing the disputed term "verifying" in patent claims, "the court believes that 'confirming' more precisely reflects the meaning of 'verifying'

than 'establishing'"). But here the specifications of the both the '998 and '109 patents are silent as to what a fuel quantity is compared to in order to "verify" such a quantity. Is it looking it up in a manual? Reading a gauge in the cockpit? Filling the fuel tank completely full and then measuring how many gallons of fuel there are in the tank? Something else? The patent specifications do not say. This vague verb renders these claim terms indefinite as, without any objective measure provided by the patent specification, the public is left "to consult the unpredictable vagaries of any one person's opinion" to determine whether this verifying step occurred. *Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 803 F.3d 620, 635 (Fed. Cir. 2015).

### J. "channel void to reduce weight" (All Asserted Claims of the '109 patent; claims 5 and 18 of the '541 patent)

| **AerSale** | **Jetaire** |
|---|---|
| Indefinite | No construction necessary |

All asserted claims of the '109 patent, and claims 5 and 18 of the '541 patent, include a requirement that there be a "third foam block" that "comprises at least one channel void to reduce weight." However, neither the '109 patent specification nor the '541 patent specification (which are identical) teach what a "channel void" is or the concept that voids are provided to reduce weight. Neither specification even uses the term "channel void." Instead, the specifications disclose that voids should be minimized, noting "[s]haped block foam pieces are inserted and positioned in a manner to ensure that the required internal tank void is filled and maximum ignition source prevention is achieved." '109 patent, 11:38-41. The specifications also disclose the concept of "planned voiding," but this was for the specific purpose of keeping the foam blocks clear of fuel tank components, not weight reduction. See, e.g., '109 patent, 12:49-57 ("All flexible foam blocks must be kept clear of the tank components such as the fuel ports, fuel probes, float switches, and tank vents. The 'planned' voiding areas around these structures should not exceed

a volume of 10% of the total tank fuel volume and there should be no additional connecting voids between any of the planned void spaces. The minimum space of foam filled area required between the planned void areas is three (3.0) inches if maximum void size is used.").

Thus, the specifications of the '109 and '541 patent teach that voids should be minimized and the only voids should be around certain structures within the aircraft fuel tanks. In light of this disclosure, it remains unclear what the claimed "channel void to reduce weight" means. There is no description in the specifications about such a channel void, no figures in the patent to provide an example of what such a channel void looks like, and no disclosure in the claims themselves that can be used to discern the metes and bounds of this claim term. The claim term is therefore indefinite.

**K. <u>"determining interior dimensions of the fuel tank" (claims 1-14 of the '109 patent)</u>**

| **AerSale** | **Jetaire** |
|---|---|
| "measuring the interior profile of the fuel tank at regularly-spaced increments" | No construction necessary |

Claims 1-14 of the '109 patent require the step of "determining interior dimensions of the fuel tank." With respect to this claim step, the '109 patent specification states: "The profile of the compartment is measured and scaled at regularly-spaced increments along a line extending from a selected wall, tank floor, or the ceiling of the forward compartment 131." '109 patent at 10:8-11. No other portion of the '109 patent specification discloses how to perform this claim step. "An inventor is entitled to claim in a patent what he has invented, but no more." *MySpace, Inc.*, 672 F.3d at 1256. Thus, "determining interior dimensions of the fuel tank" means "measuring the interior profile of the fuel tank at regularly-spaced increments." *Vitronics Corp.*, 90 F.3d at 1582 (the patent specification "is always highly relevant to the claim construction analysis. Usually, it

is dispositive; it is the single best guide to the meaning of a disputed term."). Any broader construction of this claim term would render Claims 1-14 invalid for lack of written description, since the applicant did not disclose any other way to perform this claim step. *See Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1190 (Fed. Cir. 2014) (the "critical inquiry" for the written description analysis is whether the specification provides a description in sufficient detail that a person of ordinary skill in the art would "understand that the inventor was in possession of it [the claimed invention] at the time of filing.").

### L. "providing a bulk quantity of foam material" (All Asserted Claims of the '109 patent)

| **AerSale** | **Jetaire** |
|---|---|
| "manufacturing and delivering a pre-determined quantity of bulk foam material" | No construction necessary |

All asserted claims of the '109 patent require the step of "providing a bulk quantity of foam material." With respect to this claim step, the '109 patent specification discloses "In planning a project for installation of foam blocks in the center wing tank 112, ***the initial process requires the manufacture and delivery of a pre-determined quantity of bulk foam material***. The bulk form generally measure approximately 12'x4'x2'. However, in everyday applicability, the overall dimensions and volumetric quantity of the bulk material is dependent upon the size and contour of the particular type of fuel tank into which the finished sculpted foam pieces are to be inserted." '109 patent at 9:54-62 (emphasis added). No other portion of the '109 patent specification discloses what it means to "provide" a bulk quantity of foam material for the alleged invention, and the above portion of the specification makes clear that "manufacture and delivery of a pre-determined quantity of bulk foam material" is a "require[d]" step in the process. Thus, "providing

a bulk quantity of foam material" means "manufacturing and delivering a pre-determined quantity of bulk foam material."

