**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:20-cv-25144-DPG

JETAIRE AEROSPACE, LLC,

Plaintiff,

v.

AERSALE INC.,

Defendant.

# PLAINTIFF JETAIRE AEROSPACE, LLC'S OPENING CLAIM CONSTRUCTION BRIEF

Pursuant to this Court's Scheduling Order (Dkt. No. 50), Plaintiff Jetaire Aerospace, LLC (hereinafter, "Jetaire"), provides its Opening Claim Construction Brief addressing the term identified in the Joint Claim Construction Statement ("JCCS," Dkt. No. 69) for U.S. Patent No. 9,849,998 (the "'998 Patent"), U.S. Patent No. 10,633,109 (the "'109 Patent"), and U.S. Patent No. 10,800,541 (the "'541 Patent") (collectively, the "Asserted Patents") (attached hereto as **Exhibits A**, **B**, and **C**, respectively). The asserted claims of the Asserted Patents are as follows: Claims 1, 2 and, 3 of the '998 Patent; Claims 1-30 of the '109 Patent; and Claims 1-5 and 7-18 of the '541 Patent (collectively, the "Asserted Claims"). For the reasons below, the claim construction positions advanced by defendant AerSale, Inc. ("AerSale") should be rejected.

## TABLE OF CONTENTS


I. BACKGROUND ON THE ASSERTED PATENTS ........................................ 2

A. THE '998 PATENT ........................................ **4**

B. THE '109 AND '541 PATENTS ........................................ **5**

II. LEGAL STANDARD ........................................ 6

A. GENERAL STANDARD ........................................ **6**

B. PLAIN AND ORDINARY MEANING STANDARD ........................................ **8**

C. INDEFINITENESS STANDARD ........................................ **10**

III. DISPUTED CLAIM TERMS ........................................ 11

A. AERSALE HAS PROVIDED NO RATIONALE FOR ITS INDEFINITENESS ARGUMENTS, MAKING IT IMPOSSIBLE TO ADDRESS THOSE ARGUMENTS IN THIS OPENING BRIEF.. **13**

B. AERSALE'S PROPOSED CLAIM CONSTRUCTIONS SHOULD BE REJECTED.................... **13**

1. "performing an inspection of the installed RPF blocks" – '998 Patent, Claims 1-3 . 15

2. "each" ("each of") – '998 Patent, Claims 1-3 ........................................ 16

3. "determining interior dimensions of the fuel tank" – '109 Patent, Claims 1-14 ...... 17

4. "providing a bulk quantity of foam material" – 109 Patent, Claims 1-30 ................. 18

IV. CONCLUSION ........................................ 19

The language of the Asserted Claims is plain and uncomplicated, and the actual words in the claims cleanly and decisively define their bounds—there is no need for construction. Nonetheless, AerSale proposes a staggering 27 claim terms for construction, inviting this Court to: (1) deem twenty-two of them indefinite; and (2) construe the remaining five terms to create non-infringement positions for AerSale. These requests should be rejected. The proposed terms—all of which were proposed by AerSale—include simple phrases such as "*level surface*," "*verifying a quantify of fuel in the ffuel tank*," and "*emptying and purging the tank*," which are terms any lay person on a jury would understand. For a slew of other terms, AerSale argues indefiniteness despite the obvious meaning of the terms to skilled artisans. These include, for instance, phrases such as "*FAA-certified fuel gauge calibrating procedures for the aircraft*," "*verifying the fuel tank's maximum fuel quantity*," and "*determining interior dimensions of the fuel tank*," to name a few. There is no good reason to construe any of these terms, and they are certainly not indefinite.

AerSale knows all of this, but it has chosen to treat claim construction as an exercise in negotiation and optics, not an earnest attempt to resolve disputes. As a negotiating tactic, AerSale attempts to employ strategies straight out of the 1960s classic "The Strategy of Conflict," which recognizes that actors in a dispute can often gain ground by taking unreasonable positions. In doing this, AerSale creates an exorbitant number of disputes, expecting that the Court will side with it on at least *some* of them, regardless of merit. AerSale likely surmises that notions of fairness will lead the Court to "split the baby" and avoid the optics of an across the board ruling against AerSale. However, a ruling for Jetaire on all terms is *exactly* what is called for here. The words of a claim "are generally given their ordinary and customary meaning[.]" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*). AerSale provides no facts or legal principal that compels the Court to depart from this bedrock tenet.

