**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:20-cv-25144-DPG**

JETAIRE AEROSPACE, LLC,

     Plaintiff,

v.

   AERSALE INC.,

     Defendant.

---

AERSALE INC.,

     Defendant/Counter-Plaintiff

v.

JETAIRE AEROSPACE, LLC,
JETAIRE FLIGHT SYSTEMS, LLC,
 and MICHAEL D. WILLIAMS,

     Counter-Defendants

---

**SPECIAL MASTER'S REPORT AND RECOMMENDATIONS**

This report is submitted pursuant to the Court's appointing order dated December 2, 2021, designating the undersigned as Special Master regarding construction of patent claims in this matter. Markman hearings were on January 13 and January 14, 2021. Related hearings were held on other dates. This document constitutes my report and recommendations.

Respectfully submitted,

Paul M. Janicke

Date: March 1, 2022

Paul M. Janicke

Special Master

# TABLE OF CONTENTS

**pdf page**

**I. Introduction**      **4**

     **A. Posture of the case**      **4**

         **Markman Proceedings**      **5**

     **B. Overview of Applicable Law**      **7**

         **1. Indefiniteness**      **7**

         **2. Construing patent claim phrases**      **9**

             **a. Intrinsic Evidence**      **10**

             **b. Extrinsic Evidence**      **11**

**II. The 16 Sets of Contested Words and Phrases**      **12**

     **Set A**      **13**

     **Set B**      **34**

     **Set C**      **40**

     **Set D**      **42**

     **Set E**      **53**

     **Set F**      **58**

     **Set G**      **63**

**Set H**                                                      **59**

**Set I**                                                      **74**

**Set J**                                                      **73**

**Set K**                                                      **94**

**Set L**                                                      **98**

**Set M**                                                      **100**

**Set N**                                                      **108**

**Set O**                                                      **112**

**Set P**                                                      **115**


**III. Summary of recommendations**                           **122**

# I.  INTRODUCTION

## A. Posture of the case

The three patents in suit involve eliminating or mitigating the risk of explosion in aircraft fuel tanks. These explosions can be caused by heating of the tank or from electrical sparks getting into the tank, antiaircraft weaponry, unexpected flying debris, and other possibilities. The risks are particularly severe for military aircraft. For several decades before the applications for the patents in this case were filed (2015-2017), the technical literature described various ways of addressing these problems by inserting carefully crafted pieces of porous foam material into the plane's fuel tanks before fueling the tanks. One such material has been polyurethane foam, and the foam pieces are often called components. (See, e.g., SAE International's 1991 "Aerospace Information Report," of record in this case at Docket Entry 74-6, pp. 5-54.) Although the foam components take up some space in the tank, their porosity works to mitigate explosion risks while not unduly interfering with fuel flow to the engine.

The three Williams patents in suit address the problems by using foam components of particular geometry, and particular methods for loading them into an airplane's fuel tank. The three patents in suit have many claims, 50 of which are asserted to be infringed by AerSale. In patent law a claim is a recitation of the essential features of an invention. It can be broad (reciting only one or a few essential features) or narrow (reciting many essential features). In either case, infringement involves the use of products or method steps that have at least those minimum features.

4

Each claim of a patent operates legally as a sort of mini-patent unto itself, and is valid or invalid, infringed or not infringed, regardless of the other claims. Actionable infringement of a patent is established if the accused infringing product or method contains all the recited minimum features of any one valid claim of the patent, regardless of whether other claims are valid or infringed.

Plaintiff Jetaire in this case asserts 50 claims from among the three patents in suit as being infringed. Many of the claims' phrases may need to be construed. The parties are in disagreement on 16 sets of words or phrases appearing in one or more of the patents in suit. In addition, defendant AerSale  urges that in 12 of the sets the claims are indefinite and hence incapable of construction. Jetaire opposes all of these 12 indefiniteness assertions, arguing that the claims involved are so clear in meaning and scope that no judicial construction is needed for them.

### Markman Proceedings

For the hearings with the parties, and for the discussion herein, I have taken the list of the contested claim features from defendant AerSale's initial brief. There are 16 sets of such features, labeled from "A" to "P."  For 4 of these sets AerSale presented an actual construction wording, but for the other 12 sets contended simply indefiniteness. Jetaire contended that all 16 sets had "plain ordinary meanings" and needed no judicial construction.

In a preliminary hearing (Dec. 18), at my suggestion Jetaire agreed, as an alternative position, to furnish its contentions on the actual meanings of these phrases, and those contentions were received on January 1. AerSale responded to these on January 7, continuing to argue indefiniteness but, like Jetaire at the beginning, did not provide any actual proposed constructions for the 12 sets of phrases in the event the Court rejects the indefiniteness arguments. Hence when we proceeded

5

to the Markman hearing in January, we were left with only four sets of claim terms on which both parties had actually provided opposing actual wordings.

The main Markman hearing extended over seven hours on January 13 and 14, with the agenda including all 16 sets of claim terms in dispute. On January 22, in light of the discovery scheduling hearing before Judge Torres set for January 27, I notified the parties that I was very likely to recommend to your Honor to reject AerSale's contentions of indefiniteness of the patent claims. I requested AerSale's counsel to provide, as its alternative position if your Honor adopted my recommendations on those broad points, proposed actual construction wordings in the 12 instances where only indefiniteness had been argued earlier.  AerSale's counsel agreed to do this by February 4, and did so.

Jetaire followed my suggestion of providing actual construction language in the event your Honor rejected Jetaire's "plain ordinary meaning" positions for all of the 16 disputed areas. Jetaire provided such language on December 31.

On January 22 I notified the parties that I was likely to recommend that your Honor reject AerSale's indefiniteness contentions. I suggested that AerSale may wish to propose, in the alternative, actual construction language for the 12 sets phrases on which it is currently arguing only indefiniteness, for use in the event your Honor rejects the AerSale indefiniteness arguments. AerSale's counsel agreed to provide such alternative language by February 4, and did so. Opposing memoranda were filed with me during the month of February.

The construction disagreements in this case fall into three broad categories: (1) In 12 of the 16 sets of phrases in issue, AerSale contends the claims are indefinite, and are therefore invalid and

incapable of judicial construction. Jetaire of course opposes that view. (2) On the remaining 4 sets of claim phrases, AerSale did propose construction language, but Jetaire did not agree. (2) For its part on all 16 sets of words, Jetaire contends that the no construction is needed for any of them, and that the Court and jury should simply treat them by their "plain, ordinary meanings."

**B. Overview of Applicable Law.**

### 1. Indefiniteness

As stated above, twelve 12 sets of contested claim phrases are contended by AerSale to be indefinite, and hence invalid, for that reason needing no construction. The law on indefiniteness of a patent claim was recently restated by the Supreme Court in the 2014 *Nautilus* case:

> [W]e read § 112, ¶ 2 [of the patent statute] to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty. The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable. The standard we adopt accords with opinions of this Court stating that the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter.

*Nautilus, Inc. v. Biosig Instr., Inc.*, 572 U.S. 898, 910 (2014), quotations omitted.

All claim construction issues are questions of law for the court, but the meanings are as seen by persons skilled in the art, and courts are often in need of evidence outside the PTO prosecution history to determine such views. Such outside evidence is called "extrinsic evidence." The Supreme Court has instructed:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015).

Therefore, while definiteness is a question of law for judges to decide, the relevant mindset to be determined is that of persons skilled in the art. The Court in *Nautilus* importantly commented: "[C]laim construction calls for "the necessarily sophisticated analysis of the whole document, and may turn on evaluations of expert testimony." (*Id.* at 911). Three years after *Nautilus*, the Federal Circuit dealt with the indefiniteness issue in more detail, in *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357 (Fed. Cir. 2017). The *Eli Lilly* court made three important determinations for our purposes here:

- "'general principles of claim construction apply' to the question of indefiniteness." (*Id.* at 1370.)

- Subsidiary issues within the law question of indefiniteness, involving the mindset of persons skilled in the technical field involved in the patent, could and did arise in litigation, and were factual in nature. "Understandings that lie outside the patent documents about the

meaning of terms to one of skill in the art or the science or state of the knowledge of one of skill in the art are factual issues." (*Id.* at 1371).

- While the indefiniteness determination remains one of law for the court to decide, "the district court's underlying determination, based on extrinsic evidence, of what a person of ordinary skill would understand "vitamin B12" to mean in different contexts is a question of fact." (*Id.*)

Underlying questions of fact on indefiniteness issues are often, as in *Eli Lilly*, resolved with the aid of testimony of experts in the field. Such testimony is part of the "extrinsic evidence" in claim construction, meaning evidence *outside* the PTO record. The PTO record is the intrinsic evidence, consisting of the application, its prosecution through the Patent & Trademark Office, and the prior art considered during that prosecution.

Extrinsic evidence, while generally less important than the intrinsic evidence, is often needed to resolve the factual issue of what persons skilled in the field thought at the time the applications were filed. That question can *sometimes* be answered by recourse to the intrinsic record alone, but frequently not. Modern case law reveals many instances of district courts basing their indefiniteness decisions in large part on expert testimony as to the meanings of words and phrases in dispute as understood by persons skilled in the art. I will discuss this subject in more depth later.

## 2. Construing patent claim phrases

As stated above, claim construction is the process of determining the meaning of a word or phrase in a patent claim, as viewed by a person of ordinary skill in the field at the time the patent

9

application is filed. *See Multiform Desiccants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1477 (Fed.Cir.1998) ("It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed. Such person is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field.")

The purpose of claim construction in U.S. law is primarily to assist the jury in its determination of infringement. *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1050 (Fed. Cir. 2016) ("the aim of claim construction [is] to give the finder of fact an understandable interpretation of claim scope to apply to the accused systems"). The wording of the patent claims in this suit is not scientifically complex and does not involve mathematical equations. Yet the parties are in disagreement on the meaning of sixteen sets of words or phrases appearing in the relevant claims of the three patents in suit. The task at hand is to resolve those disagreements.

### (a) "Intrinsic Evidence"

The intrinsic record, if it reveals the meaning of a phrase in issue, is usually determinative. *Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term.); *Kathrein-Werke K.G. v. Radiacion Y Microondas S.A.*, 2010 WL 2011939 (N.D. Ill. 2010 *4) ("intrinsic record is generally controlling").   The intrinsic record includes the patent itself; its prosecution history in the Patent & Trademark Office (PTO); and the prior art references mentioned in that history. See, e.g., *E.I. du Pont de Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1068) (Fed. Cir. 2019) (intrinsic record includes "the prosecution history . . . including the prior art cited during the examination of the patent"); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317

(Fed. Cir. 2005) (same); *Powell v. Home Depot U.S.A., Inc.,* 663 F.3d 1221, 1230-31 (Fed. Cir. 2011) (same). .

### (b) "Extrinsic Evidence"

When the intrinsic record does not reveal the scope of a phrase in a claim, the court may need to consult extrinsic evidence, typically in the form of expert testimony or publications in the technical field, *e.g.,* technical dictionaries, to find the meaning understood by skilled persons as of the filing date of the application that became the patent in suit. *Teva Pharm. USA Inc. v. Sandoz, Inc.,* 574 U.S. 318, 320 (2015) ("[w]here the district court needs to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period, and where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about the extrinsic evidence").

## II.  THE 16 SETS OF CONTESTED WORDS AND PHRASES

Throughout the hearings and subsequent briefing we have used the groupings which AerSale used in its initial briefing (DE 73) to identify the claim words and phrases in dispute. AerSale presented the 16 sets of such words and phrases as topics A through P. They were argued that way at the Markman hearing, and I have labeled them that way as the 16 "sets" of phrases herein. For Sets A through D, F, H through J, and M through P, AerSale contends 12 of the sets of phrases are indefinite and hence cannot be construed. For the four remaining phrasing sets labeled E, G, K, and L, AerSale proposed construction language, but none agreed to by Jetaire. Jetaire contended all 16 sets of phrases were so clear that "plain ordinary" meanings should apply, with not judicial construction.

I was concerned that the construction proceedings would be quite thin and unhelpful if your Honor concludes against AerSale's assertions of indefiniteness and against Jetaire's contention that no judicial construction is needed. I therefore requested the parties to provide, without waiving their original positions, alternative constructions in actual wording for all 16 sets. They have done so in supplemental briefing.

I now address all of the noted issues, original and alternative, taking the phrases in the same order provided by AerSale's initial brief and used by me and by the parties in the Markman hearings. As mentioned, they are labeled Sets A through P.

**Set A: "thickness dependent upon size and type of aircraft fuel tank"** /

**"thickness in-dependent upon size and type of aircraft fuel tank"**

**(claims 1-3 of the '998 patent")**

AerSale's Set A raises issues about these words describing the foam pieces being inserted into an aircraft fuel tank in order to provide protection against ignition or explosion. This wording appearing in claims 1-3 of the Williams '998 patent, which issued in 2017, the first of the three patents in suit. Before discussing the parties' positions, I will need to address a preliminary point about this Set.

**1. The Government Misprint in Claim 2 of the '998 Patent**

There is a subject apparently not seen by either party here, but which clarifies some of the issues in this set of phrases. Due to clerical errors, first by the applicant, corrected ty the patent examiner, but then misprinted by the government printing office, claim 2 of the Williams '198 patent contains an error in step (d) of the claim, as shown on the next page here (Insert A):

Insert A – misprinted step (d) in cl. 2 of '998

*From '998 patent, claim 2:*

d) providing a plurality of planar sheets of reticulated

polyurethane foam (RPF) material, said RPF material

comprising a thickness in-dependent upon size and type

of aircraft fuel tank;

*printing error*

Fortunately for our purposes, the legally effective claim is the one allowed by the examiner, not the version erroneously printed in the patent. The law is clear that the district court can correct printing errors in a patent if the errors and the correct wording are apparent from the patent and its file history. See *4 Matthews Annotated Patent Digest* §25:144 ("**The Federal Circuit has held that the § 254 and § 255 do not foreclose the limited ability of a court to correct by claim construction an obvious error in a claim where the correction is clearly evident from the intrinsic evidence**."); *Novo Industries, L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1355–56 (Fed. Cir. 2003) ("[I]f we were to hold that the district court was powerless to correct any and all errors when construing the patent, every patent containing an error that makes a claim indefinite would be invalid until and unless corrected by the PTO."); *Inventio AG v. ThyssenKrupp Elevator Americas Corporation,* 5 F. Supp. 3d 665, 673 (D.Del. 2013) (obvious typographical error in the claim term of "hail call" instead of "hall call" did not render the claim indefinite and would be corrected by judicial claim construction and held to be effective even before a later issuing certificate of correction.)

