**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:20-cv-25144-GAYLES/TORRES

JETAIRE AEROSPACE, LLC,

      Plaintiff,

v.

AERSALE, INC.,

      Defendant.

_____/

AERSALE, INC.,

      Counter-Plaintiff,

v.

JETAIRE AEROSPACE, LLC,
JETAIRE FLIGHT SYSTEMS, LLC, and
MICHAEL WILLIAMS,

      Counter-Defendants.

_____/

**REPORT AND RECOMMENDATION ON**
**<u>COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

This cause comes before the Court on Counter-Defendants, Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, and Michael Williams' (collectively "Jetaire") motion for summary judgment against AerSale, Inc.'s ("Counter-Plaintiff" or "AerSale") Fifth Amended Counterclaims. [D.E. 376]. Both parties also provided supplemental briefing. [D.E. 383, 393]. The motions have been fully briefed and are

1

now ripe for disposition.[1] After careful consideration of the motion, response, reply, supplemental briefing, the evidence of record, the relevant authority, and for the reasons discussed below, we hereby RECOMMEND that Counter-Defendants' motion be **GRANTED in part**.

## I.     *BACKGROUND*

Jetaire's complaint arises from a patent infringement dispute between Jetaire and AerSale. In response to Jetaire's complaint, AerSale filed numerous counterclaims (and on April 18, 2024, its Fifth Amended Counterclaim). At issue are five of those counterclaims: defamation, tortious interference, inequitable conduct (two separate claims), and exceptional case.

As for defamation, AerSale asserts two distinct theories. One such theory relates to Eastern Airlines. AerSale alleges that Mr. Williams, Jetaire's representative, told Eastern Airlines—while knowing that Eastern Airlines was in negotiations with AerSale—that Eastern Airlines should not buy AerSale's product. Mr. Williams further said that to create that product, AerSale stole Jetaire's confidential data. AerSale concludes that these statements constitute a "felony and/or conduct incompatible with the proper exercise of AerSale's business, and therefore constitute[ ] defamation per se." [D.E. 376 at ¶ 319].

AerSale also alleges Mr. Williams made defamatory statements about AerSale to Azurair. For this claim, AerSale argues that, at a time when Jetaire knew AerSale

---

[1] On December 8, 2023, the Honorable Darrin P. Gayles referred this matter to the Undersigned Magistrate Judge for a ruling on non-dispositive matters and a Report and Recommendation on dispositive matters. [D.E. 279].

was in negotiations with Azurair, Mr. Williams told Azurair that AerSale could not legally make the relevant IMM product. While AerSale eventually completed the sale with Azurair, AerSale argues that Jetaire's defamatory statements delayed the sale. In that delay period, AerSale argues that the Russian-Ukraine war commenced, which cut into more potential sales with Azurair (who operates in Russia).

As to its tortious interference claim, AerSale similarly alleges two separate bases: one for Eastern Airlines and one for Azurair. As to Eastern Airlines, AerSale alleges that Mr. Williams' allegedly defamatory statements disrupted a business relationship between AerSale and Eastern Airlines. In turn, AerSale argues that Mr. Williams' statement caused AerSale to lose Eastern Airlines' business. Tacked on, AerSale argues, is an untrue statement by Mr. Williams that Jetaire's patent was broader than it actually was (i.e., that "Jetaire's patents covered all foam-based IMMs"). [*Id*. at ¶ 341]. Therefore, AerSale argues that, based on Mr. Williams' statements, Eastern Airlines falsely believed that AerSale's product infringed on Jetaire's patent(s).

Similarly, AerSale alleges that Mr. Williams' statements to Azurair tortiously damaged AerSale and Azurair's business relationship. Specifically, AerSale alleged that, because of Mr. Williams' statements, Azurair feared it would have a "patent problem" if purchased AerSale's IMM product. Consequently, Azurair feared it would have to implement a costly process to uninstall the product. Mr. Williams' statements, alleges AerSale, thus caused a delay in AerSale's sale to Azurair. This delay allegedly proved costly to AerSale—shortly after the sale was consummated,

the Ukraine-Russian war damaged AerSale's business with Azurair. Had the Jetaire-occasioned delay not occurred, asserts AerSale, it could have done more business with Azurair.