### M. "a first foam block among the plurality of foam blocks comprises the upper cutout … a second foam block among the plurality of foam blocks comprises the lower cutout … the first foam block and the second foam block are stacked in a vertically-oriented column within the fuel tank" (All Asserted Claims of the '109 patent)

| AerSale | Jetaire |
|---|---|
| Indefinite | No construction necessary |

All of the asserted claims of the '109 patent recite cutting foam material into "a plurality of foam blocks." The claims then recite that "the plurality of foam blocks" (i.e. all the foam blocks that were cut) have certain characteristic, specifically that they comprise specific cutouts. Claims 1-14 recite that the plurality of foam blocks all comprise at least three cutouts: "an upper cutout for clearance around an upper stiffener of the fuel tank, an arcuate cutout for clearance around a fuel pump of the fuel tank, and a lower cutout for clearance around a lower stiffener of the fuel tank." Claims 15-30 recite that the plurality of foam blocks all comprise at least two cutouts: "an upper cutout for clearance around an upper stiffener of the fuel tank and a lower cutout for clearance around a lower stiffener of the fuel tank." All of the asserted claims then recite that "the plurality of foam blocks" (i.e. all of the foam blocks that were cut and have the various recited cutouts) are then positioned within the fuel tank, with the cutouts being placed around the upper stiffener (upper cutout), fuel pump (arcuate cutout), and lower stiffener (lower cutout) in the fuel tank.

All of the asserted claims then recite that "a first foam cutout among the plurality of foam blocks comprises the upper cutout … a second foam block among the plurality of foam blocks comprises the lower cutout … the first foam block and the second foam block are stacked in a

vertically-oriented column within the fuel tank." However, as noted above, all of the asserted claims previously recited that "the plurality of foam blocks" all already have multiple cutouts, including at least an upper cutout and a lower cutout. Given the language of these claims, it is unclear to what the "first foam block" (which necessarily contains both upper and lower cutouts) and the "second foam block" (which also necessarily contains both upper and lower cutouts) refers. Additionally, as the claims already recited "positioning the plurality of foam blocks" in the fuel tanks with the cutouts placed in the right locations, it is unclear how the "first foam block" and "second foam block" can be "stacked in a vertically-oriented column within the fuel tank."

These claims are drafted like the Abbott and Costello comedy routine "Who's on First?" as the claims first disclose "the plurality of foam blocks" that all have particular characteristics, but then attempt to recite additional blocks within that same "the plurality of foam blocks" that now have different characteristics, all the while making it impossible to keep track of which foam blocks are being referenced throughout the claims. These terms do not "inform those skilled in the art about the scope of the invention with reasonable certainty" as required by the U.S. Supreme Court in *Nautilus* and are therefore indefinite.

### N. "the plurality of foam blocks further comprises a third foam block placed between the first foam block and the second foam block in the vertically-oriented column" (All Asserted Claims of the '109 patent)

| AerSale | Jetaire |
|---|---|
| Indefinite | No construction necessary |

Similar to the claim terms discussed in the previous section of this brief, all of the asserted claims of the '109 patent, after reciting a "first foam block" and a "second foam block" that are within "the plurality of foam blocks", then recite a that "the plurality of foam blocks further comprises a third foam block placed between the first foam block and the second foam block in

the vertically-oriented column." Just like with the recited "first foam block" and the "second foam block", this new "third foam block" must also have all of the same cutouts (at least an "upper cutout" and a "lower cutout" since the asserted claims previously stated that "the plurality of foam blocks" (i.e. all the foam blocks) contain such cutouts. If the recited "third foam block" contains such cutouts, and is now being placed in between the first and second foam blocks, which also already include such cutouts, in a vertically-oriented column, it is again unclear to which block or blocks this new "third foam block" refers. And, just like with the recited "first foam block" and "second foam block" discussed above, the "third foam block" was already positioned, per the language of the claims, within the fuel tanks with the various cutouts in the correct positions. If the "third foam block" was already positioned in the fuel tank, it is unclear how it can now be positioned between two other foam blocks in a vertically-oriented column. This claim term is also indefinite.

### O. "at least one foam block among the first plurality of foam blocks comprises an upper cutout in a top surface for clearance around an upper stiffener of the fuel tank, an arcuate cutout in a side surface for clearance around a fuel pump of the fuel tank, and a lower cutout in a bottom surface for clearance around a lower stiffener of the fuel tank" (All Asserted Claims of the '541 patent)

| AerSale | Jetaire |
|---|---|
| Indefinite | No construction necessary |

The dispute between the parties concerning this claim term arises from statements made in Jetaire's infringement contentions. Jetaire's infringement contentions indicate that Jetaire plans to argue that this claim element can be satisfied with multiple foam blocks, each containing a single cutout, instead of, as the plain language of the claim element dictates, one foam block containing multiple (i.e. upper, arcuate, and lower) cutouts. *See, e.g.*, ECF No. 51-5 at C-33 ("there are at least three foam block shapes (upper, arcuate, and lower), and each is cut to conform to the various

structure and dimensions of the fuel tank"). Jetaire has used the same or similar language for other elements of the asserted claims that expressly require multiple foam blocks. *See, e.g.*, ECF No. 51-4 at B-11, B-52; ECF No. 51-5 at C-25, C-54.