## I. BACKGROUND ON THE ASSERTED PATENTS

In 2001, the Federal Aviation Administration ("FAA") issued new regulations which imposed Fuel Tank Flammability Reduction ("FTFR") requirements for passenger and cargo aircraft, including various Boeing and Airbus models, to minimize the risk of an explosion in the fuel tank. **Ex. A**, 1:30-2:53. It is known that fuel tanks explosions can occur as a result of fuel vapors in the ullage (unfilled portion of the fuel tank) combining with an ignition source, such as static, electric shorts, lightning, or explosive projectiles. **Ex. A**, 3:59-64. Before the priority date of the patents, various solutions were proposed to comply with the FTFR requirements, including pumping inert nitrogen gas into the fuel tank during operation. **Ex. C**, 1:23-31. But these solutions were expensive, time consuming, and had their own potential failure rates. **Ex. A**, 2:64-3:10.

The owner of Jetaire and inventor of the Asserted Patents, Michael Williams, set out to solve the problems of the prior systems that attempted to address the FTFR requirements. In doing so, he developed a new solution for compliance with the FTFR that employed a foam material (one such preferred material is reticulated polyurethane foam ("RFP") to fill the internal spaces of the aircraft fuel tanks. **Ex. A**, 1:32-37; 3:14-21; 4:31-33; **Ex. B**, 4:14-24. Broadly speaking, the Asserted Patents encompass various methods and systems of reducing fuel ignition by using foam material, including RPF, in coordinated shapes to fill the fuel tanks, using specific dimensions, cuts, and configurations, resulting in reduced cost, easier installation, and greater reliability as compared to prior systems. **Ex. A,** 3:52-4:4; 4:11-18; **Ex. B**, 4:14-24; 5:22-27. As a point of reference, "reticulated flexible foam" is "composed of a skeletal matrix of lightweight interconnecting strands," similar to a memory foam in the way it returns to shape after compression. **Ex. A**, 3:24-28; 9:4-21; 11:37-49. For reference, Figure 5 of the '998 Patent (below) shows a profile view of an exemplary foam block:




FIG. 5

FIG. 5A

**Ex. A**, Figure 5. Figure 11 of the '109 Patent (below) also shows exemplary foam blocks:




FIG. 10

**Ex. B**, Figure 10. Foam blocks, such as those made of RPF material, acts as "a three-dimensional fire-screen" that minimizes the possibility of explosion. **Ex. A**, 3:65-4:11. The Asserted Patents also provide further practical advantages, such as "slosh attenuation, hydrodynamic ram attenuation, and foreign object debris barrier properties of RPF." **Ex. A**, 3:29-31; 3:31-4:10. In other words, the foam material "reduces the rapid redistribution of fuel," absorbs a portion of the impact from projectiles penetrating the fuel tank, and "acts as a natural filter to prevent debris from entering the fuel system." *Id.*

The foam blocks are installed into the fuel tank of the subject aircraft. To give some context to the Court, an example of aircraft center fuel tank, along with a partial installation for illustrative

purposes, is provided (below) at Figures 4 and 7, respectively:




FIG. 4




FIG. 7

**Ex. A**, Figs. 4 and 7.

As noted above, there are three different patents at issue in this litigation, including the ‘998 Patent, the ‘109 Patent, and the ‘541 Patent. The Asserted Claims claim different variants of the inventions claimed and disclosed in the Asserted Patents, and each of the Asserted Patents is briefly described below.

### A. THE ‘998 PATENT

The ‘998 patent, entitled “Block Foam Method Of Accomplishing Ignition Mitigation In Aircraft Fuel Tanks,” issued on December 26, 2017 after full and fair examination by the U.S. Patent and Trademark Office (“USPTO”). **Ex. A**. The ‘998 Patent teaches and describes specific methods of “installing shaped, reticulated sheets or blocks, of foam to fill the internal space of fuel tanks of transport category aircraft.” **Ex. A**, 1:25-29. The specification teaches various ways of “measuring, sizing, and cutting” the blocks depending on the particular aircraft. **Ex. A**, 6:51-54; 7:34-43. The ‘998 Patent teaches the use of engineering drawings that taken to account for the various compartments, structural members, *e.g.* spars and beams, and equipment, *e.g.* fuel pumps, within the aircraft fuel tanks. **Ex. A**, 7:56-67; 6:34-50. These drawings are used to determine the