Accordingly, the Court here can and should address the allowed version of step (d) in the Williams '998 application, not the printed version. We now investigate what the allowed claim wording actually was.

In PTO practice, words being inserted into a pending claim during prosecution are shown by underscoring, and words being deleted ate shown by strikethroughs. During prosecution of the application in the PTO, step (d) of claim 2, as then being amended by the applicant Williams is shown here (Insert B, from '998 patent PTO history, pdf 50; inking by me):

15

Insert B – atty error in amdmt (leading to print error)

c) numerically sequencing ~~said drawings~~ each drawing corresponding to the respective drawing location along the measured linear increment ~~each sequentially measured increment~~ within its respective ~~each~~ compartment;

d) providing a plurality of planar sheets of reticulated polyurethane foam (RPF) material, said RPF material comprising a thickness in ~~the range of 1.0 inch to 2.0 inches~~ dependent upon size and type of aircraft fuel tank;

e) excising an aggregate of cutouts of RPF blocks from said planar sheets of RPF, each cutout conforming to each of ~~said individual to scale~~ the scaled engineering drawings for each particular compartment, and further, designating each RPF block by a part number, an orientating "UP" arrow, and an ~~orienting~~ orientating "FORWARD" arrow;

f) for each compartment, arranging the aggregate of said RPF blocks in a progressive sequence corresponding to the ~~installation~~ sequence of the cutout part number of each RPF block ~~along the linear increments previously measured for the compartment~~ ;

g) for each compartment, sequentially packaging said aggregate of RPF blocks into groupings containing a specified number of RPF blocks per grouping;

h) composing ~~installation~~ instructions for each compartment, ~~said instructions~~ to be used by technicians and/or installers for the purpose of inserting the ~~in the installation of said~~ RPF blocks into the compartment;

i) parking the ~~subject~~ aircraft on a level surface and ~~at a designated site of the installation of the RPF blocks~~, emptying and purging all compartments of the fuel tank;

j) ~~selecting~~ commencing installation in a selected compartment ~~, then~~ by removing a ~~first~~ fuel tank access panel or other external tank cover which i) functions as an opening for entry of maintenance personnel and/or technicians into the compartment, and ii) is proximate ~~said first~~ the selected compartment;

k) inspecting the ~~inside~~ interior surfaces of the selected ~~said first~~ compartment to ensure cleanliness and accessibility by the installers;

l) placing the first sequential RPF block at a specified location within the ~~first~~ selected compartment ~~of the fuel tank~~ as so designated in the ~~installation~~ instructions;

m) placing each successively-ordered RPF block at its designated location within the ~~first~~ compartment as set forth in the ~~installation~~ instructions, until ~~said first~~ the compartment is filled ~~with the required number~~ in accordance with the instructions ~~of RPF blocks~~;

3

This wording obviously makes no syntactical sense. The patent attorney meant to strike through the "in" word, but did not do so. Subsequently, PTO Examiner Besler caught the error and corrected it by an examiner's amendment. (Examiners are allowed to make minor corrections to pending claims, if the applicant consents.) Williams's attorney consented, and the examiner's amendment appears as part of the Notice of Allowance of the application, shown on the next page here [Insert C, from '998 patent PTO history, pdf 13, inking by me]:

17

Insert C – Examr's amdt correcting error of "in-"

Application/Control Number: 14/851,511                                    Page 2
Art Unit: 3726

## EXAMINER'S AMENDMENT

1.      An examiner's amendment to the record appears below. Should the changes

and/or additions be unacceptable to applicant, an amendment may be filed as provided

by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be

submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in an interview with

James Hollin on October 17, 2017.

The application has been amended as follows:

**Claims**

Claim 1:

Third paragraph after the preamble has been amended as:

c) numerically sequencing each  drawing so as to correspond to ~~the~~a

respective drawing location along the liner increments within the tank;

Claim 2:

Third paragraph after the preamble has been amended as:

c) numerically sequencing each drawing corresponding to ~~the~~a respective

drawing location along the measured linear increment within its respective

compartment;

Fourth paragraph after the preamble has been amended as:

d) providing a plurality of planar sheets of reticulated polyurethane foam

(RPF) material, said RPF material comprising a thickness ~~in~~-dependent upon size and

type of aircraft fuel tank;

As seen, Examiner Besler corrected the error by striking through three characters: i, the n, and the space following the n. As so amended the claim was allowed and issued. However the government printing office (i) overlooked the examiner's striking of the "in " but (ii) caught what they thought was a hyphen following the n, resulting in the meaningless "in-" appearing in the printed claim 2, step (d).

For our purposes here, step (d) in claim 2 of the Williams '998 patent should be read and interpreted in its allowed version:

> d) providing a plurality of planar sheets of reticulated polyurethane foam (RPF) material, said RPF material comprising a thickness dependent upon size and type of aircraft fuel tank;

This correction moots some of the briefing and arguments of counsel in this case, but not all.

## 2. AerSale Indefiniteness Contention for Set A

| |
|---|
| Terms in dispute (after correcting printing error): **thickness dependent upon size and type of aircraft fuel tank  (claims 1-3 of the '998 patent)** |
| Aersale's construction: indefinite |
| Jetaire's construction: not indefinite |

As mentioned earlier, the Supreme Court in *Nautilus, Inc. v. Biosig Instruments, Inc.* held that a patent claim is indefinite if, when "read in light of the specification delineating the patent, and the prosecution history, [the claim] fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." 572 U.S. 898, 901 (2014). The Court acknowledged that full precision is not really possible:

> The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable. The standard we adopt accords with opinions of this Court stating that "the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter."

*Id.* at 910. In judging indefiniteness, the same legal principles normally used for interpreting patent claims are applied. *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008) ("Indefiniteness is a matter of claim construction, and the same principles that generally govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction."); *Plastipak Packaging, Inc. v. Ice River Springs Water Co., Inc.,* 2020 WL 6940709 *1 (D.Mass. 2020) ("In determining whether a patent is sufficiently definite, the

court applies "the same principles that generally govern claim construction").   Thus the default position is that claim terms usually have their ordinary day-to-day meanings. Exceptions apply where either (i) the patent applicant chose to be "his own lexicographer" for the meaning of certain terms, or (ii) something happened in the prosecution of the application in the PTO that reveals a more constrained than usual meaning for such terms for this particular patent. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322-23 (Fed. Cir. 2003, internal quotes deleted) ("A claim term carries its ordinary meaning unless the patentee unequivocally imparted" a new or different meaning or expressly relinquished claim scope during prosecution."); *Thorner v. Sony Computer Entertainment America LLC,* 669 F.3d 1362, 1365 (Fed. Cir. 2012, internal cites omitted) ("The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history.  There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution").

Here the claim is referring to the thickness of the flexible porous pieces that will be inserted into the aircraft's fuel tank in order to eliminate or reduce the risk of an explosion. There is no dispute that the size and geometry of fuel tanks vary from one type of aircraft to another. The methods involved here are generic to the various tanks.

AerSale's indefiniteness contention for Set A centers around the cutout foam pieces for insertion into a fuel tank and their having a "thickness dependent on size and type of the aircraft fuel tank."

This wording appears in all three claims of Williams '998. Jetaire initially argued that this phrase needs no construction because it has a plain meaning, but did not say what that meaning was.

AerSale argued (Br., DE 73. pp. 8-9) that the patent did not provide any specifics on the relationship between the foam thickness and the size or type of the fuel tank. It also complained that "type" of fuel tank does not tell the reader whether it is referring to a center tank or to a wing tank, or what kind of fuel will go into the tank. On indefiniteness the burden of proof is on AerSale to show the mindset of skilled readers at the time these patent applications were filed, *i.e.,* 2015-2017. *See, e.g., Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*, 809 F.3d 1223, 1224 (Fed. Cir. 2015) ("the burden of proving indefiniteness, as with any allegation of invalidity, remains on the party challenging validity who must establish it by clear and convincing evidence"); Warsaw *Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1371 (Fed. Cir. 2015) (Defendant failed to prove indefiniteness issue by clear and convincing evidence; *Sonix Tech. Co. v. Publications Intl. Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) ("Indefiniteness must be proven by clear and convincing evidence.")

AerSale, the burdened party, submitted no evidence on this subject. AerSale has not submitted any expert testimony or any other form of extrinsic evidence, and relies only on the arguments of counsel for these issues. The problem with that approach is that the question at hand is not what lawyers think of the phrases at hand, but what persons skilled in the art think they mean. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) ("The descriptions in patents are not addressed to the public generally, to lawyers or to judges, but, as section 112 says, to those skilled in the art to which the invention pertains or with which it is most nearly connected.")

Looking at that question, I examined the intrinsic evidence, *i.e.,* the patents in suit, their file histories, and the prior art of record before the PTO, to look for any evidence that these supposed deficiencies would be difficult for persons skilled in the art to solve as being inside or outside the scope of the claims. I found some such evidence. First, in the patent itself, the '998 patent discloses a sample embodiment of the invention involving the Boeing 737 tank configuration. The patent's written description sets out a thickness of 2 inches for the foam cutouts to be used in this particular tank (Col. 7, line 48); and in general the patent suggests a thickness of 2-4 inches, "depending on the size and contour of the fuel tank in which [they] are to be installed." (Col. 7, lines 12-14.)  Fig. 3 and Fig 3A (Insert D, next page) of the patent show an access panel for getting into the fuel tank:

Insert D – Figs. 2, 3, 3A



105

104

112

20 *access panel*

FIG. 2



*access panel*

20

A   B

B

A

FIG. 3

26   21

22

23

24

FIG. 3A

Obviously, the foam cutouts to be inserted must take account of the size and shape of such access panels, along with the geometry of the tank's interior. Persons skilled in this field would have to consider the size and shape of the foam pieces, in order for those pieces to be insertable into the fuel tank.

AerSale, despite having the burden of proof, has not submitted any expert testimony or any other form of extrinsic evidence, and relies on the arguments of counsel for these issues. Jetaire, the non-burdened party, has submitted an expert declaration of Dr. Theodosios Alexander (DE 88-2, pp. 2-61). After listing his numerous credentials in engines, fuels, combustion, and aerodynamics among other subjects, he opines that he is familiar with the patents in suit and their claims. In paragraph 26 of his declaration, Dr. Alexander states:

> A skilled artisan would find nothing uncertain about the scope of the language claiming RFP blocks with thickness "dependent upon size and type of aircraft fuel tank" or "in-dependent upon size and type of aircraft fuel tank."

Under these conditions, I therefore recommend that the Court rule that AerSale has not met its burden of proof on indefiniteness for these phrases.

| Terms in dispute (after correcting printing error): thickness |
| --- |
| Aersale's construction: indefinite |
| Jetaire's construction: not indefinite |
| Special Master's recommendation: not indefinite |

### 3. Jetaire Contention of Plain Ordinary Meaning

### for Set A

Jetaire contends that the Court should treat all of the 16 sets of claim terms for which no wording was initially proposed as "No construction needed" because the words are said to have a "plain, ordinary meaning." This, Jetaire says, is all that should be said by the Court. (Jetaire initial brief (DE 74, at pp. 8-9.) However, Jetaire failed in the initial briefing to set out a construction that went beyond these mere recitations to explain what the plain meanings actually are. This in my view is generally an improper approach to claim construction for claim phrases. This approach basically would leave these twelve sets of disputed terms with no judicial construction, and would in effect merely pass the questions to the jury as part of the infringement issue.

It is true that courts have often found contested claim language to be a subject on which "no construction" is needed, or, put another way, should be read simply as the plain ordinary meaning of the phrase, with no guidance to the jury. However, many courts in recent cases have seen that such a finding just pushes the issue to the jury in the form of a verdict question on infringement, without further explanation from the judge.[1] In that environment, the issue has morphed from a question of law into a question of fact, likely to be contested by opposing expert witnesses testifying on infringement or noninfringement. These cases suggest that the use of "plain ordinary

---

[1] It is of course possible that summary judgment motions may precede the trial. That would effectively revisit the claim-construction issues in a different form, with the Court having to decide the infringement issue, the validity issue, or both. It would require knowing the scope of the claim terms.

meaning" for claim construction purposes, without further explanation of what the meaning is, should be limited to situations where there can be only one possible meaning or cases where the plain meaning is an uncontested one. (See 1 ANNOTATED PATENT DIGEST (MATTHEWS) § 4.5 and cases there collected.) I believe the Court should follow that approach here. Simply labeling a phrase as "plain ordinary meaning" is not very helpful for advancing the case.

| Terms in dispute: **thickness dependent upon size and type of aircraft fuel tank  (claims 1-3 of the '998 patent)** |
| --- |
| AerSale's position: --- |
| Jetaire's position: plain ordinary; no construction needed |
| Special Master's Recommendation: construction needed |

I therefore now move to the parties' alternative positions, wherein they provide their actual constructions as requested.

## 4. Parties' Proposed\* Construction Wording for Set A

\*The parties have not waived their main contentions of indefiniteness (AerSale) or no-construction-needed (Jetaire) for this Set or for any of the other Sets to be discussed herein. When I list someone's contention in the actual-wording parts of this report, including all the other actual-wording sections to follow, it should be understood that the party's original contention remains in the case, and if upheld, these proposals may become moot.

| |
|---|
| Terms in dispute (after correcting printing error): **thickness dependent upon size and type of aircraft fuel tank  (claims 1-3 of the '998 patent)** |
| Aersale's alternate construction: thickness selected based on both size and type of aircraft fuel tank |
| Jetaire's alternate construction: RPF blocks that vary in size depending on the contour and type of aircraft fuel tank in which the RPF blocks are to be installed |

I do not believe the parties are in any real disagreement on their alternative constructions for this phrase. AerSale is essentially restating the claim words, adding only that the thickness of the foam blocks is "selected based on" rather than "dependent upon" size and type of tank.

Jetaire, as its alternative position, proposes that this phrase be interpreted that the blocks "vary in size depending on the contour and type" of tank involved. This also appears to me to correctly express what the phrase means. It is barely different from AerSale's proposal, but it specifies the tank's "contour" rather than size. In doing so, Jetaire is breaching an established canon of claim construction: reading features from the written description (usually from a specific example, as here) into a generic claim. The written description section of the patent states, at col. 7:

> The width of the aggregate RPF blocks 50 are fabricated in the range of 2.0 inches to 4.0 inches, depending on the size and contour of the fuel tank in which RPF blocks 50 are to be installed."

28

From the written description:

> FIG. **2** shows the location of the center wing tank of the Boeing® 737 aircraft, as
> would be seen looking through the bottom of the fuselage, and further, a tank access
> panel utilized by maintenance personnel for ground servicing.