Lastly, as for its inequitable misconduct and exceptional case counterclaims, AerSale argues that Jetaire made knowing misrepresentations and omissions to the patent office in procuring its patents. But for these misrepresentations and omissions, argues AerSale, Jetaire would not have received its patents.

## II.     APPLICABLE PRINCIPLES AND LAW

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). In

4

making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). "Summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### III.   ANALYSIS

Jetaire seeks summary judgment against AerSale's counterclaims for defamation, tortious interference, inequitable conduct, and exceptional case. Jetaire, while contesting liability against each of these theories, also asserts that the tort claims are preempted by federal patent law.

#### A. *Federal Preemption of State-Law Tort Claims*

Jetaire asserts that its ostensibly-tortious statements to Azurair and Eastern Airlines are protected by a "patent privilege." That is, that Jetaire's exercise of its rights under federal patent law preempt AerSale's state-law tort claims of defamation and tortious interference.

The Federal Circuit "has held that federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about patent litigation." *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004) (citing *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1355 (Fed. Cir.

2008)). Consequently, "federal patent laws thus bar state-law liability for communications concerning alleged infringement so long as those communications are not made in 'bad faith.'" *Id.* at 1374–75.

To that end, the burden at trial would be on AerSale to demonstrate by clear and convincing evidence that Mr. Williams' allegedly tortious statements were made in bad faith. *See Lite-Netics, LLC v. Nu Tsai Capital, LLC*, 60 F.4th 1335, 1344 (Fed. Cir. 2023) ("HBL's state-law claims here thus 'can survive federal preemption only to the extent that those claims are based on a showing of "bad faith" action in asserting infringement.'") (quoting *Globetrotter*, 362 F.3d at 1374); *see also Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 Fi.3d 1291, 1304 (Fed. Cir. 2018) ("State tort claims based on enforcing a patent, including for tortious interference, are preempted by federal patent laws, unless the claimant can show that the patent holder acted in bad faith.").

To show the required bad faith, AerSale must "offer clear and convincing evidence that [Jetaire] had no reasonable basis to believe" that infringement occurred or would occur. *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002) ("To show bad faith in Pingel's actions, Golan must offer clear and convincing evidence that Pingel has no reasonable basis to believe that the GP petcock infringed Pingel's patents or that Pingel knew it was enforcing an expired, and therefore unenforceable, patent.").

And "in light of the underlying jurisprudential basis for the bad faith standard, rooted as it is in Supreme Court cases and Constitutional principles, a party

6

attempting to prove bad faith on the part of a patentee enforcing its patent rights has a heavy burden to carry." *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1370 (Fed. Cir. 2008) (internal citation omitted).

## 1. *Jetaire's Statements to Eastern Airlines*

With these principles in mind, we turn to whether federal patent law preempts the portions of AerSale's tortious interference claim and defamation claim that relate to Mr. Williams' communications with Eastern Airlines.

In his declaration, Mr. Courveur (Eastern Airlines' representative) states that while Eastern Airlines was negotiating with Jetaire and AerSale, Mr. Williams told Mr. Courveur that Eastern Airlines "should not purchase [AerSale's IMM product] because it was derived through AerSale having stolen [Mr. Williams'] and/or Jetaire's data." [D.E. 338-8 at ¶ 7]. Further, Mr. Williams also told Mr. Courveur that Jetaire had "several patents" that encompassed AerSale's IMM product. [D.E. 338-4 at 423:2–20].

As for the first portion of that statement, Jetaire argues that it had a good faith basis to believe that AerSale developed its product from Jetaire's data or that, at least, AerSale's product was sufficiently similar to Jetaire's product such that patent infringement was possible. Thus, Jetaire argues that its statements to Eastern Airlines were not made in bad faith.

To support this, Jetaire relies on a prior arbitration between the parties. There, the arbitration panel made a factual finding that AerSale had sent Jetaire's confidential information to third parties. [D.E. 325-10]. This apparently occurred

after Jetaire shared sensitive information with AerSale under a non-disclosure agreement ("NDA") to prototype Jetaire's system. [*Id*.]. When Jetaire backed out of the partnership, AerSale decided to develop its own competing technology. [*Id*.]. In doing so, the arbitrator's final award stated that AerSale "forwarded the [NDA-protected] materials provided [to] it by Jetaire to [two aeronautical engineers]." [*Id*. at 50]. Then, the two aeronautical engineers (per their testimony) "at the request of AerSale destroyed the Jetaire documentation." [*Id*.].