If this claim element covers, as Jetaire seems to believe, both a single foam block with multiple cutouts, as well as multiple foam blocks each with a single cutout, the claim element is indecipherable (i.e. as one does not equal two or three) and therefore indefinite. If instead this claim element only covers a single foam block with the required upper, arcuate, and lower cutouts, there is no dispute between the parties and AerSale agrees this claim term need not be construed.

### P. "flexible foam material" (claims 13-15 of the '541 patent)

| AerSale | Jetaire |
|---|---|
| Indefinite | No construction necessary |

Claim 13 of the '541 patent requires that the first plurality of foam blocks be formed from a "flexible form material." Claims 14 and 15 of the '541 patent each depend from Claim 13 and provide two examples of flexible foam material: reticulated polyurethane foam and polyether foam. While the '541 patent specification refers to "flexible foam material" numerous times, it never provides guidance as to what it means to be "flexible" versus "non-flexible." Instead, the specification states as follows: "The flexible foam material referred to in this document may be comprised of any of a variety of different foam materials, including different structures, textures, chemical compositions, and constituent qualities. A preferred foam material is reticulated polyurethane. Additionally, any material selected from the group consisting of polyethers in which the repeating unit contains a carbon-oxygen bond derived especially from an aldehyde or an epoxide may be used in the method set forth in this inventive concept." '541 patent at 7:7-15. Even this disclosure does not attempt to draw any line between "flexible" and "non-flexible" foam.

A term of degree is one that "necessarily calls for a comparison against some baseline." *Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1395 (Fed. Cir. 2016). "[C]laims having terms of degree will fail for indefiniteness unless they 'provide objective boundaries for those of skill in the art' when read in light of the specification and the prosecution history." *Id.* (quoting *Interval Licensing LLC*, 766 F.3d at 1371). Here, there is no disclosure in the '541 patent specification providing any baseline or objective boundary for what is "flexible" foam material.

Even the United States Patent and Trademark Office acknowledged that the term "flexible foam material" was indefinite during prosecution of Jetaire's '109 patent. In an Office Action dated April 4, 2019, the Patent Examiner rejected certain pending claims, stating "each recites the limitation 'flexible foam material.' ***Because the specification does not teach how 'flexible' the foam material needs to be in order to be considered 'flexible,' the metes and bounds of the limitation is unclear***." Ex. A at ¶¶ 8-10[1] (emphasis added). In response to that Office Action, the applicant amended the pending claims to omit the term "flexible." Ex. B at 9-10. As noted above, the '541 patent – which re-introduced these disputed terms – is a continuation of the '109 patent, and therefore the specifications of the '541 and '109 patents are identical. Thus, if the specification of the '109 patent did not teach how "flexible" the foam material needs to be in order to be considered "flexible", the specification of the '541 patent does not do so either. This claim term is indefinite.

## IV. CONCLUSION

For the foregoing reasons, AerSale respectfully requests that this Court enter a Claim Construction Order adopting AerSale's constructions.

[1] All exhibits refer to the exhibits of the Declaration of Justin E. Gray in Support of AerSale, Inc.'s Opening Claim Construction Brief ("Gray Decl.") unless otherwise noted.

*/s/ Amelia Toy Rudolph*
Amelia Toy Rudolph (Florida Bar No. 57015)
Shawn Rafferty (*pro hac vice*)
Valerie S. Sanders (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia 30309-3996
404-853-8000 (telephone)
404-853-8806 (facsimile)
amyrudolph@eversheds-sutherland.com
shawnrafferty@eversheds-sutherland.com
valeriesanders@eversheds-sutherland.com

Justin E. Gray (*pro hac vice*)
Regis C. Worley, Jr. (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
12255 El Camino Real, Ste. 100
San Diego, California 92130-2071
858-252-6458 (telephone)
858-252-6503 (facsimile)
justingray@eversheds-sutherland.com
regisworley@eversheds-sutherland.com

*Attorneys for Defendant/Counter-Plaintiff*
*AerSale, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 15, 2021, the foregoing **AerSale Inc.'s Opening Claim Construction Brief** was electronically filed with the Clerk of Court using the CM/ECF filing system. I further certify that the foregoing document was served on all counsel of record via transmission of the Notice of Electronic Filing generated by the Court's CM/ECF system.

*/s/ Amelia Toy Rudolph*
Amelia Toy Rudolph
Florida Bar No. 57015