exact shape and dimensions that each of the RPF blocks are cut into, based on where the block will be placed during installation. **Ex. A**, 8:1-12; 7:34:39 ("The contours of the aggregate of all foam blocks 50 are a culmination of determinations made of the dimensions, profile, connections, attachments, and integral components of the inner surfaces of the fuel tank at the specifically designated sectors internal to each the forward, center, and aft compartments 131, 132, 133 of the center wing tank 112").

To aid in installation, the '998 Patent teaches the use of blocks identified with a part number and that also may include orienting symbols for the installation (*e.g.*, an "orientating UP and FORWARD arrow"). **Ex. A**, 8:1-12. Installation of the blocks is also facilitated by the provision of instructions and organization the RPF blocks for installation. **Ex. A**, 8:13-9:3. For installation, the fuel tank is accessed at a point of entry, the blocks are installed successively according the instructions. **Ex. A**, 8:56-9:47; Figure 8, 8A, 8B, and 8C; claims 1-3.

### B. THE '109 AND '541 PATENTS

The '109 patent, entitled "Method And Material For Accomplishing Ignition Mitigation In Tanks Containing Flammable Liquid," issued on April 28, 2020 after full and fair examination by the USPTO. **Ex. B**. The application that issued as the '541 patent, entitled "Method And Material For Accomplishing Ignition Mitigation In Tanks Containing Flammable Liquid," issued on October 13, 2020 after full and fair examination by the U.S. PTO. **Ex. C**. The '109 and '541 patents also generally relate to methods and systems for fuel ignition mitigation. *See, e.g.*, **Ex. B** and **Ex. C**, Abstract; **Ex. B**, 1:42-47 ("installing accurately measured quantities of flexible foam material to fill the internal spaces of tanks that hold flammable liquid, with particular emphasis on aircraft fuel tanks.").

The '109 Patent specification teaches a solution for reducing the weight of the foam blocks

used in ignition mitigation through planned voiding. **Ex. B**, 5:15-51; 10:64-11:4. An example of planned voiding is depicted in Figure 12:




FIG. 12

**Ex. B**. This planned voiding helps to reduce weight, while ensuring that ignition mitigation is still achieved. **Ex. B**, 5:15-21; 5:30-51; 10:66-67; 12:45-57. Relatedly, the '541 patent discloses and claims ignition mitigation systems in novel ways and also incorporates the use of planned voiding. **Ex. C**.

## II. LEGAL STANDARD

### A. GENERAL STANDARD

The proper construction of a patent's claims is a question of law. *Teva Pharm. USA, Inc. v. Sandoz, Inc*., 135 S.Ct. 831, 837 (2015) (citing *Markman v. Westview Instruments, Inc*., 517 U.S. 370, 388-91 (1996)). "It is a 'bedrock principle' of patent law that 'the claims of a patent

define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).

The words of a claim "are generally given their ordinary and customary meaning," which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312-13 (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). In arriving at this meaning, a court is to look first and foremost to the "intrinsic evidence," which consists of the patent's claim language, the specification and written description, and the prosecution history, to determine the meaning of disputed claim terms. *Phillips*, 415 F.3d at 1311-17. The specification is the single best guide to the meaning of a disputed term and is "usually . . . dispositive." *Phillips*, 415 F.3d at 1315 (citing *Vitronics*, 90 F.3d at 1582).

District courts may also rely on extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980 (citation omitted); *see also Vitronics*, 90 F.3d at 1583. However, while extrinsic evidence "can shed useful light on the relevant art," we have explained that it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004) (quoting *Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1318 (Fed. Cir. 2004); *see also Astrazeneca AB v. Mutual Pharm. Co.*, 384 F.3d 1333, 1337 (Fed. Cir. 2004).