'998 pat., cols. 4-5. The problem with Jetaire's approach is that this part of the patent's written description is describing only the example of the Boeing 737, not a generic dependency as recited in the claim under discussion. I believe AerSale's wording is more appropriate as a construction, and I recommend that the Court adopt it.

| |
|---|
| Terms in dispute (after correcting printing error): **thickness dependent upon size and type of aircraft fuel tank  (claims 1-3 of the '998 patent)** |
| AerSale's alternate construction: thickness selected based on both size and type of aircraft fuel tank |
| Jetaire's alternate construction: RPF blocks that vary in size depending on the contour and type of aircraft fuel tank in which the RPF blocks are to be installed |
| Special Master's recommendation: thickness selected based on both size and type of aircraft fuel tank |

**Set B: "parking the airplane on a level surface,**

**and emptying and purging" the tank (claims 1-3 of the '998 patent)**

**1. Indefiniteness (AerSale)**

AerSale initially contends the phrase "level surface" is indefinite, because there is no guidance in the '998 patent about how level a surface has to be in order to come within the claim language. As discussed above, the controlling precedent on indefiniteness came from the Supreme Court's 2014 decision in the *Nautilus* case. For the reader's convenience, I repeat two statements from that decision:

> [W]e read § 112, ¶ 2 [of the patent statute] to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty. The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable. The standard we adopt accords with opinions of this Court stating that the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter.

*Nautilus, Inc. v. Biosig Instr., Inc.*, 572 U.S. 898, 910 (2014), quotations omitted. And: "[C]laim construction calls for "the necessarily sophisticated analysis of the whole document, and may turn on evaluations of expert testimony." (*Id.* at 911).

30

We now return to the construction at hand, about level surface for parking an airplane. The '998 patent claims are method claims, *i.e.,* they recited a series of steps to be performed, to modify the design of an aircraft fuel tank. The step lettered i) in the claims recites "i) parking the aircraft on a level surface, and emptying and purging the tank." The part specifically in dispute is "level surface." I think everyone knows, in everyday parlance' what a level surface means: It doesn't tilt one way or another. Math-oriented citizens might say it is planar (no ripples or bends), and extends perpendicularly to the pull of gravity. But those are not necessarily what the term means to persons skilled in the art of aircraft fuel tank design, and that is the law question we are trying here to decide. The case law is clear where to look for the answer to that question: first, at the intrinsic record of the patent itself, its prosecution history in the PTO, and the references of record that were considered during that prosecution; and second, if need be, at extrinsic evidence about the mindset of skilled persons at the time of filing (2015 for the '998 patent).

Neither party has pointed to any intrinsic-record evidence on this topic, and my own review of the intrinsic record reveals only one intrinsic aspect: the claim itself reveals a possible meaning. As stated above, after the parking of the aircraft, this claim step adds the words "and emptying and purging the tank." From the positioning of these words within a single recited step, it seems reasonable that a purpose of the level surface may be to assist in that emptying operation which is recited immediately thereafter. It is easy to see how parking the plane on an incline or decline could make complete emptying difficult to do. Some of the remaining fuel or purging fluid would likely not drain. Is this what skilled workers in the field of aircraft tanks were thinking? The patent says nothing about the purpose, and the remainder of the intrinsic record is silent on it as well.

31

AerSale, for its contention of indefiniteness, submitted no extrinsic evidence, relying instead on the arguments of counsel, which have no evidentiary weight.[2]

Jetaire's briefing on indefiniteness did submit some evidence of definiteness for "level surface." Its responsive brief (DE 92) attached as Exhibit A the expert declaration of Dr. Theodosios Alexander, which contained the following:

> 27. A person of ordinary skill would have readily understood the scope of the term "level surface" with certainty based on its use in the claims and the context in which is it discussed in the specification [e.g., '998 Patent, at 8:26-29.] These terms are used regularly in aircraft documentation, and accordingly, skilled artisans would have seen and used these terms any number of times. These are words commonly used in the art and for which one of ordinary skill in the art would require no further clarification other than what has already been provided in the claim language and specification.

While I have respect for Dr. Alexander's credentials and have no reason to dispute what he says here, the declaration does not say anything on *how* the term would have been understood by skilled persons, or about how we should construe "level surface" in this patent.[3]

---

[2] AerSale cited some evidence with its alternative positions, but here we are dealing only with the indefiniteness question of indefiniteness.

[3] Jetaire did attach some evidence in the form of excerpts from the Oxford Dictionary of the English Language, possibly helpful on other points, but the excerpts did not refer to "level."

We are faced with a situation where the party bearing the burden of proof (AerSale) on the important underlying fact issue -- state of mind of persons working in the technical field – has submitted no evidence. The non-burdened party has submitted at least some evidence that the phrase "level surface" would have been clearly understood by such persons. I recommend that the Court conclude that AerSale's contention of indefiniteness for this phrase be rejected.

| |
|---|
| Terms in dispute (after correcting printing error): level |
| Aersale's construction: indefinite |
| Jetaire's construction: not indefinite |
| Special Master's recommendation: not indefinite |

## 2. Plain Ordinary Meaning (Jetaire)

I recommend that the Court here adopt the rule of the line of cases holding that an explanation is usually needed when a party asserts "plain ordinary meaning" without stating what that meaning is. That non-statement leaves the issue open for the jury, on the infringement question and possibly others, without judicial assistance. I think the rule stated above helps to move the case forward. Jetaire has labeled many claim phrases as not needing any construction, or, in its alternate phrasing, plain ordinary meaning, without including language explaining that meaning. I recommend rejection of the Jetaire position.

| |
|---|
| Terms in dispute: level surface |
| AerSale's position: --- |
| Jetaire's position: plain ordinary meaning; no construction needed |
| Special Master's recommendation: construction needed |

### 3. Parties' Proposed Constructions (alternative positions)

I proceeded on the possibility that your Honor would adopt my recommended rejection of the Jetaire position, leaving the issue basically open, so I requested Jetaire to provide alternative construction language for that eventuality. Jetaire complied with my request to the extent it was able to do so. (*See* Jetaire Supplemental Construction, Dec. 31, 2021.)

Jetaire suggests "even surface" as its alternative construction. The Oxford dictionary (Ex. F to Jetaire's original responsive brief (DE 92)) partially supports that view by having, as its first meaning for "level" the following wording: "Having an even surface; 'not having one part higher than another' (Johnson)." I think this meaning is correct.

AerSale proposes, as its alternative construction, "surface that is horizontally level without crown or grade." I find this meaning as correct as well. In view of the fact that everything in this world has imperfections, I think the word "significantly" should, with slight adjustment, be incorporated into the Court's construction.

| Terms in dispute: level surface |
|---|
| AerSale's position: horizontally level without crown or grade |
| Jetaire's position: having an even surface; not having one part higher than another |
| Special Master's recommendation: having an even surface, with one part not significantly higher than another, horizontally oriented without significant crown or grade |

**Set C: "proximate a pre-determined starting point of the installation" /**

**"proximate the selected compartment" / "proximate the aft compartment"**

**(claims 1-3 of the '998 patent)**

### 1. Indefiniteness

Once again AerSale says this phrase cannot be construed at all, because it is indefinite. JetAire, while having no burden of proof on the underlying issue, has submitted the expert declaration of Dr. Alexander (DE 82-2), which states that the terms would impart reasonable certainty as to their meaning (para. 34). He amplifies by giving multiple reasons for how a skilled person would view "proximate" in this context:

> 34. . . . . Specifically, a POSITA would understand that aircraft fuel tanks require access panels or tank covers to, among other things, allow a technician to access the interior of the tank for maintenance (or to install RPF blocks). A skilled artisan would further understand that most aircraft include multiple fuel tanks, and that the tanks are very large and therefore often include multiple access panels or covers to provide easy access to different portions of those large tanks. The specification (and Figures 8, 8A, 8B, and 8C) provides context that gives a person of ordinary skill reasonable certainty about the meaning and scope of the term "proximate" in the context of the invention. . . .

Dr. Alexander adds (para. 35) a conclusion on how the skilled person would know from the claim language where to locate the foam blocks relative to a chosen access opening in a chosen tank.

With no evidence from AerSale to the contrary, I must conclude that AerSale has not met its burden of proof on the underlying factual issue of a skilled worker's mindset. I recommend that the Court reject AerSale's indefiniteness contention.

| |
|---|
| Terms in dispute: proximate |
| Aersale's construction: indefinite |
| Jetaire's construction: not indefinite |
| Special Master's recommendation: not indefinite |

## 2. Plain Ordinary Meaning (Jetaire)

Jetaire again proposes to leave the wording unexplained for the jury, by having no judicial construction at all ("no construction needed"), but it relies on the expert declaration of Dr. Alexander, in the passage I have included above (para. 34), to support that view. For the same reasons I provided above, and based on the same case precedents, I think leaving the matter up in the air by labeling it merely "no construction needed" is turning it into an issue purely of fact for the jury to ponder, and is not a proper way to proceed. Jetaire's reasoning, however, can cure the problem by giving an explanation of what is occurring at this point in the claimed method, i.e., an access port is being selected as a starting location. So I recommend that the Court reject the

unexplained version from Jetaire and move on to the next section here, where actual construction wording is provided.

| |
|---|
| Terms in dispute: proximate |
| AerSale's position: --- |
| Jetaire's position: plain ordinary; no construction needed |
| Special Master's Recommendation: construction needed |

### 3. Parties' Proposed Construction Wording

| |
|---|
| Terms in dispute: proximate |
| AerSale's proposal: near |
| Jetaire's proposal: nearest |

As mentioned earlier, the patent claims here are, as with most patent claims, generic, *i.e.,* not tied to a single embodiment, whether described in the patent or not. I think counsel for both sides recognize that. Aircraft fuel tanks can have any of a number of sizes and geometries, with different numbers of compartments and access openings. The '998 patent makes this clear. After describing the Boeing 737 tank arrangements, the '998 patent specification states: "[T]here is no intent to confine the inventive method disclosed to one particular make, model, or series of aircraft, or particular configurations of aircraft fuel tanks." ('998 patent, col. 5, lines 62-64.)

The parties seem to be in agreement that more than one fuel compartment may be present within a single fuel tank. Hence the dispute here is really about the word "proximate," which is telling us where the loading of foam blocks is to begin. AerSale rightly points out that the '998 patent disclosure allows for starting at any one of the access points. An example is given in Fig. 8 of the patent drawings, where the tank has three compartments each with an access opening, as reproduced here (Insert E):

**Insert E --  Fig. 8 of '998**

18   50

133 — aft compartment

132 — center compartment

131 — forward compartment

FIG. 8

19   20

133   18 — aft access panel

132

131

FIG. 8A

20   19

center access panel

forward access panel

133

132

131

FIG. 8B   18   20   19

133

132

131

20   19

FIG. 8C

In this example, the three fuel compartments in this tank are shown, along with their access panels, which can be used for insertion of the foam blocks for this patent, as well as for more routine maintenance work.  The claim phrase in dispute here is about where the block-insertion should begin, and the phrase says it should be "proximate" one of the compartments. Obviously, work has to start somewhere.  The start point obviously must be chosen to be near where the insertion work is to be done. "Nearest" would be reading an extra limitation into the claim, which is contrary to established legal precedent.

The intrinsic record supports this view. The '998 claims always use "proximate" to mean nearby, so that work can be done. In the Martindale reference of record (cited by Examiner Besler), states: "The tie assemblies may be more closely spaced together at or proximate to points at which the aircraft external skin is attached to the aircraft substructure." As used by Martindale, "at" is the nearest, and proximate is the alternative, not quite so near.

I recommend that the Court construe "proximate" as "near," as contended by AirSale.

| Terms in dispute: proximate |
| --- |
| AerSale's proposal: near |
| Jetaire's proposal: nearest |
| Special Master's recommendation: near |

**Set D: "FAA-certified fuel gauge calibrating procedures for the aircraft" /**

**"FAA certified fuel gauge calibrating procedures for the subject aircraft"**

**(claims 1-3 of the '998 patent)**

| |
|---|
| Terms in dispute: FAA-certified . . . procedures |
| AerSale's position: Indefinite |
| Jetaire's position: No construction needed |

## 1. Indefiniteness

We now come to the question of how to interpret the claim's reference to FAA-certified procedures for calibrating aircraft fuel gauges after a known quantity of fuel has been placed in the tank. The issue boils down to the patent law question of whether a patent claim can properly reference an outside written source, especially one that is subject to change by the action of an outside entity uncontrolled by the patent owner. The parties have produced only meager authority for their opposing positions on whether such a claim is definite within the meaning of 35 U.S.C. § 112(b), which requires that:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

I believe the type of incorporation by reference involved here presents a question not addressed by any reported case that I could find. I conclude that the patent statute does not permit a claim that incorporates by reference a written document outside the patent owner's control and subject to change during the years of the patent's term.

Jetaire has cited no authority on this issue. AerSale has cited only one case, which has some bearing on the logic of indefiniteness but did not involve an incorporation by reference of a changeable publication during the patent's term. I quote here the entirety of AerSale's discussion of that precedent (Initial Br., DE 73, at typed p. 7):

> *Ball Metal Beverage Container Corp. v. Crown Packaging Tech., Inc.* , 838 F. App'x 538, 542-43 (Fed. Cir. 2020) ("Under our case law, then, a claim may be invalid as indefinite when (1) different known methods exist for calculating a claimed parameter, (2) nothing in the record suggests using one method in particular, and (3) application of the different methods result in materially different outcomes for the claim's scope such that a product or method may infringe the claim under one method but not infringe when employing another method. Such a claim lacks the required degree of precision 'to afford clear notice of what is claimed, thereby apprising the public of what is still open to them.'" (quoting *Nautilus,* 572 U.S. at 909)).

True enough, but here we are not dealing with different methods existing, in the present tense, but with ones that may vary over time as the FAA regulations may change. On this AerSale cites again some generic language of the Federal Circuit, to the effect that legally effective patent claim scope cannot vary over time.

43

The AerSale supplemental brief, at typed pages 9 and 10, also quotes the appellate court: "We have long recognized that, although the understanding of a claim term can evolve over time, the literal scope of a patent claim cannot have different meanings at different times." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1385 (Fed. Cir. 2014, internal quotes deleted). That also makes sense, although it is not specific to incorporation by reference.