Accordingly, Jetaire argues that it was simply protecting its patent by informing Eastern Airlines that AerSale developed its product from Jetaire. And, at the very least, Jetaire argues that it was not "objectively baseless" for it to inform Mr. Courveur that AerSale's IMM product was created from Jetaire's stolen data and was therefore in violation of Jetaire's patents.

In response, AerSale argues that the arbitration panel concluded there was no evidence that AerSale created its product from data stolen from Jetaire. [*Id*. at 35] ("There is no evidence in the record that would support a claim that AerSale copied [Jetaire's] system or that it relied upon any documents provided to it at the time of the execution of the NDA ...."). This, AerSale argues, is enough to show that Mr. Williams engaged in bad faith, or at the very least, is enough to raise a genuinely disputed issue of fact as to bad faith.

We cannot find that Jetaire's interpretation of the arbitrator's ruling, without more supporting facts, is enough to raise a genuine dispute that Mr. Williams engaged in bad faith. To stave off summary judgment, AerSale must raise a triable

8

issue that Jetaire's "patent-infringement allegation is objectively baseless"; that is, that "no reasonable litigant could realistically expect success on the merits." *Lite-Netics, LLC*, 60 F.4th at 1343. On balance, this is not a situation where Jetaire's "infringement allegations were so clearly meritless that their assertion was in bad faith." *Id*. at 1342.

Indeed, the arbitration panel did find that AerSale stole Jetaire's data. AerSale cannot meaningfully dispute that after its partnership ended with Jetaire, it sent Jetaire's NDA-protected data to two separate engineers then directed those engineers to destroy any evidence of the data. That being so, AerSale has not met its heavy burden to show that Jetaire's warning to Eastern Airlines that patent infringement may be afoot was "objectively baseless." Perhaps AerSale is correct that it did not rely on Jetaire's data when it created its IMM product. But even considering the arbitration panel's factual findings, that does not mean that AerSale's suspicion was "objectively baseless" under the circumstances.

Seeing that Jetaire has established a prima facie showing of good faith, it is AerSale's "burden to present affirmative evidence that [Jetaire] acted in bad faith." *Golan*, 310 F.3d at 1371–73 (citing *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1369, 48 USPQ2d 1225, 1246 (Fed. Cir. 1998)) ("To survive summary judgment, the party challenging such statements must present affirmative evidence sufficient for a reasonable jury to conclude that the patentee acted in bad faith, in light of the burden of clear and convincing evidence that will adhere at trial.").

That affirmative evidence has simply not been presented. All that AerSale has

presented is Jetaire's reasonable (or at least, not baseless) interpretation of the arbitrator's findings, and Jetaire's effort to protect its patent in light of those findings. From this, no reasonable juror could conclude that AerSale has carried its "heavy burden" of proving that Jetaire's suspicions of potential infringement were "objectively baseless"—particularly in light of the clear and convincing evidence standard at trial. *See, e.g., Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) (noting that "it is not improper for a patent owner to advise possible infringers of its belief that a particular product may infringe the patent" and that "[a] patentee has the right to inform a potential infringer of the existence of the patent, whereby the recipient of the information may adjust its activities, perhaps seek a license, or otherwise act to protect itself"); U.*S. Nutraceuticals, LLC v. Cyanotech Corp.*, No. 5:12-CV-366-OC-10PRL, 2014 WL 1092504, at *5 (M.D. Fla. Mar. 19, 2014) ("In general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights.") (citing *Mikohn*, 165 F.3d at 897); *Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37–38, 33 S.Ct. 202, 57 L.Ed. 393 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement …. Such action, considered by itself, cannot be said to be illegal.")

As for the second portion of Mr. Williams' statement (that Jetaire had "several patents" encompassing IMM products), Jetaire argues that, once again, it had a good faith belief that a sale between Jetaire and Eastern Airlines would result in an

infringement of Jetaire's patents.