Importantly, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices,*

*Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see Phillips*, 415 F.3d at 1323. Nonetheless, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" *Globetrotter Software, Inc. v. Elam Computer Grp. Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). Even if a patent describes only a single embodiment, the claims of the patent must not be construed as being limited to that embodiment unless the patentee has demonstrated a clear intention to limit the claim scope using "words or expressions of manifest exclusion or restriction." *Phillips*, 415 F.3d at 1323; *Teleflex, Inc. v. Ficosa N.A. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002). The purpose of the specification is "to teach and enable those of skill in the art to make and use the invention" and sometimes, the best way to do that is to provide an example. *Teleflex*, 299 F.3d at 1327. Although the Court of Appeals for the Federal Circuit acknowledges that "the distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice," it instructs courts to maintain their focus on how a person of ordinary skill in the art would understand the claim terms. *Phillips*, 415 F.3d at 1323.

### B. Plain And Ordinary Meaning Standard

"[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312; *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("***There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time***.") (vacated on other grounds) (emphasis added). "***There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during***

***prosecution***." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (emphasis added). When the patentee acts as his own lexicographer, any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc*., 952 F.2d 1384, 1388 (Fed. Cir. 1992).

Where an applicant limits claim scope during prosecution through a "clear disavowal of claim coverage, such as an amendment to overcome a rejection," the well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Amgen Inc. v. Hoechst Marion Roussel, Inc*., 314 F.3d 1313, 1327 (Fed. Cir. 2003); *see Omega Eng'g Inc. v. Raytek Corp*., 334 F.3d 1314, 1323 (Fed. Cir. 2003). In order for the doctrine to apply, however, the prosecution history must show that the patentee ***clearly, unambiguously and unmistakably disclaimed or disavowed the proposed interpretation*** during prosecution in order to obtain claim allowance. *Schindler Elevator Corp. v. Otis Elevator Co*., 593 F.3d 1275, 1285 (Fed. Cir. 2010) (emphasis added); *Cordis Corp. v. Medtronic AVE, Inc*., 339 F.3d 1352, 1358 (Fed. Cir. 2003); *Middleton Inc. v. 3M Co*., 311 F.3d 1384, 1388 (Fed. Cir. 2002).

Moreover, the Federal Circuit has repeatedly advised district courts that they are not obligated to construe terms with ordinary meanings, lest they be inundated with requests to parse the meaning of every word in the asserted claims. *O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co*., 521 F. 3d 1351, 1360-62 (Fed. Cir. 2008) (recognizing that "district ***courts are not (and should not be) required to construe every limitation present in a patent's asserted claims***.") (citing *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc*., 249 F.3d 1341, 1349 (Fed.Cir.2001) (emphasis added); *U.S. Surgical Corp. v. Ethicon, Inc*., 103 F.3d 1554, 1568 (Fed. Cir. 1997) (claim construction "***is not an obligatory exercise in redundancy***.")

(emphasis added); *see also Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001) (finding no error in court's refusal to construe "irrigating" and "frictional heat"). In addition, where a claim term with a "plain and ordinary meaning" is disputed, a district court may satisfy its obligation to resolve the parties' dispute by adopting the plain meaning without additional construction, thereby declining to adopt a proposed construction that is "confusing, unhelpful, adds no clarity to the claim language itself, and is erroneous to the extent it attempts to narrow the claims by adding . . . limitations." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1325-26 (Fed. Cir. 2012).

### C. INDEFINITENESS STANDARD

A claim is indefinite under 35 U.S.C. § 112 ¶ 2 only if a party challenging the patent establishes, ***by clear and convincing evidence***, that a claim, when viewed in light of the intrinsic evidence, does not "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014) ("recognizing that absolute precision is unattainable"). Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Id.* at 911. As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence. *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017); *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) ("Indefiniteness must be proven by clear and convincing evidence."). Notably, "[p]roof of indefiniteness requires such an ***exacting standard*** because claim construction often poses a difficult task over which expert witnesses, trial courts, and even the judges of the court may disagree." *Halliburton Energy Servs., Inc. v. M-I, LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).

"[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012). A finding of indefiniteness often requires a developed factual record on the knowledge of skilled artisans at the time because although it is a question of law (like claim construction), any critical fact underlying a finding of indefiniteness must be proven by the challenger with clear and convincing evidence. *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003). *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (*en banc*) ("[t]he standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning . . ."). "The primary consideration is factual and depends on the nature of the invention and the amount of knowledge imparted to those skilled in the art by the disclosure." *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989, 996 (Fed. Cir. 2000); *see also ScriptPro, LLC v. Innovation Assocs., Inc.*, 762 F.3d 1355, 1359 (Fed. Cir. 2014).