In patent law, a claim defines the invention, i.e., the exclusionary right of a patent owner. In a multi-claim patent, each claim serve as a sort of mini-patent unto itself, and is infringed independently of the other claims. An entity is liable for patent infringement if that entity is using all the features of any one valid and enforceable claim. For a method claim, as here, infringement requires carrying out all the recited steps of that claim. The problem here is that the inventor has introduced into each of the '998 claims wording that effectively allows the FAA to control the scope of claims 1-3 of the '998 patent from time to time, by changing its regulations on fuel-gauge calibrating procedures. I do not believe this was or is within the contemplation of the patent statute.

Consider a situation where a method is being carried out by X Corp. in a manner that does not infringe claim 7 of a method patent P because it fails to carry out the FAA certification steps in accordance with the FAA regs. The FAA may relax its calibration regs next week, seemingly making X Corp. now an infringer of the patent, because now it is carrying out all the recited steps of claim 7. The wording of the claim has not changed, nor has the conduct of X Corp., yet the liability has sprung into existence. It is difficult to imagine that was the intent of the patent statute.

Changing the scope of an issued patent is not unheard of, but Congress has put serious constraints on such situations. There is a strict statutory procedure for reissuance of a patent claim, 35 U.S.C.

§251. First, the reissue applicant must show, inter alia, that the involved claim issued by error (§252(a)). Second, if the change sought would broaden any feature of the claim, the reissue application must be filed within two years of the original grant date (§252(d)). And all of the claims must be submitted to the PTO for a new examination. Perhaps most importantly, potential infringers of the new claim are entitled to intervening rights, washing away any liability for infringements of the former claim, even where the accused product or method was within the original claim and the new claim. So a rule change by the FDA would seem to eliminate infringement liability for past infringements of the affected claims. In addition, the reissue provisions of the statute expressly allow district courts to grant compulsory licenses for entities to continue doing what they were doing before the scope change was made. (§ 252)[4]  In the present case we would have none of these protective features when a claim scope changes due to an FAA rule change. There is no new examination by the PTO; nothing wipes away infringements of the old version of the claim; etc. Such a result cannot have been intended by Congress.

This is not to say that a patent claim can never contain an incorporation by reference. The statute provides that a dependent claim (not involved in the '998 patent here) can refer to an independent claim of the same patent, and will be deemed to have all the features (limitations) of that independent claim without having to recite them again. (§112(d)). This is a very different situation from what we have here. The dependent and independent claims are printed in the same patent, and, with the exceptions mentioned above, are not subject to change over time.

---

[4] Similar intervening rights occur by statute for any changed claim resulting from, for example, a post grant review (35 U.S.C. §318(c)) or a reexamination proceeding (35 U.S.C. § 307(b)).

There are additional practical problems with allowing FAA regulations to be read into patent claims. For example, someone looking into the validity of a claim would need to check the FAA regs as well as the printed patent to learn the claim's scope. It might turn out the claim was valid over the prior art at one time, and invalid at another, due to changes in the FAA regulations. This sort of flexibility is totally contra to the patent system as we know it, and in my opinion quite unworkable.

For all of the above reasons, among others,[5] I recommend that the Court find all three claims of the '998 patent indefinite and hence invalid.

---

[5] One might consider the possibility of interpreting the '998 claims as being restricted to the FAA regulations as they stood at the filing date of the '998 application, September 11, 2015. However, Jetaire has not raised that possibility, and has argued the contrary, i.e., that the term is time-dependent. Its own submitted evidence is to the contrary. Jetaire's expert Dr. Alexander's declaration (DE 88-2), para. 32, states:

> The plain language of this claim states that the "FAAcertified fuel gauge calibrating procedures" that should be used are those for the particular "aircraft" in which the RPF is being installed. Being a relatively simple task, a skilled artisan would know exactly how to recalibrate a fuel gauge for a particular aircraft, and even if that were not true, they would certainly know where to find the procedures in the relevant documentation for the aircraft (e.g., the *current* FAA certified fuel gauge calibrating procedure for the subject aircraft). [Emphasis mine.]

46

| |
|---|
| Terms in dispute: FAA-certified . . . procedures |
| AerSale's position: Indefinite |
| Jetaire's position: No construction needed |
| Special Master's recommendation: Indefinite |

**Set E: "performing an inspection of the installed RPF blocks" (claims 1-3 of the**

**'998 patent)**

| |
|---|
| Disputed Terms: inspection of the installed blocks |
| Aersale's position: inspecting each RPF block after all of the RPF blocks have been installed |
| Jetaire's position: inspecting the aggregate of RFP blocks to ensure they fill the [fuel] tank as set forth in the instructions |

### 1. Aersale's Proposed Construction

This is one of the four Sets in contention where AerSale did not assert indefiniteness and did initially propose construction wording. That proposal will be treated in section 3 below.

Jetaire has provided an alternative position, in the event its primary position of plain ordinary meaning is rejected by the Court. The parties' differences of wording will be treated below.

### 2. No Construction Needed (Jetaire)

There are no grounds for Jetaire's original position that this phrase needs no construction.

### 3. Parties' Alternative Proposed Construction Wording

I believe the parties' alternate wording proposals are close to each other, with the difference that AerSale says "each" block needs to be looked at after the insertions are done, while Jetaire requires only that "the aggregate" of installed blocks needs to be inspected. The claims and the written description in the patent shed no light on this difference of how the inspection should be done. In the patent drawings, Fig. 9 (see Insert F, next page) shows a three-compartment tank, fully loaded with foam blocks. Fig. 2 shows the same tank as having only one panel for outside access, located below the forward compartment. It would seem difficult to inspect "each" block in such a configuration with only one outside access opening to work with.

Insert F: Figs. 2, 9



*aft compartment (filled)*

*center compartment (filled)*

*forward compartment (filled)*

FIG. 9



*access panel*

FIG. 2

The patent's written description says nothing about this. The prosecution history did not involve this phrase at all. It was in the application as filed, and it stayed in all the way to issuance, with no questions raised by the examiner.

I recommend that we follow the general rule of claim construction to avoid reading into a general claim features that are not recited in that claim, and hence reject AerSale's proposal that "each" block must be individually inspected.

Jetaire's proposed inclusion of the word "fill," even with the proviso about following instructions, could be confusing to the jury in situations where voids are in the design, as described in the '998 patent. For this reason I recommend changing Jetaire's "as set forth" to read "to the extent set forth" in the instructions, but otherwise accept Jetaire's proposed wording.

| Terms in dispute: **performing an inspection of the installed RPF blocks** |
| --- |
| AerSale's position: inspecting each RPF block after all of the RPF blocks have been installed |
| Jetaire's position: inspecting the aggregate of RFP blocks to ensure they fill the [fuel] tank as set forth in the instructions |
| Special Master's recommendation: inspecting the aggregate of RFP blocks to ensure they fill the fuel tank to the extent set forth in the instructions |

**Set F: "emptying and purging the tank"/ "emptying and purging all compartments of the fuel tank" / "emptying and purging all compartments of the center wing tank"**

### 1. Indefiniteness (AerSale)

| Terms in dispute: emptying and purging |
|---|
| Aersale's position: indefinite |
| Jetaire's position: definite |
| Special Master's recommendation: definite |

### 2. Plain Ordinary Meaning (JetAire)

"Purging" is not a word that should be subject to some unexplained "plain ordinary meaning." The verb "purge" is used in many areas of speech, including political and medical subjects. It does not have exactly the same meaning in aeronautics. I recommend that the Court reject Jetaire's contention that it needs no construction.

| Terms in dispute: emptying and purging |
|---|
| AerSale's position: --- |

| |
|---|
| Jetaire's position: plain ordinary; no construction needed |
| Special Master's Recommendation: construction needed |

### 3. Parties' Proposed Construction Wording for Set F

| |
|---|
| Terms in dispute: emptying and purging |
| Aersale's position: defueling and cleansing the tank with purging fluid/ <br><br> defueling and cleansing all compartments of the fuel tank with purging fluid / |
| Jetaire's position: defueling and flushing the fuel tank / <br><br> defueling and flushing all compartments of the fuel tank / |

The parties' alternative constructions, as shown here, are remarkably the same except for the exact meaning of "purging" the tank after removing any fuel in it. AerSale wants to interpret "purging" as "cleansing," while Jetaire would read it as "flushing." This does not seem to me a major difference, but the issue again is how persons skilled in the art would, at the period 2015-2017, have understood the phrase, again with the Supreme Court's proviso that precision of scope is not required, only reasonable understanding.

This is step "i" in each of the three claims of the '998 patent, and is done immediately after parking the aircraft. Looking first to the intrinsic evidence within the patent itself, "purging" is mentioned in the abstract of the disclosure, which states that the "fuel tank is filled with purging fluid," but not otherwise discussed. I do not find it at all in the written description, but it was in all three

claims from the filing date onward, again with no further explanation. Examiner Besler mentioned "purging" in his first office action on this application. He rejected the three claims for indefiniteness, but only on these grounds (prior to the claims being amended):

- technicians

- selecting a first compartment

- the compartment

- a Boeing 737 aircraft

(Prosecution history, pdf pp. 62-64.)

We see that the examiner was attentive to possible indefiniteness, but not on the "purging" ground involved here. In fact, in the same office action Examiner Besler acknowledged that a prior art reference (Barbosa) did *not* disclose various features recited in the Williams claims. (Prosecution history, pdf p. 65): "Barbosa does not teach . . . emptying and purging the fuel tank into which the blocks are to be installed." The Examiner apparently did not view the purging term as indefinite.

Turning to the extrinsic evidence, we again view Dr. Alexander's expert declaration (DE 74-6). He states:

> 28. The phrase "emptying and purging" in the claims is one that would have imparted a scope that is certain to one skilled in the art. . . [T]hese are common words for which one of ordinary skill in the art would require no further clarification other than what has already been provided in the claim language. A skilled artisan would have known perfectly well what it meant to empty a fuel tank

54

and there are no better words to describe the act. Similarly, the term "purge," which is employed regularly in relevant aircraft documentation, would have been understood with certainty by skilled artisans.

There is further extrinsic evidence on "purging," as will be discussed in the next section. However, I do not believe it is so clear and convincing as to support a contention of indefiniteness. I recommend that the Court reject AerSale's contention of indefiniteness.

## 2. Plain Ordinary Meaning (Jetaire)

In the aviation fuel tank context, I do not believe it is advisable to leave the term "purging" with no construction aiding the jury.

| |
|---|
| Terms in dispute: emptying and purging |
| AerSale's position: --- |
| Jetaire's position: plain ordinary; no construction needed |
| Special Master's Recommendation: construction needed |

## 3. Parties' Proposed Construction Language

As mentioned in the indefiniteness part of this section, the parties' disagreement is over the word "purging" to be construed as "cleansing," while Jetaire prefers "flushing." We know from the

55

claim language that it has to be done with a fluid. The rest of the intrinsic record in uninformative on this subject.

For extrinsic evidence, the SAE and ARAC reports (previously discussed) do not mention purging. The Dictionary of Aviation, cited here by AerSale, defines it:

**purge** — To cleanse a system by flushing

AerSale points out that Jetaire's proposed wording omits the cleansing part. I recommend that the Court construe the phrase in question by adding back that word: "defueling and flushing and cleansing the fuel tank / defueling and flushing to cleanse all compartments of the fuel tank.

| |
|---|
| Terms in dispute: emptying and purging |
| AerSale's position: defueling and cleansing the tank with purging fluid/ <br><br> defueling and cleansing all compartments of the fuel tank with purging fluid / |
| Jetaire's position: defueling and flushing the fuel tank / <br><br> defueling and flushing all compartments of the fuel tank / |
| Special Master's recommendation: defueling and flushing to cleanse the fuel tank / <br><br> defueling and flushing and cleansing all compartments of the fuel tank / |

**Set G: "each"/ "each of" (claims 1-3 of the '998 patent)**

| |
|---|
| Terms in dispute: each |
| AerSale's primary position: every / every one of |
| Jetaire's primary position: Plain ordinary meaning |

We finally arrive at a Set where the plain, ordinary meaning as contended by Jetaire is appropriate. "Each" means every one of whatever is being talked about at that time. The word here occurs some 38 times in the claims of the Williams '998 patent. It is used in various contexts, *e.g.,* each block, each compartment, etc.

## 1. Indefiniteness

[Not raised for this set.]

## 2. Plain Ordinary Meaning

AerSale's proposed construction, by introducing "every," may mean the same thing, but could present some danger of losing the context.

I recommend that the Court not construe "each," and leave it to the trier of fact.

| |
|---|
| Terms in dispute: each |
| AerSale's primary position: every / every one of |
| Jetaire's primary position: Plain ordinary meaning |
| Special Master's recommendation: No construction necessary; ordinary meaning will apply |

**Set H: "cutout(s)" (All Asserted Claims of the '998, '109, and '541 patents)**

### 1. Indefiniteness

AerSale's initial Markman brief (DE 73) stated (typed p. 10): "The '998 patent provides irreconcilable descriptions of a 'cutout,' which leaves the term hopelessly indefinite."

It is true that the '998 patent refers to "cutout" in two different contexts, but they are hardly irreconcilable. A cutout can mean: (i) a piece of foam (sometimes referred to as a block) that has been cut from a larger sheet of foam and shaped to the design specification; or (ii) merely an area that has been excised from that piece, to allow it to fit around pipes, stiffeners, or other hardware that is already in the tank. The intrinsic evidence makes clear which is which.

The piece of foam that has been cut away from a larger sheet and shaped is described as a cutout of the first kind in Column 8, lines 1-3 of the written description:

> A plurality of cutouts of RPF blocks 50 is made from the manufactured sheets of RPF

That same passage refers to the blocks 50 after being excised to make room for fitting the block over hardware already in the tank.

Elsewhere in the written description, the areas of the block that have been thus excised are themselves called cutouts. I refer to Fig. 5 of the drawings (Insert G, on the next page), which shows the excised blocks. Their cut-away parts after excision from the block are

59

shown as 52 and 54, and the patent's description calls them "four upper cutouts 52" (col. 6, line 63), and "three cutouts 54 which allow clearance for the lower stiffeners" (col. 7, lines 3-4). There is also an "arcuate cutout" 53 mentioned. This is clearly using the second meaning of cutout.