AerSale, conversely, argues that for several reasons Jetaire should have known its patent rights were illegitimate. As an initial matter, AerSale argues that Mr. Williams—not Jetaire Aerospace, LLC (the patent holder)—made the statements and therefore the statements cannot be protected by the "patent privilege." Additionally, AerSale argues that Jetaire knew it had been making commercial offers for sale and therefore should have known its patent would have been invalidated by the on-sale bar. Further, AerSale argues that Jetaire lied to the patent office when it procured the patent and therefore should have known that its patents were invalid or would be invalidated. Moreover, AerSale asserts that Jetaire should have known that the scope of its patent did not encompass AerSale's IMM product.

First, we reject AerSale's argument that the statements cannot be protected by the "patent privilege" because they were made by Mr. Williams. Throughout this litigation, Mr. Williams has been treated as Jetaire's corporate representative. In fact, numerous times throughout this litigation AerSale has sought to use Mr. Williams' statements against the patent holder, Jetaire Aerospace, LLC—specifically when AerSale sough invalidation of Jetaire's patents via the on-sale bar. AerSale points us to no authority to suggest that Mr. Williams statements cannot be imputed the patent-holding entity. Accordingly, we find this argument to be without merit or support.

Further, AerSale's arguments that Jetaire should have known that the on-sale bar would invalidate its patents and/ot misstated the scope of its patents would also

fail to convince a reasonable juror of bad faith. The Federal Circuit has made clear that "it is not improper for a patent owner to advise possible infringers of its belief that a particular product may infringe the patent." *Mikohn*, 165 F.3d at 897; *see also Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 709, 24 USPQ2d 1173, 1180 (Fed. Cir. 1992) (noting that a patentee "that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers").

That is precisely what Jetaire sought to do. Mr. Williams apparently learned that Eastern Airlines was considering AerSale's IMM product, and informed Mr. Courveur that Jetaire had several patents relating to that product (which it did). Even if Jetaire was ultimately mistaken regarding the validity and/or scope of its patents, we have not been persuaded that at the time of Mr. Williams conversation with Mr. Courveur, Mr. Williams acted in bad faith by informing Mr. Courveur about potential patent infringement (or that a triable issue exists therein). This is especially true where "a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights *even though he may misconceive what those rights are.*" *Mikohn*, 165 F.3d at 897 (quoting *Kaplan v. Helenhart Novelty Corp.*, 182 F.2d 311, 314, 85 USPQ 285, 287 (2d Cir.1950)) (emphasis added).

Indeed, at that point in time, Jetaire possessed two different patents relating to a similar IMM product and was awaiting the issuing of a third (which was issued a few months after Jetaire spoke with Mr. Couvreur). Even if Jetaire misinterpreted the scope of its patents, or did not anticipate that the on-sale bar doctrine would years later invalidate its patents, neither scenario is fatal to federal preemption of Jetaire's

12

tort claims. AerSale has demonstrated at most, drawing all reasonable inferences in its favor, that Jetaire may have misconceived what its patent rights were when it warned Eastern Airlines of potential infringement. But AerSale has not presented affirmative evidence (that could reasonably satisfy its clear and convincing evidence burden), *Golan*, 310 F.3d at 1373, that Jetaire's warning of patent infringement was objectively baseless.

If anything, Jetaire's alleged misinterpretations of its patents' scope and validity were "potentially inaccurate and questionable"—not objectively baseless. *Id.* at 1373 (holding that "[t]he evidence of record relating to Pingel's reliance on attorney advice [regarding the validity of its patent], while potentially inaccurate and questionable, does not support Golan's claim that Pingel acted in bad faith"); *see also See Iguana, LLC v. Lanham*, 835 F. Supp. 2d 1372, 1379 (M.D. Ga. 2011) (granting summary judgment against tortious interference and defamation claims and holding that patent holder did not act in bad faith when communicating its' patent rights even though it relied on apparently errant licensing agreements, mistakenly thought that the correct licensing fees had been paid on the patents, and drew a slightly mistaken conclusion about the scope of the patent).