For that reason, among others, courts in this district regularly deny indefiniteness challenges at the claim construction stage. *See e.g., LD Tech., LLC v. Impeto Med. SAS*, No. 15-20109-CIV, 2016 U.S. Dist. LEXIS 952, at *15 (S.D. Fla. Jan. 6, 2016) (denying indefiniteness argument); *Roland Corp. v. inMusic Brands, Inc.*, No. 17-CV-22405, 2019 U.S. Dist. LEXIS 129618 (S.D. Fla. Aug. 1, 2019) (same); *Standard Textile Co., Inc., v. J&R United Industries, Inc.*, Case No. 17-61815-Dimitrouleas (S.D. Fla., Feb. 13 2019) (attached as **Exhibit D**) (same); *Net Talk.com, Inc. v. magicJack Vocaltec Ltd.*, No. 12- 81022-CIV-GAYLES/TUR, 2014 U.S. Dist. LEXIS 166456, at *16 (S.D. Fla. Dec. 1, 2014) (finding term non-indefinite).

## III. DISPUTED CLAIM TERMS

AerSale advances two fronts of attack. ***First***, AerSale attempts to dispense with this case by asserting that no less than 22 claim terms from the three patents are indefinite. Tellingly,

AerSale has refused to provide Jetaire with any rationale or explanation for its voluminous indefiniteness assertions. This indicates that AerSale's indefiniteness arguments are not based on any actual ambiguity in the terms, but instead, is based on AerSale's desire for the terms to be indefinite so that it can avoid reckoning for its infringement of the Asserted Patents.

As detailed below, each of the 22 terms cited by AerSale is readily understandable and apprises one skilled in the art regarding the scope of the inventions, which more than meets the standard set forth by 35 U.S.C § 112, ¶ 2 and *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014). In fact, AerSale itself has analyzed the Asserted Patents in detail and had no apparent trouble understanding any of the claim terms at issue here. During prosecution of the Asserted Patents, AerSale prepared detailed charts applying certain alleged prior art to the Asserted Patents and forwarded them to Jetaire, demanding that Jetaire provide those the charts and alleged prior art to the USPTO, which it did. *See* **Exhibit E** (letter from AerSale to Jetaire attaching alleged prior art and charts). Those charts presented detailed mappings of that alleged prior art to ***every one*** of the 22 terms AerSale now asks this Court to find indefinite. *Id.* (Attachments 1 to 4) AerSale's contradictory allegations now—when it said nothing about indefiniteness then and appeared to perfectly well understand the terms—should not be rewarded.

***Second***, AerSale attempts to manufacture non-infringement positions with its remaining proposed constructions. Specifically, AerSale's proposed constructions for the four remaining terms seek to add numerous limitations to the claims, conspicuously attempting to create positions that would help them avoid infringement where none otherwise exist. AerSale's proposed constructions also improperly take terms that a jury would easily understand and contort them to mean something that plainly contradicts the teachings of the specification. Such rewriting of claim terms is improper absent claim disavowal or lexicography, neither of which is present here.

AerSale's proposal to rewrite the claims to suit its litigation strategy should be denied.

### A. AerSale Has Provided No Rationale for Its Indefiniteness Arguments, Making It Impossible To Address Those Arguments In This Opening Brief.

To date, the AerSale has provided no meaningful explanation of how or why it alleges that 22 claim terms are "indefinite." *See* Dkt. No. 69. AerSale did not explain its indefiniteness position in its Answer and Counterclaims (Dkt. No. 19), Amended Answer and Counterclaims (Dkt. No. 30), Preliminary Invalidity Contentions, discovery responses[1], or during the claim construction process.[2] Essentially, AerSale has refused to explain the basis for its positions.

AerSale bears the burden of proving indefiniteness by "clear and convincing evidence" (*Nautilus*, 572 U.S. at 901) and cannot meet that burden here as to any term. AerSale cannot meet its burden of proof to invalidate these claim terms without any explanation and without any evidence. *See Dow Chem. Co. v. NOVA Chems. Corp*., 809 F.3d 1223, 1227 (Fed. Cir. 2015) ("Th[e] presumption of validity 'imposes the burden of proving invalidity on the attacker. That burden is constant and never changes and is to convince the court of invalidity by clear evidence.'") (citations omitted). Because AerSale has not provided ***any*** evidence or explanation of its indefiniteness arguments but presumably will attempt to do so for the first time in its opening brief, JetAire reserves the right to respond to any such evidence or argument in its response brief.