INSERT G – Fig. 5 markup



FIG. 5

FIG. 5A

AerSale says there is an irreconcilable dual usage of "cutout" that makes the claims hopelessly indefinite. (DE 73, typed p. 10)  The patent's description and drawings say the contrary. There is a dual usage, but no confusion when read in context. AerSale's supplemental brief of Feb. 4  (DE 120) urges that "The Federal Circuit has held numerous times that a claim term is properly found indefinite when the intrinsic record contains inconsistent positions as to the scope and meaning of the claim term." That is true, but there are no inconsistent positions here, when "cutout" is read with the rest of the claim phrase to tell us what it is cut from, i.e., when read in context. I am also aware of the cases holding

Turning to some illustrative occurrences in of "cutout" in the asserted claims, the '998 patent claim 1, step (e) recites "excising an aggregate of cutouts of RPF blocks from said planar sheets of RPF material . . ."  This is usage #1, i.e., blocks being excised. Claim 2's step (e) is similar, and so is step (e) in claim 3. The '109 patent claims use the other meaning of cutout, i.e., the geometric spaces that have been cut away from the block by excision. For example, claim 1 of the '109 patent recites:

> the plurality of foam blocks comprise [i.e., include] an upper cutout for clearance around an upper stiffener of the fuel tank, an arcuate cutout for clearance around a fuel pump of the fuel tank, and a lower cutout for clearance around a lower stiffener of the fuel tank;

These are obviously cutouts of the second kind, the areas that have been cut away from the block by excision. The same usages are seen in the '541 patent. For example, claim 5:

> The system of claim **1,** wherein:

a first foam block among the first plurality of foam blocks comprises a plurality of

upper cutouts, including the upper cutout, to provide clearance for upper stiffeners

in the fuel tank;

a second foam block among the first plurality of foam blocks comprises a

plurality of lower cutouts, including the lower cutout, to provide clearance for

lower stiffeners in the fuel tank;


****


In sum, I cannot see any lack of clarity in the usage of "cutouts" in the asserted claims. AerSale

has not provided any evidence to the contrary. Dr. Alexander's expert declaration is to the same

effect. (DE 88-2, paras. 29-30.) I recommend that AerSale's indefiniteness argument be rejected.


| |
|---|
| Terms in dispute: cutout |
| AerSale's position: indefinite |
| Jetaire's position: not indefinite |
| Special Master's recommendation: not indefinite |

## 2. Plain Ordinary Meaning

I also recommend rejection of Jetaire's argument that "cutout" has a plain and ordinary meaning, such that the jury needs no further instruction on it. I do not believe that laypersons could easily handle the phraseology that I have gone through on this subject in connection with AerSale's indefiniteness position.

| Terms in dispute: cutout |
| --- |
| AerSale's position: --- |
| Jetaire's position: No construction needed |
| Special Master's recommendation: construction needed |

## 3. Parties' Proposed Construction Wording

AerSale has suggested no alternative construction language for "cutout." The cases cited by AerSale are to the effect that a phrase appearing multiple times in a patent should not be read inconsistently. *Capital Mach. Co. v. Miller Veneers, Inc.*, 524 F. App'x 644, 647 (Fed. Cir. 2013) (quoting *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005)).  AerSale argues that the Federal Circuit case law says "When the intrinsic record contains inconsistent positions as to the scope and meaning of a claim term, the term is properly found to be indefinite." (Jan. 7 Br., typed p. 17)  That is true, but there are no inconsistent positions here, only two different usages, each clear in the claim language.  I am also aware of the line of cases seeming to suggest

that when a given word appears multiple times in a patent, it usually should have the same meaning in all occurrences, unless the written description indicates otherwise; but context cures any problem. (See, *e.g. Procter & Gamble Co. v. CAO Group, Inc.,* 2014 WL 2116994 *5 (S.D. Oh. 2014) ("The same word takes on different meanings in a claim when used in different contexts" (citing Federal Circuit authority). *See also PODS, Inc. v. Porta Stor*, Inc., 484 F.3d 1359, 1366 (Fed. Cir.), cert. denied, 552 U.S. 1052 (2007) ("We apply a 'presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims.'"). The authorities do not signify that every instance of multiple usages must be constrained to a single meaning, regardless of context. For example, the background section of a patent may use "inspections" or "ignition sources" to refer to different things in different parts of the written description. That is the situation here. The parties appear to agree on that much. (*See, e.g.,* AerSale's Br. of Jan. 7, DE 115, at typed p. 17:

> At times, the '998 patent uses the term 'cutout' to describe areas of foam excised from a foam block, such as block 51 having cutouts 52, 53, and 54. . . . At other times, the '998 patent uses the term "cutout" to describe the foam block itself, such as by stating "each cutout is painted with a part number (P/N) and numerical sequencing."

Since the contexts here are clear, I recommend that the Court adopt two constructions for "cutout" in this case, depending on which item is involved and needing to be construed. One is a cutout of blocks from a foam sheet;  the other is cutout spaces on the block due to excision.

| Terms in dispute: cutout [in **context** of cut from sheet] |
| --- |
| AerSale's position: indefinite; no alternative language |
| Jetaire's position: |
| Special Master's recommendation 1: a foam block cut from a foam sheet |

| Terms in dispute: cutout [in **context** of a space made by excision in a block] |
| --- |
| AerSale's position: indefinite; no alternative language |
| Jetaire's position: [unclear, due to use of brackets and italics] |
| Special Master's recommendation 2: empty spaces in a foam block, due to further cutting |

**Set I: "verifying the [fuel] tank's maximum fuel quantity"** /

**"verifying a quantity of the fuel in the fuel tank"**

**(claims 1-3 of the '998 patent;**

**claims 1-14 and 21 of the '109 patent)**

### 1. Indefiniteness (AerSale)

AerSale contends the phraseology here is indefinite because none of the three patents in suit contains information on what information is to be verified. The issue is whether persons skilled in the art would have known where to find such fuel information, in the '998 claims the maximum that the tank can hold after insertion of the foam blocks, in the '109 claims any amount that happens to be present at the moment. It would be well to quote AerSale's exact words in its initial brief on this issue:

> But here the specifications of the both the '998 and '109 patents are silent as to what a fuel quantity is compared to in order to "verify" such a quantity. Is it looking it up in a manual? Reading a gauge in the cockpit? Filling the fuel tank completely full and then measuring how many gallons of fuel there are in the tank? Something else? The patent specifications do not say.

(Br. DE 73, typed p. 12.)

67

As on earlier indefiniteness points, AerSale has the burden of proof on the underlying fact of how skilled persons would have regarded these "verifying" directives. AerSale has submitted no evidence on the subject, relying instead on raising lawyers' questions.

Since the claim is dealing with the subsequent procedure for calibrating the fuel gauge inside the aircraft, it seems clear that there can be only two possible amounts that could possibly be verified in advance of doing the calibration: (1) The amount pumped into the tank to fill it ('998 claims); or (2) the amount that happens to be in the tank at a given moment ('109 claims). Once known (verified) that amount can be used in the instrument calibration.

 In the intrinsic record, the Abstract section of both patents mentions learning about filling the tank: "and a new maximum fuel quantity recalibrated."

The intrinsic record also reveals, during the prosecution of the Williams '109 patent in suit, the opinion of Examiner Besler that the verification step in the Williams claims was a "matter of common knowledge." (Insert H, *'109 Prosecution history,* pdf p. 106, set out on the following page). It is the amount dispensed into the tank to fill it from some external source, either to its maximum ('998 claims), or to some possibly lesser amount ('109 claims), either of which could then be used in the instrument calibration effort.

**Insert H – Examiner's common knowledge statements**

**Examiner Besler's statements in the '998 prosecution history, at pdf 106 (highlighting added):**

16. Examiner further notes that it is known, as a matter of Common Knowledge, to verify a quantity of fuel that has been dispensed into a fuel tank, for the benefit of ensuring that the fuel tank has an appropriate and desired amount of fuel.

17. Examiner notes that Examiner's assertion of Official Notice Common Knowledge (regarding forming a plurality of foam blocks by cutting from a single foam material and verifying a quantity of fuel in a fuel tank) were also made in the previous Office Action and has not been challenged or traversed in Applicant's previous response. Therefore, Examiner's position of Official Notice and Common Knowledge is taken to be admitted prior art. MPEP 2144.03.

(The MPEP citation is to the PTO's Manual of Patent Examining Procedure. The cited section allows examiners to state, in clear cases, what they regard as having been common knowledge prior to the filing of the patent application being examined. Williams' attorney challenged the examiner on this, demanding evidence, but the examination proceeded on other points, leaving the "common knowledge" point out of the discussions.)

The intrinsic record therefore indicates some evidence that (i) the maximum fuel capacity of a

tank is the amount dispensed into it to fill it after the foam blocks have been put in place,

and that (ii) the measurement of some fuel dispensed into a tank was a matter of common

knowledge: It is the amount of fuel dispensed into the tank. AerSale, having the burden of

proof, has submitted no evidence to support its contention of indefiniteness.

I therefore recommend that the Court reject AerSale's argument that the claims are indefinite.

| Terms in dispute: verifying |
| --- |
| AerSale's position: indefinite |
| Jetaire's position: not indefinite |
| Special Master's recommendation: not indefinite |

## 2. Plain Ordinary Meaning

I believe these phrases can and should be explained to the trier of fact. I believe it is inappropriate

to label this verification phraseology as plain or ordinary. I therefore recommend that the Court

reject Jetaire's argument to that effect.

| Terms in dispute: verifying |
| --- |
| Jetaire's position: no construction needed |

| Special Master's recommendation: construction needed |
| --- |

## 3. Parties' Proposed Construction Wording

Aersale seeks to introduce the wording of an expected value for the amount of fuel in the tank when the tank is full. However, the remainder of the step in the '998 patent is to compare the amount pumped into the tank with the amount showing on the onboard fuel gauge, to see that the gauge is correctly calibrated. Presumably there will be less fuel now in a full tank, after insertion of the foam blocks, than a full tank would have contained without the blocks in place.

I think the verifying in the claim is the verifying is simply the observing of the amount of fuel pumped into the tank. I do not believe AerSale's proposed wording makes that clear.

Jetaire suggests using the word "ascertaining" for determining the maximum fuel capacity, but does not say what should be looked at to do so. In my view, it is best to make clear to the trier of fact what is being verified, i.e., the amount of fuel dispensed into the tank, from whatever source. This is something we do to some extent when filling our cars with gasoline (although perhaps not always from the E (empty) level).

Please note that we are not dealing quite at this point with the gauge-calibration procedures of the FAA that follows the verifying. That issue was taken up in the discussion of Set D above, and found to be indefinite.

| |
|---|
| Terms in dispute: verifying |
| AerSale's alternate position:<br><br>checking the [fuel] tank's maximum fuel quantity against an expected value /<br><br>checking a quantity of the fuel in the fuel tank |
| Jetaire's alternate position:<br><br>ascertaining the [fuel] tank's maximum fuel quantity /<br><br>ascertaining a quantity of the fuel in the fuel tank |
| Special Master's recommendation: Observing the amount of fuel dispensed into the tank |

**Set J: "channel void to reduce weight" (All Asserted Claims of the '109 patent;**

**claims 5 and 18 of the '541 patent)**

### 1. AerSale Indefiniteness Argument

Void refers to spaces inside the fuel tank that are not occupied by foam material. It may or may not be occupied by fuel As will be discussed shortly, the SAE Report RevA (DE 74-6), which is part of the intrinsic record for both the '109 and '541 patent, explains that there are two kinds of voids in the ignition-prevention technology: component voiding and gross voiding.  Component voiding refers to cutouts in the foam pieces to allow them to fit around hardware that is in the tank, such as a fuel pump. Gross voiding means cutting spaces inside the foam itself, for various design reasons, such as increasing fuel flow.

AerSale contends the phrase "channel void to reduce weight" is indefinite, because there is nothing in the written description to tell skilled persons what kind of void is being talked about or how it reduces weight of the tank.  Jetaire's responsive brief is uninformative on this subject. It states (DE 92, typed p. 15): "The term 'channel void to reduce weight' would be readily understandable to a skilled artisan and would provide reasonably certain scope to a POSITA in view of its use in the claims and the corresponding specification disclosures . . . ." followed by two supposedly supporting references. The first is based on a comment of Examiner Besler (see Jetaire Respons. Br., Exh. E, DE 88-6, typed p. 9), hence part of the intrinsic record for the '451 patent. Mr. Besler said, discussing a prior art patent to Cragel:

73

"the third block comprises a channel void to reduce weight (figure 6, element 400,

see below)."

Here are the two pages (Insert I) from the '541 file history containing those remarks:

Insert I – 2 pp dtd 9-26-19, inserting channel void for first time

*Filed 9-26-19*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re the application of: | Confirmation: 9360 |
| Williams, Michael D. | Art Unit: 3726 |
| Application Number: 15/816,150 | Examiner: Besler, Christopher James |
| Filing Date: November 17, 2017 | Docket No.: 841001-1011 |

Title: **METHOD & MATERIAL FOR ACCOMPLISHING IGNITION MITIGATION IN TANKS CONTAINING FLAMMABLE LIQUID**

### RESPONSE TO FINAL OFFICE ACTION DATED JULY 16, 2019

Mail Stop: RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

In regard to the outstanding final Office Action mailed on July 16, 2019, the following Response is submitted.

It is believed that no extensions of time or fees for net addition of claims are required beyond those that may otherwise be provided for in documents accompanying this paper. However, if additional extensions of time are necessary to prevent abandonment of this application, then such extensions of time are hereby petitioned under 37 C.F.R. § 1.136(a), and any fees required therefor (including, but not limited to, fees for net addition of claims) are hereby authorized to be charged to our Deposit Account No. 20-0778.

Please amend the application as follows:

66.    (New)  The method of claim 41, wherein:

a first foam block among the plurality of foam blocks comprises the upper cutout;

a second foam block among the plurality of foam blocks comprises the lower cutout;

the first foam block and the second foam block are stacked in a vertically-oriented column within the fuel tank;

the plurality of foam blocks further comprises a third foam block placed between the first foam block and the second foam block in the vertically-oriented column; and

the third foam block comprises at least one channel void to reduce weight.


67.    (New)  The method of claim 66, wherein a fourth foam block among the plurality of foam blocks is oriented vertically, spans the vertically-oriented column from the first foam block to the second foam block, and covers the at least one channel void on one side of the vertically-oriented column.

In that filing, the attorney made rather extensive arguments, but they do not mention "channel void." We next see it – without elaboration -- in Examiner Besler's Reasons for Allowance, as discussed above, filed on January 14, 2020, in which the examiner gives, as one of his reasons for allowance of the then-pending claims, that the prior-art patent to Wiggins did not disclose a "channel void."  The examiner's reasoning is shown on the next page here (Insert J):

Insert J: Reasons for Allowance in the '150 (Williams2) application ('109 patent)

*Filed Jan. 14, 2020*

Application/Control Number: 15/816,150                                    Page 8
Art Unit: 3726

### Terminal Disclaimer

3.      The terminal disclaimer filed on May 4, 2019 disclaiming the terminal portion of

any patent granted on this application which would extend beyond the expiration date of

U.S. Patent Number 8,849,998 and has been reviewed and is accepted. The terminal

disclaimer has been recorded.