Additionally, drawing all reasonable inferences in favor of AerSale, we are not persuaded that Jetaire's alleged misrepresentations to the patent office were so severe that Jetaire should have known that its patents would be invalidated. As an initial matter, most of AerSale's arguments in favor of patent misconduct seem to go towards subjective bad faith—which is not proper to consider unless objective

baselessness is established. *See 800 Adept, Inc.*, 539 F.3d at 1370–71 (applying federal preemption to state-law tort claims despite Adept's allegations "that Targus knew the disclosure in the Neville patents anticipated the claims of the ′897 patent, and that Targus misrepresented the scope of Neville to the PTO so that the ′897 patent claims would survive the reexamination requested by Adept in 1999. Adept's argument sounds more like an allegation of subjective bad faith on Targus's part, a question that is not at issue absent the predicate showing that the claims asserted by Targus were objectively baseless."); *see also GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1375 (Fed. Cir. 2007) ("Subjective considerations of bad faith are irrelevant if the assertions are not objectively baseless.") (citing *Prof′ l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) ("Only if the challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.")).

That being said, AerSale argues that Jetaire was aware of a similar patent (the SAE AIR4170A) before applying for its own patents but failed to disclose it to the patent office. But as Jetaire points out, reference to the SAE AIR4170A is plainly present in Jetaire's '998 Patent. [D.E. 325-2 at 13]. Thus, the Court is hard pressed to find that, against the backdrop of the clear and convincing evidence standard, "a neutral observer would reasonably think … that the patent was almost certain to be declared invalid." *Asahi Glass Co. v. Pentech Pharms., Inc.*, 289 F. Supp. 2d 986, 993 (N.D. Ill. 2003) (Posner, J.), *dismissed*, 104 F. App'x 178 (Fed. Cir. 2004).

Certainly, as AerSale points out, its possible that AerSale's reference to the

SAE AIR4170A did not wholly satisfy its disclosure duty. But it does not follow that because of that potential misstep, Jetaire's belief that its patents were valid was objectively baseless. At most, this evidence goes towards subjective bad faith (which is irrelevant).

AerSale also argues that Jetaire failed to disclose numerous offers of sale to the patent office—offers which Jetaire should have known would invalidate its patents under the on-sale bar. But Jetaire has contended throughout this litigation— all the way through summary judgment—that those offers were not "sale" offers, but "experimental use" offers. While the Undersigned ultimately recommended that that argument should not survive summary judgment, it cannot be said that the argument was raised in bad faith. Thus, we do not find compelling AerSale's arguments that Jetaire should have known its communications of patent infringement were objectively baseless because of its offers for sale.

Our limited focus is whether, in light of AerSale's argument that Jetaire mislead the patent office, there exists a genuine dispute that Jetaire's belief that its patents were being infringed was objectively baseless. Here, based on the murky affirmative evidence, we cannot say there is a genuine dispute as to bad faith; that is, that "no reasonable litigant [in Jetaire's shoes] could realistically expect success on the merits." *Lite-Netics, LLC*, 60 F.4th at 1343.

Accordingly, we find that federal patent law preempts those portions of Count X and XI of AerSale's Fifth Amended Counterclaim that relate to Eastern Airlines (i.e., the counterclaims of tortious interference and defamation relating to Eastern

Airlines). *See Golan*, 310 F.3d at 1373 (applying federal preemption of state-law tort claim where "the evidence d[id] not clearly show that Pingel knew the '921 patent was invalid at the time it asserted infringement or that Pingel had no reason to believe that Golan did not infringe any of Pingel's asserted patents"); *Globetrotter*, 362 F.3d at 1377 (granting summary judgment against state law tort claims "because of [the plaintiff's] failure to show that [the patent holder's] assertions of infringement were objectively baseless*"); Scosche Indus., Inc. v. Visor Gear Inc.*, 121 F.3d 675, 681 (Fed. Cir. 1997) (holding at summary judgment that federal patent law preempts unfair competition claim because "Scosche has offered no evidence to suggest that Visor Gear was acting in bad faith when it expressed the belief that Scosche's products infringed the '159 patent"); *GP Indus., Inc.*, 500 F.3d at 1375 (holding that there was an absence of bad faith and applying federal preemption despite there being evidence that the tort-defendant, Eran, "did not show that its president examined any product sold or distributed by" the tort-plaintiff, "did not show that any expert advice or opinions were sought before Eran made the accusations of infringement," and sent a letter threatening to file suit for infringement); *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1264 (Fed. Cir. 2008) ("Because Dominant failed to identify a genuine issue of fact regarding whether OSRAM's communications were objectively baseless, entry of summary judgment [against tort claims] was appropriate."); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 343 F. Supp. 2d 272, 326 (D. Del. 2004), *aff'd*, 488 F.3d 982 (Fed. Cir. 2007) (holding that state law tort claims where preempted where "[n]othing has been

shown that transforms Honeywell's competitive goals into a finding of bad faith. The evidence offered by Universal and Sandel fails in this regard.").