### B. AerSale's Proposed Claim Constructions Should be Rejected.

The disputes on the remaining four terms where AerSale has proposed constructions arise arise from the parties' fundamentally different understandings of the Court's role in the claim

[1] Jetaire propounded an interrogatory directed at understanding Defendant's indefiniteness positions, and Defendant objected, failing to provide any substantive response. On August 11, Defendant served its Preliminary Infringement Contentions, and supplementing its response to Interrogatory Number 12 to identify these contentions.

[2] *See* Defendant's Identification of Proposed Construction and the JCCS (Dkt. No. 69).

construction process. Where Jetaire asks the Court to resolve the claim construction disputes based on the commonly understood meaning of the claim terms and the teachings of the Asserted Patents, AerSale asks the Court to add numerous limitations to the claims in a transparent attempt to manufacture non-infringement positions where none otherwise exist.

The four terms AerSale asks this Court to construe—"*performing an inspection*," "*each/each of*," "*determining interior dimensions*," and "*providing a bulk quantity of foam material*"—are common, well-understood terms in the English language that require no construction at all. These terms are unambiguous on their face and in the context in which they appear in the claims. AerSale tacitly concedes this point; indeed, AerSale has not presented any evidence that the patentee defined any of these terms or that AerSale's proposed constructions are a result of the patentee's disavowal of claim scope. AerSale's proposals seek to insert numerous questionable limitations into the claims without any justification in the intrinsic or extrinsic record. As explained below, these limitations are improper attempts to redefine and narrow claim scope without any evidentiary support.

In short, there is nothing in the specification or file history to suggest that the patentee intended to limit these four terms beyond anything other than their plain and ordinary meaning. *See Thorner*, 669 F.3d at 1365 ("There are only two exceptions" to the "general rule" that claims "are generally given their ordinary and customary meaning . . . 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution."); *see also Phillips*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (noting that because, "[i]n some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges," construing claims often "involves little more than the application of the widely accepted meaning

of commonly understood words"). Therefore, the Court should reject AerSale's unsupported constructions.

**1. "performing an inspection of the installed RPF blocks" – '998 Patent, Claims 1-3**

| Jetaire's Proposed Construction | AerSale's Proposed Construction |
|---|---|
| No construction necessary. | "inspecting each RPF block after all of the RPF blocks have been installed" |

AerSale's proposed construction should be denied for two reasons. First, AerSale's proposed construction is redundant within the plain language of the claims. For example, in Claim 1 of the '998 Patent, the claim reads in relevant part as follows:

> l) placing the first sequential RPF block at a specified location within the fuel tank as so designated in the instructions;
>
> m) placing each successively-ordered RPF block at its designated location within the fuel tank, as set forth in the instructions, until said fuel tank is filled in accordance with the previously determined aggregate of RPF blocks;
>
> n) performing an inspection of the installed RPF blocks, and afterwards, closing any previously opened fuel tank access panel; and

**Ex. A**, '998 Patent, Claim 1. Claim 1 elements (l) and (m) already indicate the steps whereby all of the RPF blocks are installed. This makes inclusion of "after all of the RPF blocks have been installed" ***again*** in step (n) redundant. There is simply no need to "parse" language and engage in an "exercise in redundancy" here. *O2 Micro*, 521 F. 3d at 1360-62; *Ethicon*, 103 F. 3d at 1568.

Second, AerSale's inclusion of "inspecting each RPF block" makes the claim language illogical and ambiguous. In fact, it appears that AerSale is improperly attempting to rewrite the claim for non-infringement purposes by adding the term "each" to the term. For example, the plain language of Claim 1(m), 2(n) and 3(m) demonstrates that, upon the completion this step, the fuel tank has been filled with RPF blocks. The RPF blocks that fill the fuel tank are not

translucent; they are opaque. **Ex. A**, 3:24-26 ("a reticulated flexible foam composed of a skeletal matric of lightweight interconnecting strands."); 4:19-24 (fuel tank may be filled with RPF blocks to a maximum of 85% capacity). AerSale's proposed construction would effectively—and conveniently—render the claim element ***impossible to perform*** because a person could not inspect "each RPF block" after installation. Thus, AerSale's proposed construction should be denied. *ActiveVideo Networks*, 694 F.3d at 1325-26 (declining to adopt a proposed construction that is "confusing, unhelpful, adds no clarity to the claim language itself, and is erroneous to the extent it attempts to narrow the claims by adding . . . limitations.").