### Reasons for Allowance

4.      Claims 26 – 31, 33 – 55, 65, and 67 are allowed.

5.      The following is an examiner's statement of reasons for allowance: Examiner's

closest art, Wiggins (U.S. Patent Number 4,103,190), has been presented and

discussed in the previous Office Action.

Regarding claims 26 and 41, Wiggins does not teach positioning the plurality of

foam blocks within the fuel tank with the upper cutout placed around an upper stiffener

and the lower cutout around a lower stiffener. Wiggins also does not teach stacking a

first foam block, which comprises the upper cutout, in a vertically-oriented column with a

second foam block, which comprises the lower cutout, and a third foam block, which

comprises a weight-reducing channel void.

Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

accompany the issue fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."

### Conclusion

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to CHRISTOPHER J BESLER whose telephone number is

A number of problems arise. First, the Examiner's reproduction of the Cragel patent drawing shows no component labeled 400. Looking at the Cragel patent itself, 400 is indicated to be the entire structure shown in the drawing, not some space in the arrangement. Complications increase when we see that Cragel does not mention the phrase "channel void" and therefore does not attempt to explain what it would mean. Moreover, even if Cragel did show something labeled "channel void," he does not say under what conditions it would reduce tank weight.

Jetaire's second basis for arguing definiteness is that the Williams patents both discuss "planned void spaces" in their written descriptions, and that those written descriptions further say that the foam's strategic position "provides for minimal weight penalty." (Br. DE 92, typed p. 15.) The main problem here is that a weight penalty is the opposite of reducing weight, which is the claim phrase we are trying to interpret.

There are more problems with the current record in this case. The Alexander declaration does not address this phrase. An online technical dictionary indicates that a similar phrase, "void channel" means "the open passages of a porous or packed medium through which liquid or gas can flow." (The Free Dictionary.com.)  I think it requires a skilled person to say if this is the same thing as channel void or not.

The 2016 version of the SAE report (Rev. B) (DE 74-6, electronic p. 56) contains considerable update material on voiding. I cannot tell whether this Rev B was actually submitted to the PTO examiner as Jetaire contends. (The printed patent lists only the 1991 and 1998 RevA versions). Its 2016 date places it in the window of when the second and third Williams applications were filed. I believe it will require expert testimony to sort out the voiding language and teachings of this Rev

B version and what skilled people would have understood from it in connection with the patent language in dispute here.

As parts of the intrinsic record, these statements should be given some weight. However, they do not in my opinion shed any light on the meaning of "channel void" to persons skilled in the art. All we can glean from the intrinsic record is that the patent applicant said, in the claims now at issue, that the purpose of the channel void was to reduce weight, presumably weight of the foam itself, not the foam when its voids are filled with fuel. On the present evidentiary record, I cannot conclude that there was any plain ordinary meaning to the phrase, as understood by skilled persons. Dr. Alexander's expert declaration does not deal with this subject. I therefore recommend that the Court defer ruling on construction of this phrase in the '109 patent until a later time in the case, when more evidence may be available.

The record for the '541 patent is somewhat different but leads to the same result. "Channel void to reduce weight" was not mentioned in the written description portion of the application for the '541 patent, but was recited in several of the originally filed claims therein, e.g., claim 6. The same examiner, Mr. Besler, stated at one point in that prosecution that the prior-art patent to Cragel did disclose a channel void, but later withdrew that ground of rejection. The applicant (Williams) persisted in reciting "channel void to reduce weight" in some of his claims, but there was no discussion of meaning; and the written description was not amended to state even the phrase, let alone the meaning. A notice of allowance was forthcoming from the PTO, still with no further discussion of "channel void to reduce weight."

The usual practice in patent prosecution is to support every claim phrase with the same wording in the written description. On the literal level, that did not happen here, and did not happen in the

79

'109 prosecution either. Jetaire argues, correctly, that support for a claim phrase need not appear literally, in exactly the same words, in the written description. However, I cannot determine what words, if any, in the written description do support this phrase in the claims, and what its scope is, as read by skilled persons. Expert testimony will likely be needed.

AerSale submits no evidence tending to show indefiniteness as viewed by skilled persons.

I regret that the current evidentiary record does not permit me to make a recommendation to the Court on this indefiniteness issue. I do not know what skilled persons would make of this phrase. It is not mentioned in the written description of the '109 or '541 patents in suit. I recommend instead that resolution of the issue be deferred to a later stage of the case, when expert testimony may be able to sort it out in a meaningful way.

| Terms in dispute: channel void |
| --- |
| AerSale's position: indefinite |
| Jetaire's position: not indefinite |
| Special Master's Recommendation: [unable to provide a recommendation at this stage of the case] |

## 2. Jetaire's Plain Ordinary Meaning Contention

From the confusing state of the record as discussed above in Section 1 under this Set J, one thing is clear: It cannot be said that there was any plain or ordinary meaning to "channel void" at the time of filing the '109 or '541 patent applications. Neither application mentioned channel void in the written description or in the claims at the times of filing. A contemporary technical report, SAE 4170 RevB (DE 74-6, commencing at electronic page 59) submitted to the Court by Jetaire,[6] also does not mention channel void. It mentions and defines only "Component Void" and "Plan Void."

I recommend that the Court reject Jetaire's contention for a plain ordinary meaning.

| | |
|---|---|
| Terms in dispute: channel void | |
| AerSale's position: --- | |
| Jetaire's position: plain ordinary meaning; no construction needed | |
| Special Master's Recommendation: construction needed [at some later stage of the case] | |

---

[6] It is unclear whether RevB was submitted to the PTO during prosecution of the Williams applications. The PTO files make reference only to RevA (2007). Jetaire included the RevB version in Exhibit E of its initial brief to the Court (DE 74-6, beginning at ECF p. 56) as representing (perhaps correctly, perhaps mistakenly) materials cited to the PTO in the file history.

### 3. Parties' Proposed Construction Wording

Jetaire's alternative position: a groove in a foam block left by design that reduces the collective weight of the installed foam blocks

AerSale's alternative position, without waiving indefiniteness: a groove in a foam block left by design.

From the above discussion of the complications associated with "channel void," I cannot recommend either party's proposed construction language at this point.

| |
|---|
| Terms in dispute: channel void |
| AerSale's position: a groove in a foam block left by design |
| Jetaire's position: <br><br> a groove in a foam block left by design that reduces the collective weight of the installed foam blocks |
| Special Master's Recommendation: Defer construction of this phrase until a later point in the case, when more evidence may be available |

## Set K. "determining interior dimensions of the fuel tank"

### (claims 1-14 of the '109 patent)

### 1. Indefiniteness (AerSale)

[AerSale has not challenged this phrase for indefiniteness.]

### 2. Plain Ordinary Meaning (Jetaire)

Jetaire contends (Opening Br. p. 13) that these words "are common, well-understood terms in the English language that require no construction at all. These terms are unambiguous on their face and in the context in which they appear in the claims." In this instance I agree.

| |
|---|
| Terms in dispute: determining interior dimensions |
| AerSale's position: - - |
| Jetaire's position: No construction needed |
| Special Master's Recommendation: No construction needed |

84

### 3. Parties' Proposed Construction Language

| |
|---|
| Terms in dispute: determining interior dimensions |
| Aersale's position: measuring the interior profile of the fuel tank at regularly-spaced increments |
| Jetaire's  (alternative) position: determining interior dimensions, contour, and precise locations of structural members of the fuel tank |

This sub-section may well be moot, in the event the Court accepts my recommendation in section 2 above, that no construction is needed in this instance. I proceed on the possibility that the Court will not rule that way, and that actual construction language may be needed.

As seen in the table, both sides, as their alternative arguments, have proposed adding features to this clause. This can sometimes be legally proper. On the one hand, construing a patent claim often requires adding words to those in a claim for purposes of understanding, and it has long been held that the written description portion of a patent is a good guide for context and understanding. (*See, e.g*., 2 MUELLER ON PATENT LAW § 1504(D).) No one disputes that. On the other hand, the law forbids reading into a claim features that may be in the written description portion of the claim but do not appear not in the claim being construed.  *See, e.g., Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012) ("While claim terms are understood in light of the specification [i.e., written description portion), a claim construction must not import limitations from the specification into the claims"; *Scimed Life Sys. v. Inc. v. Advanced Cardiovascular Sys. Inc.*, 242

F.3d 1337, 1340 (Fed. Cir. 2001) (referring to the reading of specification features into a claim as "one of the cardinal sins of patent law"). No one disputes this settled proposition either. Hence a delicate balancing act is called for: Guidance is good; reading in is bad.

Jetaire, to support its construction contention if needed, "determining interior dimensions, contour, and precise locations of structural members of the fuel tank," quotes a portion of the written description, but candidly concedes the written description says these things are "by way of example only." I therefore believe reading in such features is improper.

AirSale argues for its reading that "regularly spaced increments" is a construction is warranted by the written description, which says:

> The profile of the compartment is measured and scaled at regularly-spaced increments along a line extending from a selected wall, tank floor, or the ceiling of the forward compartment 131.

'109 patent at col. 10, lines 8-11.

In my view this too is reading in features from the patent's specification, rather than using it for guidance and understanding of the words that really are in the claim.

I recommend that the Court reject both parties' alternative (part 3) proposals, and leave this claim phrase as is. It consists of ordinary non-technical words, and is readily understandable. It requires someone to determine interior dimensions of the fuel tank, not necessarily all of those dimensions, and not necessarily at regularly spaced increments.

86

| |
|---|
| Terms in dispute: determining interior dimensions of the fuel tank |
| Aersale's alternate position: measuring the interior profile of the fuel tank at regularly-spaced increments |
| Jetaire's alternate position: determining interior dimensions, contour, and precise locations of structural members of the fuel tank |
| Special Master's recommendation: no construction needed |

**Set L: providing a bulk quantity of foam material (All Asserted Claims of the**

**'109 patent)**

## 1. Indefiniteness

[Aersale has not raised an indefiniteness contention for this set.]

## 2. Jetaire's Contention That No Construction Is Needed

Jetaire's argument for no judicial construction is close to the mark, but I recommend that the Court

assist the trier of fact by providing some degree of construction for this phrase.

| |
|---|
| Terms in dispute: providing a bulk quantity of foam material |
| AerSale's position: manufacturing and delivering a pre-determined quantity of bulk foam material |
| Jetaire's position: No construction needed |
| Special Master's Recommendation: Construction needed |

## 3. Parties' Proposed Construction Wording

| |
|---|
| Terms in dispute: providing a bulk quantity of foam material |

| |
|---|
| Aersale's position: manufacturing and delivering a pre-determined quantity of bulk foam material |
| Jetaire's position: in the planning part of the process; no requirement of the process user to be the manufacturer or deliverer of the starting foam |

Aersale's position here seems to come out of nowhere. We are talking here about the starting materials – made and by someone, but normally not made by service providers like the businesses carrying out this airplane safety improvement. The intrinsic record shows nothing reflecting a need or intention to add such limitations to the claims.

Jetaire's argument is the one I think is correct. "Providing" does not require manufacture or delivery. It just means, in colloquial terms, getting your hands on some material, in order to begin the work. I recommend that the Court adopt it without the constraints of manufacture or delivery.

| |
|---|
| Terms in dispute: providing a bulk quantity of foam material |
| Aersale's position: manufacturing and delivering a pre-determined quantity of bulk foam material |
| Jetaire's position: Ordinary meaning, in the planning part of the process; no requirement of the process user to be the manufacturer or deliverer of the starting foam |
| Special Master's recommendation: providing foam in the planning part of the process, regardless of identity of its manufacturer or deliverer |

**Set M: "a first foam block among the plurality of foam blocks comprises the upper cutout ... a second foam block among the plurality of foam blocks comprises the lower cutout ... the first foam block and the second foam block are stacked in a vertically-oriented column within the fuel tank" (All Asserted Claims of the '109 patent)**

## 1. Indefiniteness (AerSale)

AerSale contends that the claims are basically undecipherable in reciting the many blocks involved. I believe AerSale is mistaken in its reading of the claims. For example, early in its initial brief AerSale states: "Claims 15-30 recite that the plurality of foam blocks all comprise at least two cutouts . . ." This is not a correct reading of the claim language. AerSale's addition of the word "all" before "comprise" is unwarranted. In patent claim language, "comprise" means has at least; comprising means "including," etc. *See, e.g.*, 3 PATENT LAW FUNDAMENTALS (Rosenberg) §1410 (describing use of comprising as having one or more of the object mentioned). Such claim language means the claim is open-ended, and is by far the dominant way of writing patent claims in the United States. It will cover arrangements that have at least the recited features, even if they have many more. There is no justification for reading it as meaning that *all* of a recited group of items have the characteristics being mentioned. Thus we must edit out the word "all" from the AerSale arguments. For example, in claim 1, the plurality of blocks comprise, *i.e.,* include at least, *an* upper cutout and *a* lower cutout. Use of the singular is important. In claim 15, the plurality comprise (i.e., include) an upper cutout for clearance around the upper stiffeners in the tank, etc.

I have read all the asserted claims of the '109 patent, and I find nothing confusing in them. A claim here typically recites that there are a "plurality" of foam blocks, and that the plurality "comprise,"

90

*i.e.,* include, an upper cutout for certain purposes and a lower cutout for others. A third block is also mentioned among the plurality. This is part of the feature that mentions the channel void discussed earlier. For the reasons given earlier, that phrase might be problematic, but the phrases currently under discussion are not. One could of course make all the blocks the same, as appears to be the case in some of the patent drawings, such as Fig. 7 (see next page, Insert K), but may choose not to do so, as in Fig. 10 (see Insert L following).  I do not see any mandate in the claim wording for either approach. The wording is generic, but not unclear.

| |
|---|
| Terms in dispute: comprising upper, comprising lower, etc. |
| AerSale's position: indefinite |
| Jetaire's position: not indefinite |
| Special Master's recommendation: not indefinite |

Insert K – Fig. 7 of '109

Case 1:20-cv-25144-DPG   Document 133   Entered on FLSD Docket 03/09/2022   Page 103 of
142
Case 1:20-cv-25144-DPG   Document 74-3   Entered on FLSD Docket 09/15/2021   Page 8 of 21

**U.S. Patent**          Apr. 28, 2020          Sheet 5 of 10          US 10,633,109 B2



FIG. 7

Insert L – Fig. 10 of '109

**U.S. Patent**        Apr. 28, 2020        Sheet 8 of 10        US 10,633,109 B2



*upper cutout*

*no upper cutout*

FIG. 10

## 2. Plain ordinary meaning (Jetaire)

Once again we encounter Jetaire's position that no construction is needed for these phrases. Once again I will follow the line of cases favoring more, rather than less, construction by the Court in order to simplify to some extent the burden on the jury in having to apply the claim words in order to decide infringement or validity. For that purpose I recommend rejecting Jetaire's no-construction position.

| |
|---|
| Terms in dispute: comprising upper, comprising lower, etc. |
| AerSale's position: --- |
| Jetaire's position: plain ordinary; no construction needed |
| Special Master's recommendation: construction needed |

## 3. Parties' Proposed Construction Wording

AerSale's brief on this is somewhat difficult for me to follow. AerSale of course continues to urge its primary argument that the claims require *all* the blocks to have the recited kinds of cutouts. AerSale's proposed alternative appears to be to recite that the plurality of blocks must include at least one that has an upper cutout, etc. If I understand rightly, I think that reading would be correct.