## 2. *Jetaire's Statements to Azurair*

Next, we assess Mr. Williams' statements to Azurair's representative, Mr. Saridere. Per Mr. Saridere's declaration, Mr. Williams told Mr. Saridere that "AerSale could not legally make an IMM product without a patent of its own, and that AerSale had no such patent." [D.E. 392-1 at ¶ 4]. Further, Mr. Williams informed him that there was an "ongoing court action with AerSale for the development of similar IMM products." [*Id*.]. As a result, Mr. Saridere feared that if he purchased AerSale's product, Azurair's aircrafts could be grounded for non-compliance with Federal Aviation Administration standards. [*Id*.].

Jetaire argues that these statements are clearly within the confines of Jetaire and AerSale's patent dispute. That is, that Jetaire was merely informing Azurair that a patent dispute existed, and Jetaire believed that it had a patent (or patents) encompassing AerSale's relevant IMM product. Any statements that Jetaire made to Azurair, argues Jetaire, were to protect Jetaire's patent(s) from being infringed.

Meanwhile, AerSale argues that Mr. Williams' statements painted a bad faith picture that Jetaire's patents encompassed all IMM products. Additionally, AerSale argues that Mr. Williams' statements cannot be given the benefit of preemption because Azurair operates in Russia where United States patent laws ostensibly do not apply.

Crucially, the inquiry is not whether Jetaire's belief that it had a valid,

applicable patent was legally correct. *See Golan*, 310 F.3d at 1373. Rather, the inquiry is whether there is a genuine dispute that Jetaire's belief and related communications to Azurair were "objectively baseless."

Here, incorporating much of the reasoning from the Eastern Airlines' statements, AerSale has not raised a triable issue that Jetaire acted in bad faith when it communicated potential infringement to Azurair. Giving credence to the arbitrator's final award, the sequence of events is as follows: Jetaire and AerSale shared protected information to develop Jetaire's IMM product; Jetaire and AerSale signed an NDA relating to that work; Jetaire pulled out of the partnership; AerSale sent to two aeronautical engineers Jetaire's confidential information; AerSale instructed the engineers to destroy the information; and AerSale developed a competing IMM product. [D.E. 325-10]. Also, it is undisputed by the parties that Jetaire and AerSale are the only two entities offering "FAA certified foam-based ignition mitigation systems in the market." [D.E. 325 at ¶ 5; D.E. 338-1 at ¶ 5].

Based on those facts, it was not objectively baseless for Jetaire to inform Azurair that it may have had a patent problem if it purchased AerSale's IMM product. These were the only two FAA-certified IMM products on the market, and AerSale's product was conspicuously developed after Jetaire and AerSale disbanded their partnership of creating an IMM product. AerSale's product was also developed against the backdrop of an arbitrator's finding that AerSale stole confidential data from Jetaire and shared it with aeronautical engineers. Granted, the arbitration panel found no evidence that AerSale's product was developed from that data—but

18

that finding does not entail that Jetaire's suspicion of infringement was objectively baseless.

To be clear, we make no finding whether AerSale *actually* violated Jetaire's patent rights, nor whether AerSale relied on Jetaire's data to create its IMM product. Rather, we assess only whether Jetaire's belief that AerSale infringed on Jetaire's patents was objectively baseless. To that end, "[t]here is nothing improper about a patentee attempting to enforce its rights under the patent by advising potential infringers of its good faith belief that a particular product infringes." *Scosche Indus., Inc.*, 121 F.3d at 681.