### 2. "each" ("each of") – '998 Patent, Claims 1-3

| Jetaire's Proposed Construction | AerSale's Proposed Construction |
|---|---|
| No construction necessary. | "every" / "every one of" |

First, the claim language is unambiguous and additional meaning ought not be read into it.[3] The concept of "every" is not inherent in the plain meaning of "each. There is no evidence of prosecution disclaimer nor of the patentee acting as his own lexicographer to attribute any special definition of "each" to mean "every." *See* **Ex. A**. Moreover, AerSale has not presented any evidence, to date, to suggest that a person having ordinary skill in the art would think otherwise.

[3] Courts have declined to construe this non-technical, unambiguous terms. *Phx. Licensing, L.L.C. v. AAA Life Ins. Co.*, No. 2:13-CV-1081, 2015 U.S. Dist. LEXIS 51245, at *93-97 (E.D. Tex. Apr. 18, 2015) (construing "each" as its plain and ordinary meaning) (citing *Renishaw PLC v. Marposs Societa'per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998)) ("the claim construction inquiry, begins and ends in all cases with the actual words of the claim."); *RainDance Techs., Inc. v. 10X Genomics, Inc.*, Civil Action No. 1:15-cv-00152-RGA, 2017 U.S. Dist. LEXIS 10819, at *30-31 (D. Del. Jan. 26, 2017) (construing "each" as "no construction necessary."); *Cassidian Communs., Inc. v. MicroDATA GIS, Inc.*, No. 2:12-CV-162-JRG, 2013 U.S. Dist. LEXIS 86657, at *20 (E.D. Tex. June 19, 2013) (construing the term "each of" as its "plain and ordinary meaning"); *T.M. Patents, L.P. v. Cisco Sys.*, 982 F. Supp. 2d 93, 102 (D. Mass. 2013) (construing "each" as "plain and ordinary" meaning on motion for summary judgment).

There is simply no need to "parse" language and engage in an "exercise in redundancy" here. *O2 Micro*, 521 F. 3d at 1360-62; *Ethicon*, 103 F. 3d at 1568.

Second, AerSale's proposed construction also conflicts with the claim language. For example, claim 2(e) recites in part "each cutout conforming to each of the scaled engineering drawings for each particular compartment." Construing "each" in the manner sought by AerSale would render the claim both redundant and non-sensical. If AerSale's proposed construction were adopted, that portion of claim 1 would read "[every] cutout conforming to [every one] of the scaled engineering drawings for [every] particular compartment." As with other terms, adopting AerSale's proposal would render the otherwise clear and unambiguous language of claim 1 undecipherable; it would only serve to confuse the jury as to the meaning of the term and potentially render performing the claimed method impossible. This is not a mistake and AerSale's proposed construction is not intended to clarify the claims. Instead, AerSale's unsupported proposal is yet another attempt to manufacture a non-infringement argument where none otherwise exists. AerSale's attempt to avoid infringement by rewriting this clear and unambiguous claim term should be rejected. *ActiveVideo Networks*, 694 F.3d at 1325-26 (declining to adopt a proposed construction that is "confusing, unhelpful, adds no clarity to the claim language itself, and is erroneous to the extent it attempts to narrow the claims by adding . . . limitations.").

**3. "determining interior dimensions of the fuel tank" – '109 Patent, Claims 1-14**

| Jetaire's Proposed Construction | AerSale's Proposed Construction |
|---|---|
| No construction necessary. | "measuring the interior profile of the fuel tank at regularly-spaced increments" |

The term "*determining interior dimensions of the fuel tank*" is clear and unambiguous and requires no construction. *O2 Micro*, 521 F. 3d at 1360-62; *Ethicon*, 103 F. 3d at 1568. AerSale

has not provided any disclaimer or patentee definition supporting its goal of re-writing the meaning of the claim term.