Jetaire proposes language that would insert the legally established meaning of "comprises," i.e., "includes at least."  That too would be a correct reading. However, I am not sure either proposal is the optimal solution here. To avoid having to instruct the jury repeatedly on the same word, I would instead recommend instructing just once that whenever they see "comprise" or "comprising" in a patent claim, it means "has at least" or "having at least." This meaning is well established in patent law, but is not an established meaning in normal public usage.

| |
|---|
| Terms in dispute: comprising upper, comprising lower, etc. |
| AerSale's position: change comprising to comprises at least |
| Jetaire's position: change comprises to includes at least |
| Special Master's recommendation: [do not amplify claim language, but instruct that comprises means includes at least] |

**Set N: "the plurality of foam blocks further comprises a third foam block**

**placed between the first foam block and the second foam block in**

**the vertically-oriented column" (All Asserted Claims of the '109 patent)**

### 1. Indefiniteness (AerSale)

I do not see anything new being argued here. It is a continuation of Set M, but now adding that the arrangement comprises (*i.e.,* includes at least) a third kind of block, and the blocks are stacked vertically, *i.e.,* one on top of the other in an upwardly extending column. (The recitation of a channel void is a different topic, and not under discussion in this part. See Set J.) This set is definite for the same reasons given for Set M above.

| |
|---|
| Terms in dispute: third foam block placed . . . |
| AerSale's position: Indefinite |
| Jetaire's position: Not indefinite |
| Special Master's Recommendation: Not indefinite |

### 2. No Construction Needed (Jetaire)

Jetaire argues primarily, and rightly in this instance, that the phrases here in question need no construction. The recitation is simply about a third foam block placed in a stack between the first and second blocks. It is difficult to imagine a simpler set of words. I believe any attempted

construction would likely complicate, rather than simplify, the tasks of the jury. I recommend that the Court adopt the Jetaire argument.

| Terms in dispute: third foam block . . . |
| --- |
| AerSale's position: indefinite |
| Jetaire's position: plain ordinary meaning, needs no construction |
| Special Master's Recommendation: plain ordinary meaning, needs no construction |

### 3. Parties' Alternative Proposed Construction

| Terms in issue: third intermediate foam block |
| --- |
| AerSale's position: all blocks must have types of cutouts |
| Jetaire's position: third block must not have an arcuate cutout |

AerSale's alternatively proposed construction language is only to say again that there is hopeless ambiguity, or that *each* block in the plurality must have the required cutouts in them. That is not a correct reading, for the reasons stated earlier. While Fig. 5 of the '109 patent illustrates a block having all three kinds of cutouts, it would be improper to read such a limitation from the specification or drawings into the claims. The claim phrase under consideration does not require cutouts at all.

Jetaire proposes (in its alternative position) that the language should specify that the intermediate (third) block has *no* arcuate cutout. This is reading into the claim a negative feature, at least one block "not having." While there is nothing inherently wrong with negative recitations – they are often the very point of novelty in a patent claim – they, like any other feature, cannot be read into an existing claim by way of interpretation or construction. Here is what the '109 claim 1, for example, says about the third block:

> the plurality of foam blocks further comprises a third foam block placed between the first foam block and the second foam block in the vertically-oriented column;

> and the third foam block comprises at least one channel void to reduce weight.

The wording under discussion here is neutral as to cutouts. The third block might have one or might not. I am not seeing what language might be in the claim that would justify reading into it a requirement that the intermediate block must *not* have an arcuate cutout in it, as urged by Jetaire in its alternative position. There is no block lacking it in Fig. 10 (Insert K, supra), for example. Jetaire's brief does not explain where this supposed negative claim limitation comes from. It should not be read into the claims.

| |
|---|
| Terms in issue: third intermediate foam block |
| AerSale's position: all blocks must have types of cutouts |
| Jetaire's position: third block must not have an arcuate cutout |

Special Master's recommendation: no construction needed

**Set O: "at least one foam block among the first plurality of foam blocks comprises**

**an upper cutout in a top surface for clearance around an upper stiffener of the fuel tank,**

**an arcuate cutout in a side surface for clearance around a fuel pump of the fuel tank, and**

**a lower cutout in a bottom surface for clearance around a lower stiffener of the fuel tank"**

**(All Asserted Claims of the '541 patent)**

### 1. Indefiniteness; 2. No Construction Needed

This appears to be Set M redux. It recites the same three types of cutouts, but now has the additional limitation that at least one block in the overall set must have all three cutout types. I mentioned earlier that Fig. 5 of the '109 patent (Insert G supra) showed such a block. Now we see the same drawing in Fig. 5 of the '541 patent.

The parties assert their same primary positions as in earlier sets: AerSale says the phrase is indefinite, based largely on some infringement contentions on which I am unknowledgeable and

which would likely have no effect on claim construction. Jetaire says the wording here is so plain that no construction is needed. I recommend rejection of both positions.

| Terms in dispute: three cutouts |
| --- |
| AerSale's position: indefinite |
| Jetaire's position: not indefinite |
| Special Master's Recommendation: not indefinite |

| Terms in dispute: three cutouts |
| --- |
| AerSale's position: indefinite |
| Jetaire's position: No construction needed |
| Special Master's Recommendation: Construction needed |

### 3. Parties' Proposed Construction Wording

Jetaire proposes to interpret this claim language as calling for at least the possibility that three different blocks would be involved in meeting the claim language, one having the arcuate cutout, another having the upper cutouts, and a third having the lower cutouts. This is an incorrect reading of the claim. As mentioned above, the claim language mentions only a single block among the array of blocks. This single one must have all three kinds of cutouts. I do not see how the claim can be read any other way.

101

AerSale's proposal is correct and clear:

> at least one foam block among the first plurality of foam blocks includes at least three cutouts: (1) an upper cutout in a top surface for clearance around an upper stiffener of the fuel tank, (2) an arcuate cutout in a side surface for clearance around a fuel pump of the fuel tank, and (3) a lower cutout in a bottom surface for clearance around a lower surface of the fuel tank

I recommend that the Court adopt the AerSale wording.

| |
|---|
| Terms in dispute: at least one foam block which comprises . . . |
| AerSale's position: at least one foam block among the first plurality of foam blocks includes at least three cutouts: (1) an upper cutout in a top surface for clearance around an upper stiffener of the fuel tank, (2) an arcuate cutout in a side surface for clearance around a fuel pump of the fuel tank, and (3) a lower cutout in a bottom surface for clearance around a lower surface of the fuel tank |
| Jetaire's position: can be 3 different blocks |
| Special Master's Recommendation: at least one foam block among the first plurality of foam blocks includes at least three cutouts: (1) an upper cutout in a top surface for clearance around an upper stiffener of the fuel tank, (2) an arcuate cutout in a side surface for clearance around a fuel pump of the fuel tank, and (3) a lower cutout in a bottom surface for clearance around a lower surface of the fuel tank |

102

**Set P: "flexible foam material" (claims 13-15 of the '541 patent)**

### 1. Indefiniteness (AerSale)

Here the dispute is about the meaning of "flexible." Once again AerSale says the word makes the claim indefinite because it does not say *how* flexible a foam block needs to be. We are once again confronted with how a person skilled in the art would interpret this word in the context of the '541 patent. AerSale again offers no evidence on that important factual subquestion.

Looking to the intrinsic record, the term appears 18 times in the written description portion of the '541 patent's specification. The Detailed Description tells us:

> A key feature of the present inventive concept is that the design and structure of the shaped block foam pieces *allows them to be bent or slightly compressed in order to fit through existing access bays* or ports of various aircraft fuel tanks.

'541 patent, col. 11, lines 23-27 (emphasis added).

This passage provides context for the term "flexible." As used here, it means sufficient flexibility to allow the blocks to be bent or slightly compressed, much like in our day-to-day language. This is in order to fit them into access bays of aircraft fuel tanks, which can be of various sizes.

"Flexible" also appears in several of the intrinsic prior art references of record, such as the Cragel patent 9,321,347 and the SAE AIR 4170 RevA report of record, previously discussed herein, suggesting that persons skilled in the art knew the meaning. In the extrinsic evidence, Dr. Alexander's expert declaration addresses the term "flexible" in considerable detail, as shown in full on the next page (Insert M):

Insert M – para. 33 of Alexander decl. (in pdf)

**Dr. Alexander declaration (DE 88-2, typed pp. 18-19):**

33. The term "flexible foam material" has meaning that would have given the relevant claims reasonably certain scope to a skilled artisan. The specification provides several examples of "flexible foam materials," including reticulated polyurethane, polyethers, and more specifically "polyethers . . . in which the repeating chemical unit contains a carbon-oxygen bond derived especially from an aldehyde or an epoxide." '541 Patent, 3:60-4:4 (also describing reticulated polyurethane foam as on "composed of a skeletal matrix of lightweight interconnecting strands"). The specification provides further context, teaching that "[t]he foam material selected for this disclosed method is considered to be 'memory foam.' Memory foam generally returns to its original shape after compression down to 40% of its original volume. A key feature of the present inventive concept is that the design and structure of the shaped block foam pieces allows them to be bent or slightly compressed in order to fit through existing access bays or ports of various aircraft fuel tanks." '541 Patent, 11:19-27. The claims themselves also provide context that would give a skilled artisan certainty as to scope. For instance, claim 14 recites that "the flexible foam material comprises reticulated polyurethane foam" and claim 15 recites that "the flexible foam material comprises polyether foam." Id., claims 14-15. To one skilled in the art, these disclosures sufficiently distinguish that which is "flexible foam" in the context of the patent and that which is not. Taken together, these teachings inform a skilled artisan with reasonable certainty as to the scope of the term "flexible material."

AerSale has produced no evidence on the mindset of persons skilled in the art. It does make reference to a happening in the parent application of the one we are considering. The parent led to the issuance of the '109 patent, and Examiner Besler took the position that "flexible" was indefinite. The applicant, Williams, contested that position, but in order to advance the application prosecution in the PTO, canceled the term in the then-pending claims, while leaving it multiple times in the written description. In my opinion, this does not come close to meeting AerSale's burden of proof on the mindset of skilled persons. I have several reasons for this view: (1) The colloquy on "flexible" did not occur in the prosecution of the patent we are now considering ('541). (2) The term is used in several references of record in the '541 prosecution history, suggesting that persons skilled in the art regarded the term as defined. (3) The expert declaration of Dr. Alexander explains in detail how skilled persons would view the term.

I recommend that the Court reject AerSale's contention of indefiniteness.

| Terms in dispute: flexible |
| --- |
| AerSale's position: indefinite |
| Jetaire's position: not indefinite |
| Special Master's Recommendation: not indefinite |

**2. Plain Ordinary Meaning (Jetaire)**

In this instance I am inclined to agree with Jetaire that the word "flexible," read in context of the '541 patent, has a plain and ordinary meaning: The foam is to some extent bendable. I do not see how further elaboration would be helpful to the triers of fact. I therefore recommend that the Court accept Jetaire's contention that "flexible," in the context of the '541 patent in suit, should have its plain, ordinary meaning and does not require construction.

| |
|---|
| Terms in dispute: flexible |
| AerSale's position: indefinite |
| Jetaire's position: plain ordinary meaning (no construction needed) |
| Special Master's Recommendation: plain ordinary meaning (no construction needed) |

**3. Parties' Alternative Construction Wording**

| |
|---|
| Terms in dispute: flexible |
| AerSale's position: [Unable to propose meaning without importing features from the specification] |
| Jetaire's position: foam material capable of being bent and returning to its original shape after compression down to at least 40% of its original volume |

AerSale candidly admits in its brief (DE 120, typed p. 18) that it cannot offer a proposed construction of "flexible" without importing terms from the written description, which is legally improper. I tend to agree. Jetaire proposes a number of limitations (features) that are not in the claim but are mentioned in references and in Dr. Alexander's expert declaration. In my view, it is best to avoid these potentially problematic read-ins. I therefore remain with my stated view that "flexible" does not need judicial construction.

| |
|---|
| Terms in dispute: flexible |
| AerSale's alternative position: [Unable to propose appropriate wording] |
| Jetaire's alternative position: foam material capable of being bent and returning to its original shape after compression down to at least 40% of its original volume |
| Special Master's Recommendation: No construction needed |

108

## III. SUMMARY

For the Court's convenience, here is a review of all my recommendations, arranged by Sets of phrases as used throughout these Markman proceedings. The Sets originated in AerSale's original claim construction brief (DE 73, filed Sept. 15, 2021) and have proved helpful to work through the many claims and many phrases in dispute in this case.

NOTE: Where parties' proposed construction language is indicated, this means in the event a party's main argument, e.g., indefiniteness, or plain ordinary meaning, is rejected by the Court. Main arguments have not been waived. There is no set of phrases where both parties, even in their alternative positions, are in agreement.