Even if the Court ultimately adopts the Undersigned's report and recommendation and concludes that Jetaire's patents are invalid, that is not dispositive on the issue of federal preemption. At the time of these communications, Jetaire sought to defend its patent rights, for which its belief of infringement was not objectively baseless. *See Concrete Unlimited Inc. v. Cementcraft*, Inc., 776 F.2d 1537, 1539 (Fed. Cir. 1985) ("Concrete Unlimited had the right to exclude others from making, using, and selling the invention and to enforce those rights until the '028 patent was held invalid. Concrete Unlimited did only what any patent owner has the right to do to enforce its patent, and that includes threatening alleged infringers with suit.").

Similarly, even if Jetaire's beliefs about the scope of its patents were off base, that, too, is not dispositive. *See Honeywell Int'l Inc.*, 488 F.3d at 1000 (analyzing bad faith and noting that "patentees are permitted to make representations about their

rights even though they are inaccurate"); *see also Golan*, 310 F.3d at 1373 (applying the federal preemption doctrine and granting summary judgment against state tort claims because "[t]he evidence of record relating to Pingel's reliance on attorney advice, while potentially inaccurate and questionable, does not support Golan's claim that Pingel acted in bad faith. 'Whether or not an opinion was "legally" correct is not the proper focus.'") (quoting *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 793–94 (Fed. Cir. 1995)). Unless we are presented with affirmative evidence from which a reasonable juror could conclude that Jetaire's belief and communications were in bad faith—which we have not been, especially in light of the clear and convincing standard at trial—federal preemption must apply.

Lastly, the fact that Azurair appears to do business in Russia does not sway our analysis. "Foreign entities can infringe a United States patent if they make, use, or sell an infringing product in the United States, or import an infringing product into the United States." *SSI Techs., LLC v. Dongguan Zhengyang Elec. Mech. LTD.*, 59 F.4th 1328, 1338 (Fed. Cir. 2023) (quoting 35 U.S.C. § 271(a)). In other words, Azurair could have (hypothetically) infringed upon Jetaire's patent if Azurair sought to "make, use, or sell" AerSale's IMM product in the United States.

AerSale may be correct that Azurair had no intention to make, use, or sell the product in the United States. But the analysis is not whether Jetaire's suspicion of infringement was ultimately "legally correct." Rather, the analysis is whether there is a genuine dispute that Jetaire's suspicion of the possibility of infringement—whether correct or incorrect—was objectively baseless; i.e., was levied in bad faith.

*Golan*, 310 F.3d at 1373 ("Whether or not an opinion was 'legally' correct is not the proper focus.") (quoting *Graco, Inc.*, 60 F.3d at 793–94).

Here, against the backdrop of the clear and convincing standard, AerSale has not presented affirmative evidence to show that Jetaire's suspicion that Azurair could infringe its patent was so off base that "no reasonable litigant could realistically expect success on the merits." *Lite-Netics, LLC*, 60 F.4th at 1343; *see also SSI Techs., LLC*, 59 F.4th at 1338 ("Each letter [warning of patent infringement] sent by SSI, on its face, refers only to alleged infringement of a United States patent. Foreign entities can infringe a United States patent if they make, use, or sell an infringing product in the United States, or import an infringing product into the United States. The argument that SSI could not obtain government action against the foreign entities to which it sent letters is therefore unpersuasive.").

To be clear, we make no finding whether Azurair would or would not have infringed upon Jetaire's patents if it purchased AerSale's IMM product. We find only that AerSale, with all justifiable inferences drawn in its favor, has not carried its "heavy burden" to raise a triable issue that Jetaire's communications with Azurair warning of potential infringement were objectively in bad faith. *800 Adept, Inc.*, 539 F.3d at 1370 (noting that "a party attempting to prove bad faith on the part of a patentee enforcing its patent rights has a heavy burden to carry").