While the '109 Patent specification does discuss how the interior dimensions can be determined, this is "by way example only." **Ex. B**, 10:4:16. AerSale's proposed construction is at best incomplete because fails to capture to two essential elements discussed in the specification. First, AerSale's proposed construction fails to acknowledge that the specification teaches the use of "scaled" rendering in determining the interior dimensions of the fuel tank. **Ex. B**, 10:4:16 ("The profile of the compartment is measured ***and scaled*** at regularly spaced increments.") (emphasis added). Second, AerSale's proposed construction fails to acknowledge that more than the "interior profile" must be measured within this step in order for the blocks to fit precisely. **Ex. B**, 10:12-14 ("The measurements also take into consideration the placement of tank structural components and equipment."); 9:45-50 (incremental measurements must also account for the "dimensions, profile, connections, attachments, and integral components of the inner surfaces of the fuel tank."); 12:49-51 ("All flexible foam blocks must be kept clear of the tank components such as the fuel ports, fuel probes, float switches, and tank vents"). In fact, the specification of the '109 patent nowhere uses the term "interior profile" as the sole basis for "determining interior dimensions," and AerSale cannot otherwise support its proposed redefinition of "determining interior dimensions of the fuel tank" to mean "measuring the interior profile of the fuel tank at regularly-spaced increments." For these reasons, and the reasons detailed above with respect to the preceding terms, AerSale's proposal should be rejected.

**4. "providing a bulk quantity of foam material" – 109 Patent, Claims 1-30**

| Jetaire's Proposed Construction | AerSale's Proposed Construction |
|---|---|
| No construction necessary. | "manufacturing and delivering a pre-determined quantity of bulk foam material" |

The term "*providing a bulk quantity of foam material*" is clear and unambiguous and requires no construction. *O2 Micro*, 521 F. 3d at 1360-62; *Ethicon*, 103 F. 3d at 1568. AerSale's proposed construction for this term improperly seeks to import limitations from the specification. **Ex. B**, 9:54-57 ("In planning a project for installation of foam blocks in the center wing tank **112**, the initial process requires the ***manufacture and delivery of a pre-determined quantity of bulk foam material***.") (emphasis added). But those specification passages only highlight that the patentee specifically chose to claim "providing," and did not choose to claim "manufacturing and delivering." Manufacturing AerSale's proposed construction is improper—it is black letter law that, although claim terms are understood in light of specification, claim construction must not import limitations from specification into claims. *See Phillips*, 415 F.3d at 1323. The patentee chose to claim "providing," and AerSale should not be permitted to rewrite the claims simply to create a non-infringement position. AerSale's proposal should be rejected.

## IV. CONCLUSION

Based on the foregoing, Jetaire respectfully requests that the Court reject the indefiniteness theories and proposed constructions advanced by AerSale.

Respectfully submitted: September 15, 2021,

*/s/ Timothy C. Davis*
Timothy C. Davis, FL No. 571880
**HENINGER GARRISON DAVIS, LLC**
2224 1st Avenue North
Birmingham, Alabama 35203
Telephone: (205) 326-3336
Facsimile: (205) 314-5915
Email: tim@hgdlawfirm.com

James F. McDonough, III, GA No. 117088)*
Jonathan R. Miller (GA No. 507179)*
**HENINGER GARRISON DAVIS, LLC**
3621Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Telephone: (404) 996-0869, -0863
Facsimile: (205) 547-5502, -5506
Email: jmiller@hgdlawfirm.com
Email: jmcdonough@hgdlawfirm.com

*for Plaintiff*
***JETAIRE AEROSPACE, LLC***

* admitted *pro hac vice*

**Of Counsel**
Travis E. Lynch (GA No. 162373)
**HENINGER GARRISON DAVIS, LLC**
3621Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Telephone: (404) 996-0867
Facsimile: (205) 547-5515
Email: tlynch@hgdlawfirm.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 15th day of September, 2021, I caused to be electronically served on counsel of record for Defendant using the CM/ECF system, which will cause it to be served on all counsel of record who are registered to receive electronically Notices of Electronic Filing generated by the CM/ECF system.

*/s/ Timothy C. Davis*
Timothy C. Davis