**Set A: "thickness dependent upon size and type of aircraft fuel tank" /**

**"thickness in-dependent upon size and type of aircraft fuel tank"**

**(claims 1-3 of the '998 patent")**

**1. The Government Misprint in Claim 2 of the '998 Patent**

As explained herein, step (d) in claim 2 of the Williams '998 patent should be read and interpreted by the Court as:

d) providing a plurality of planar sheets of reticulated polyurethane foam (RPF) material, said RPF material comprising a thickness dependent upon size and type of aircraft fuel tank;

## 2. Indefiniteness (AerSale)

| |
|---|
| Terms in dispute (after correcting printing error): **thickness dependent upon size and type of aircraft fuel tank  (claims 1-3 of the '998 patent)** |
| AerSale's construction: indefinite |
| Jetaire's construction: not indefinite |
| Special Master's recommendation: not indefinite |

## 3. Plain Ordinary Meaning  (Jetaire)

| |
|---|
| Terms in dispute: thickness dependent . . . |
| AerSale's position: indefinite |
| Jetaire's position: No construction needed (plain ordinary meaning will suffice) |
| Special Master's Recommendation: Construction needed |

**4. Parties' Proposed Construction Wording**

| |
|---|
| Terms in dispute (after correcting printing error): **thickness dependent upon size and type of aircraft fuel tank  (claims 1-3 of the '998 patent)** |
| AerSale's alternate construction: thickness selected based on both size and type of aircraft fuel tank |
| Jetaire's alternate construction: RPF blocks that vary in size depending on the contour and type of aircraft fuel tank in which the RPF blocks are to be installed |
| Special Master's Recommendation: thickness selected based on both size and type of aircraft fuel tank |

**Set B: "parking the airplane on a level surface,**

**and emptying and purging" the tank (claims 1-3 of the '998 patent)**

**1. Indefiniteness (AerSale)**

| |
|---|
| Terms in dispute: **level surface** |
| AerSale's construction: indefinite |
| Jetaire's construction: not indefinite |
| Special Master's recommendation: not indefinite |

**2. Plain Ordinary Meaning (Jetaire)**

| |
|---|
| Terms in dispute: level surface |
| AerSale's position: --- |
| Jetaire's position: plain ordinary; no construction needed |
| Special Master's Recommendation: construction needed |

**3. Parties' Proposed Construction Wording**

| |
|---|
| Terms in dispute: level surface |
| AerSale's position: horizontally level without crown or grade |
| Jetaire's position: having an even surface; not having one part higher than another |
| Special Master's recommendation: having an even surface, with one part not significantly higher than another, horizontally oriented without significant crown or grade |

**Set C: "proximate a pre-determined starting point of the installation" /**

**"proximate the selected compartment" / "proximate the aft compartment"**

**(claims 1-3 of the '998 patent)**

### 1. Indefiniteness (**AerSale**)

| |
|---|
| Terms in dispute; proximate |
| AerSale's construction: indefinite |
| Jetaire's construction: not indefinite |
| Special Master's recommendation: not indefinite |

### 2. Plain Ordinary Meaning (**Jetaire**)

| |
|---|
| Terms in dispute: proximate |
| AerSale's position: --- |
| Jetaire's position: plain ordinary; no construction needed |
| Special Master's Recommendation: construction needed |

### 3. Parties' Proposed Construction Wording

| |
|---|
| Terms in dispute: proximate |
| AerSale's proposal: near |
| Jetaire's proposal: nearest |
| Special Master's recommendation: near |

**Set D: "FAA-certified fuel gauge calibrating procedures for the aircraft"** /

**"FAA certified fuel gauge calibrating procedures for the subject aircraft"**

**(claims 1-3 of the '998 patent)**

### 1. Indefiniteness (AerSale)

| Terms in dispute: FAA-certified . . . procedures |
|---|
| AerSale's position: Indefinite |
| Jetaire's position: No construction needed |
| Special Master's recommendation: Indefinite |

### 2. No Construction Needed (Jetaire)

| Terms in dispute: FAA-certified . . . procedures |
|---|
| AerSale's position: Indefinite |
| Jetaire's position: No construction needed |
| Special Master's Recommendation: Indefinite |

**Set E:  "performing an inspection of the installed RPF blocks" (claims 1-3 of the '998 patent)**

### 1. AerSale's Proposed Construction

inspecting each RPF block after all of the RPF blocks have been installed

Special Master's recommendation: reject

### 2. Plain Ordinary Meaning (Jetaire)

Special Master's recommendation: reject

### 3. Parties' Proposed Construction Wording

| |
|---|
| Terms in dispute: **performing an inspection of the installed RPF blocks** |
| AerSale's position: inspecting each RPF block after all of the RPF blocks have been installed |
| Jetaire's position: inspecting the aggregate of RFP blocks to ensure they fill the [fuel] tank as set forth in the instructions |
| Special Master's recommendation: inspecting the aggregate of RFP blocks to ensure they fill the fuel tank to the extent set forth in the instructions |

115

**Set F: "emptying and purging the tank"/ "emptying and purging all compartments of the fuel tank" / "emptying and purging all compartments of the center wing tank"**

### 1. Indefiniteness (AerSale)

| |
|---|
| Terms in dispute: emptying and purging |
| Aersale's position: indefinite |
| Jetaire's alternative position: definite |
| Special Master's recommendation: definite |

### 2. Plain Ordinary Meaning (Jetaire)

| |
|---|
| Terms in dispute: emptying and purging |
| AerSale's position: --- |
| Jetaire's position: plain ordinary; no construction needed |
| Special Master's Recommendation: construction needed |

**3. Parties' Alternative Proposed Construction Wording for Set F**

| |
|---|
| Terms in dispute: emptying and purging |
| AerSale's position: defueling and cleansing the tank with purging fluid/ <br><br> defueling and cleansing all compartments of the fuel tank with purging fluid / |
| Jetaire's position: defueling and flushing the fuel tank / <br><br> defueling and flushing all compartments of the fuel tank / |
| Special Master's recommendation: defueling and flushing to cleanse the fuel tank / <br><br> defueling and flushing and cleansing all compartments of the fuel tank / |

**Set G: "each"/ "each of" (claims 1-3 of the '998 patent)**

**1. Indefiniteness (AerSale)**

[Not raised for this set.]

**2-3. Plain Ordinary Meaning (Jetaire) and Parties' Contentions**

| |
|---|
| Terms in dispute: each |
| AerSale's primary position: every / every one of |
| Jetaire's primary position: Plain ordinary meaning |

117

| Special Master's recommendation: No construction necessary; ordinary meaning will apply |
| --- |

## Set H: "cutout(s)" (All Asserted Claims of the '998, '109, and '541 patents)

### 1. Indefiniteness (AerSale)

| Terms in dispute: cutout |
| --- |
| AerSale's position: indefinite |
| Jetaire's position: not indefinite |
| Special Master's recommendation: not indefinite |

### 2. Plain Ordinary Meaning (Jetaire)

| Terms in dispute: cutout |
| --- |
| AerSale's position: --- |
| Jetaire's position: No construction needed |
| Special Master's recommendation: construction needed |

**3. Parties' Proposed Actual Construction Wordings**

| Terms in dispute: cutout [in **context** of cut from sheet] |
| --- |
| AerSale's position: indefinite; no alternative language |
| Jetaire's position: |
| Special Master's recommendation 1: a foam block cut from a foam sheet |

| Terms in dispute: cutout [in **context** of a space made by excision within a block] |
| --- |
| AerSale's position: indefinite; no alternative language |
| Jetaire's position: [unclear, due to use of brackets and italics] |
| Special Master's recommendation 2: empty spaces in a foam block, due to further cutting |

**Set I: "verifying the [fuel) tank's maximum fuel quantity" /**

**"verifying a quantity of the fuel in the fuel tank"**

**(claims 1-3 of the '998 patent; claims 1-14 and 21 of the '109 patent)**

**1. Indefiniteness (AerSale)**

| Terms in dispute: verifying |
| --- |

119

| |
|---|
| AerSale's position: indefinite |
| Jetaire's position: not indefinite |
| Special Master's recommendation: not indefinite |

## 2. Plain Ordinary Meaning (Jetaire)

| |
|---|
| Terms in dispute: verifying |
| Jetaire's position: no construction needed |
| Special Master's recommendation: some construction needed |

## 3. Parties' Proposed Construction Wording

| |
|---|
| Terms in dispute: verifying |
| AerSale's alternate position:<br><br>checking the [fuel] tank's maximum fuel quantity against an expected value /<br><br>checking a quantity of the fuel in the fuel tank |
| Jetaire's alternate position:<br><br>ascertaining the [fuel] tank's maximum fuel quantity /<br><br>ascertaining a quantity of the fuel in the fuel tank |
| Special Master's recommendation: Observing the amount of fuel dispensed into the tank |

**Set J: "channel void to reduce weight" (All Asserted Claims of the '109 patent; claims 5 and 18 of the '541 patent)**

### 1. Indefiniteness (AerSale)

| |
|---|
| Terms in dispute: channel void |
| AerSale's position: indefinite |
| Jetaire's position: not indefinite |
| Special Master's Recommendation: [unable to provide a recommendation at this stage of the case] |

### 2. Plain Ordinary Meaning (Jetaire)

| |
|---|
| Terms in dispute: channel void |
| AerSale's position: --- |
| Jetaire's position: plain ordinary meaning; no construction needed |
| Special Master's Recommendation: construction needed [at some later stage of the case] |

### 3. Parties' Proposed Construction Wording

121

| Terms in dispute: channel void |
| --- |
| AerSale's position: a groove in a foam block left by design |
| Jetaire's position: a groove in a foam block left by design that reduces the collective weight of the installed foam blocks |
| Special Master's Recommendation: Defer construction of this phrase until a later point in the case, when more evidence may be available |

**Set K. "determining interior dimensions of the fuel tank" (claims 1-14 of the '109 patent)**

**1. Indefiniteness (AerSale)**

[AerSale has not challenged this phrase for indefiniteness.]

**2. Plain Ordinary Meaning (Jetaire)**

| Terms in dispute: determining interior dimensions |
| --- |
| AerSale's position: measuring the interior profile of the fuel tank at regularly-spaced increments |
| Jetaire's position: No construction needed |

| Special Master's Recommendation: No construction needed |
| --- |

## Set L: providing a bulk quantity of foam material

### (All Asserted Claims of the '109 patent)

### 1. Indefiniteness (AerSale)

[AerSale has not raised an indefiniteness contention for this set.]

### 2. Plain Ordinary Meaning (Jetaire)

| Terms in dispute: providing a bulk quantity of foam material |
| --- |
| AerSale's position: manufacturing and delivering a pre-determined quantity of bulk foam material |
| Jetaire's position: No construction needed |
| Special Master's Recommendation: Construction needed |

### 3. Parties' Proposed Construction Wording

| Terms in dispute: providing a bulk quantity of foam material |
| --- |

123

| |
|---|
| AerSale's position: manufacturing and delivering a pre-determined quantity of bulk foam material |
| Jetaire's position: Ordinary meaning, in the planning part of the process; no requirement of the process user to be the manufacturer or deliverer of the starting foam |
| Special Master's recommendation: providing foam in the planning part of the process, regardless of identity of its manufacturer or deliverer |

**Set M: "a first foam block among the plurality of foam blocks comprises the upper cutout ... a second foam block among the plurality of foam blocks comprises the lower cutout ... the first foam block and the second foam block are stacked in a vertically-oriented column within the fuel tank"** *(All Asserted Claims of the '109 patent)*

**1. Indefiniteness (AerSale)**

| |
|---|
| Terms in dispute: comprising upper, comprising lower, etc. |
| AerSale's position: indefinite |
| Jetaire's position: not indefinite |
| Special Master's recommendation: not indefinite |

**2. Plain Ordinary Meaning (Jetaire)**

| |
|---|
| Terms in dispute: comprising upper, comprising lower, etc. |
| AerSale's position: --- |
| Jetaire's position: plain ordinary; no construction needed |
| Special Master's recommendation: construction needed |

**3. Parties' Proposed Construction Wordings**

| |
|---|
| Terms in dispute: comprising upper, comprising lower, etc. |
| AerSale's position: change comprising to comprises at least |
| Jetaire's position: change comprises to includes at least |
| Special Master's recommendation: [do not amplify claim language, but instruct that comprises means includes at least] |

**Set N: "the plurality of foam blocks further comprises a third foam block placed between the first foam block and the second foam block in the vertically-oriented column" (All Asserted Claims of the '109 patent)**

**1. Indefiniteness (AerSale)**

| Terms in dispute: third foam block placed . . . |
| --- |
| AerSale's position: Indefinite |
| Jetaire's position: Not indefinite |
| Special Master's Recommendation: Not indefinite |

## 2. Plain Ordinary Meaning (Jetaire)

| Terms in dispute: third foam block . . . |
| --- |
| AerSale's position: indefinite |
| Jetaire's position: plain ordinary meaning, needs no construction |
| Special Master's Recommendation: plain ordinary meaning, needs no construction |

**Set O: "at least one foam block among the first plurality of foam blocks comprises**

**an upper cutout in a top surface for clearance around an upper stiffener of**

**the fuel tank,**

126

**an arcuate cutout in a side surface for clearance around a fuel pump of the**

**fuel tank, and**

**a lower cutout in a bottom surface for clearance around a lower stiffener of**

**the fuel tank"**

**(All Asserted Claims of the '541 patent)**

## 1. Indefiniteness (AerSale)

| Terms in dispute: three cutouts |
|---|
| AerSale's position: indefinite |
| Jetaire's position: not indefinite |
| Special Master's Recommendation: not indefinite |

## 2. No Construction Needed (Jetaire)

| Terms in dispute: three cutouts |
|---|
| AerSale's position: --- |
| Jetaire's position: No construction needed |
| Special Master's Recommendation: Construction needed |

| |
|---|
| Terms in dispute: at least one foam block which comprises . . . |
| AerSale's position: at least one foam block among the first plurality of foam blocks includes at least three cutouts: (1) an upper cutout in a top surface for clearance around an upper stiffener of the fuel tank, (2) an arcuate cutout in a side surface for clearance around a fuel pump of the fuel tank, and (3) a lower cutout in a bottom surface for clearance around a lower surface of the fuel tank |
| Jetaire's position: can be 3 different blocks |
| Special Master's Recommendation: at least one foam block among the first plurality of foam blocks includes at least three cutouts: (1) an upper cutout in a top surface for clearance around an upper stiffener of the fuel tank, (2) an arcuate cutout in a side surface for clearance around a fuel pump of the fuel tank, and (3) a lower cutout in a bottom surface for clearance around a lower surface of the fuel tank |

**Set P: "flexible foam material" (claims 13-15 of the '541 patent)**

**1. Indefiniteness (AerSale)**

| |
|---|
| Terms in dispute: flexible |
| AerSale's position: indefinite |
| Jetaire's position: not indefinite |
| Special Master's Recommendation: not indefinite |

**2. Plain Ordinary Meaning (Jetaire)**

| |
|---|
| Terms in dispute: flexible |
| AerSale's position: indefinite |
| Jetaire's position: plain ordinary meaning (no construction needed) |
| Special Master's Recommendation: plain ordinary meaning (no construction needed) |

**3. Parties' Alternative Construction Wording**

| |
|---|
| Terms in dispute: flexible |
| AerSale's position: [Unable to propose appropriate wording] |
| Jetaire's position: foam material capable of being bent and returning to its original shape after compression down to at least 40% of its original volume |
| Special Master's Recommendation: No other wording needed |