Thus, because AerSale has not raised a genuine dispute that by clear and convincing evidence Jetaire's communications with Azurair could be found by a reasonable juror to be in bad faith, we recommend a finding that Jetaire's defamation

and tortious interference claims relating to Azurair are preempted by federal patent law. *See id.* at 1372 (reversing jury's decision and holding that state-law tort claims were subject to federal preemption despite the tort plaintiff's arguments that the patentee "acted deceptively" when applying for the patent; misstated the scope of its patent; knew that its patent "was subject to an on-sale bar"; led the patent examiner "astray"; and had no reasonable basis to believe that its patent was being infringed); *Scosche*, 121 F.3d at 682 (granting summary judgment against a state-law tort claim and holding that it was preempted by federal patent law where "Scosche has offered no evidence to suggest that Visor Gear was acting in bad faith when it expressed the belief that Scosche's products infringed the '159 patent"); *Kaplan*, 182 F.2d at 314 (holding that "it is not an actionable wrong for one in good faith to make plain to whomsoever he will that it is his purpose to insist upon what he believes to be his legal rights, even though he may misconceive what those legal rights are"); *Dominant Semiconductors Sdn. Bhd.*, 524 F.3d at 1264 (affirming the finding of an absence of bad faith because "objective baselessness requires a determination based on the record ultimately made in the infringement proceedings and the record of the state tort action, and not on the basis of information available to the patentee at the time the allegations were made. Because Dominant failed to identify a genuine issue of fact regarding whether OSRAM's communications were objectively baseless, entry of summary judgment [against Dominant's state-law tort claims] was appropriate."); *SSI Techs., LLC*, 59 F.4th at 1338 (holding that "[i]n view of SSI's expert report and DZEM's failure to adduce evidence of objective baselessness, the district court

properly granted summary judgment that SSI's communications to outside parties, including those DZEM claimed to be its customers or prospective customers, were protected").

In sum, because AerSale has not raised a genuine dispute that there exists clear and convincing evidence that Jetaire's communications alleging patent infringement were objectively baseless (as to both Azurair and Eastern Airlines), we recommend summary judgment be granted against AerSale's counterclaims for defamation (Count X) and tortious interference (Count XI).

### B. *Inequitable Conduct and Exceptional Case*

Jetaire also seeks summary judgment against AerSale's counterclaims for inequitable conduct and exceptional case (Count VII, Count VIII, and Count IX). [D.E. 376-1 at 30–42]. But for purposes of this motion, these counterclaims are presently moot.

The Court has recommended that Jetaire's patents be invalidated via the on-sale bar. [D.E. 366]. Thus, on the score of invalidity, AerSale can gain no relief from an inequitable conduct claim.

AerSale also seeks attorneys' fees on the basis of inequitable conduct. This argument, however, is also presently moot. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1383 (Fed. Cir. 2007) (affirming that inequitable conduct claim was moot where the prevailing party had not yet filed its "attorney fee application on inequitable conduct," and "therefore affirm[ed] the decision that the inequitable conduct counterclaim is presently moot"); *Zenith Elecs. Corp.*, 522 F.3d at 1367 n.11

(holding that inequitable conduct counterclaim was not moot because *all* of the asserted patents had not been declared invalid, but noting that "[t]his case is unlike *Liebel–Flarsheim*, where we concluded that the defendant Medrad's counterclaim for inequitable conduct was moot in view of, inter alia, our determination that all of the asserted claims were invalid").[2]

### IV.   *CONCLUSION*

For the reasons set forth above, we recommend that Jetaire's motion for summary judgment [D.E. 322] against Counts VII, VIII, IX, X, and XI of AerSale's Fifth Amended Counterclaims [D.E. 376] be **GRANTED in part**:

A.   AerSale's counterclaims for inequitable conduct and exceptional case (Counts VII, VIII, and IX) should be deemed **presently MOOT**; and

B.   Summary judgment should be **granted** against AerSale's counterclaims for defamation and tortious interference (Counts X and XI).

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, to the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on

---

[2] Jetaire also seeks summary judgment against AerSale's counterclaim of "exceptional case." Because the sole remedy for his claim is attorneys' fees, this claim is, similarly, better suited as being styled and briefed as a motion for attorneys' fees after final disposition. This is especially true where the Undersigned must await the District Court's order on the parties' motions for summary judgment. Thus, deciding attorneys' fees at this juncture—which is the sole remedy for the exceptional case counterclaim—would be premature.

appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

      **DONE AND SUBMITTED** in Chambers at Miami, Florida, this 17th day of May, 2024.

                      /s/ *Edwin G. Torres*
                      EDWIN G. TORRES
                      United States Magistrate Judge