**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:20-cv-25144-DPG**

**JETAIRE AEROSPACE, LLC,**

Plaintiff,

v.

**AERSALE INC.**,

Defendant/Counter-Plaintiff,

v.

**JETAIRE AEROSPACE, LLC,**
**JETAIRE FLIGHT SYSTEMS, LLC,**
**and MICHAEL WILLIAMS,**

Counter-Defendants.
_____________________________________/

**ORDER ADOPTING AND AFFIRMING REPORT OF MAGISTRATE JUDGE**

**THIS CAUSE** comes before the Court on Chief Magistrate Judge Edwin G. Torres' Report and Recommendation on Defendant/Counter-Plaintiff's Motion for Summary Judgment (the "Report"). [ECF No. 366]. On July 14, 2023, Defendant/Counter-Plaintiff AerSale, Inc. ("AerSale") filed its Motion for Summary Judgment. [ECF No. 196].[1] Plaintiffs/Counter-Defendants Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, and Michael Williams ("Mr. Williams") (collectively, "Jetaire") filed their Response on August 4, 2023. [ECF No. 230].[2] On August 11, 2023, AerSale filed its reply. [ECF No. 246].[3] On December 8, 2023, the case was referred to Judge Torres for a

[1] AerSale filed an unredacted, sealed version of its Motion for Summary Judgment. [ECF No. 249].
[2] Jetaire filed an unredacted, sealed version of its Response. [ECF No. 236]. The Court will refer to the unredacted, sealed filing for the remainder of the Order.
[3] AerSale filed an unredacted, sealed version of its Reply. [ECF No. 247].

ruling on all pretrial, non-dispositive matters, and for a report and recommendation on any dispositive matters. [ECF No. 279].

After holding a hearing on the Motion, [ECF No. 310], Judge Torres issued his Report recommending that the Court grant summary judgment in favor of AerSale as to Counts I–VI of the Third Amended Counterclaims, [ECF No. 366]. On May 6, 2024, Jetaire filed its Objections to the Report ("Objections"). [ECF No. 394].[4] AerSale filed its response on May 20, 2024. [ECF No. 402].[5]

A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). Those portions of the report and recommendation to which objection is made are accorded *de novo* review, if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). Any portions of the report and recommendation to which *no* specific objection is made are reviewed only for clear error. *Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001); *accord Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).

Jetaire alleges that AerSale infringed on three of its patents for fuel tank ignition mitigation technology: U.S. Patent No. 9,849,998 ("'998 Patent"), U.S. Patent No. 10,633,109 ("'109 Patent"), and U.S. Patent No. 10,800,541 ("'541 Patent") (collectively, the "Asserted Patents"). Together, the Asserted Patents culminate into Jetaire's invicta kit (the "Invicta Kit"), which provides "a method and system of accomplishing ignition mitigation using reticulated polyurethane safety foam in coordinated shapes to fill the fuel tanks." [ECF No. 1 ¶ 17]. The Report found that Jetaire made three different commercial offers for sale of the Invicta Kit: a

---

[4] Jetaire filed an unredacted, sealed version of its Objections. [ECF No. 395]. The Court will reference the unredacted, sealed version for the remainder of the Order.

[5] AerSale filed an unredacted, sealed version of its Response to the Objections. [ECF No. 401].

December 9, 2013 email with an attached agreement and letter of proposal from Jetaire to Xtra Airways; an April 11, 2014 email with a revised offer from Jetaire to Xtra Airways; and a July 14, 2014 email offer from Jetaire to AerSale (collectively the "Proposals"). [ECF No. 366 at 8–9]. The Report found that a year before Jetaire applied for its patents (1) Jetaire made a commercial offer for sale of the Invicta Kit and (2) the invention was ready for patenting. *Id.* at 27. Thus, the Report concluded that the on-sale bar applied and recommended this Court find the Asserted Patents to be invalid. *Id*.

Jetaire argues that the Report errs in four ways: (1) by failing to distinguish between method and apparatus claims in its analysis of the Proposals; (2) by conflicting with Federal Circuit precedent as to what constitutes a commercial offer; (3) by failing to consider all thirteen *Allen* factors[6] and improperly finding that Jetaire's primary motive was not experimentation; and (4) by incorrectly concluding that the Asserted Patents were "ready for patenting". [ECF No. 395]. This Court conducted a *de novo* review of the record and agrees with Judge Torres' well-reasoned analysis and recommendations.

As a preliminary matter, Jetaire waived its first objection. In its attempt to invalidate the Report's finding that Jetaire made a commercial offer for sale of the Invicta Kit, Jetaire argues that the Report failed to distinguish between method and apparatus claims.[7] [ECF No. 395 at 7–11]. Specifically, Jetaire maintains that Judge Torres should have performed the on-sale bar analysis on a claim-by-claim basis because the claims of the '998 Patent and '109 Patent are all

---

[6] *Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1353 (Fed. Cir. 2002).

[7] A method claim is "[a] claim directed to a series of acts/steps for performing desired functions." An apparatus claim, on the other hand, is "a claim directed to elements or components that comprise the apparatus or machine." *Basics of claim drafting for utility patent applications*, UNITED STATES PATENT AND TRADEMARK OFFICE, https://www.uspto.gov/sites/default/files/documents/InventionCon2021WhatsinaPatentClaimWorkshopFinalstakeholders.pdf (last visited Aug, 5 2024).

method claims. *Id.* at 7. Jetaire furthers that there was no commercial offer for sale because the Proposals failed to require Jetaire to perform all the elements of those method claims. *Id.* at 11–12. However, at no point in its Response in Opposition to the Motion did Jetaire advance this argument. *See* [ECF No. 236]; *May v. Pritchett*, No. 22-10147, 2022 WL 16753599, at *7 (11th Cir. Nov. 8, 2022) ("Grounds not raised by a plaintiff in opposing a motion for summary judgment are 'deemed abandoned.'") (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 598–99 (11th Cir. 1995)). Jetaire cannot now object to the Report based on a new argument that Judge Torres did not have the benefit of considering. *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1259 (11th Cir. 2022) ("A district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.") (citation and quotation omitted). Notwithstanding Jetaire's waiver, its argument also fails on the merits.

The Court agrees with the Report's finding that the Invicta Kit encompasses the Asserted Patents, including the Patents that involve method claims. [ECF No. 366 at 7] ("Mr. Williams (Jetaire's designated representative) testified that the 'original design' of the Invicta product, 'as covered by the STC, [is] protected by the patents-in-suit.'") (citation omitted). As AerSale aptly notes, Jetaire conceded this in its discovery responses. [ECF 315-4 at 51–74] (providing, in its interrogatory responses, an exemplary claim chart showing how the Invicta products practice each and every limitation of all the Asserted Patents). The discovery responses, coupled with Jetaire's corporate representative's deposition testimony, make clear that the Invicta Kit offered for sale in the Proposals incorporated each element of all the method claims. Thus, a claim-by-claim analysis was not warranted.

Also, the Court is not persuaded by Jetaire's argument that the Proposals involved "only [a] delivery of an SFAR compliant product" and that there was no provision requiring Jetaire to install the Invicta Kit or perform the other steps in the method claims. [ECF No. 395 at 11]. At his corporate representative deposition, Mr. Williams testified "yes" when asked whether additional installation services were required as part of Jetaire's July 14, 2014 Proposal. [ECF No. 315-2 at 10–11 (343:2-344:2)]; [ECF No. 315-40 at 4 (the July 14, 2014 Proposal included a provision where Jetaire quoted a price per unit for the "[i]nstallation services for the above system")]. Furthermore, as stated above, the Invicta Kit practiced each of the limitations of the Asserted Patents. Therefore, the record reflects that the Proposals were not simply for the delivery of a product, but the sale of a modification system that required Jetaire's installation services.

Consistent with Federal Circuit precedent, the Report correctly applied contract law and the Uniform Commercial Code ("UCC") in its analysis of whether a commercial offer for sale occurred.[8] Jetaire asserts that the Report should have evaluated whether a commercial offer for sale was made through the lens of Federal Aviation Agency ("FAA") regulations because the aviation industry is the "commercial community" applicable here. [ECF No. 395 at 12–13]. It is from this context that Jetaire then argues that potential buyers understood that the Invicta Kit could not have possibly been offered for sale because it was not yet approved by the FAA when the Proposals were made. *Id.* at 13.

Jetaire misconstrues *Medicines Co. v. Hospira, Inc.*, which at no point finds that the phrase "in the commercial community" means that courts must evaluate whether a commercial offer for sale occurred in the context of an agency's regulations. 827 F.3d 1363, 1373 (Fed. Cir.

[8] The Court also notes that Jetaire did not object to Judge Torres' previous finding that the UCC applies when conducting an on-sale bar analysis. [ECF No. 296].

2016). In fact, *Medicines* explains that "as a general proposition," courts "look to the [UCC] to define whether . . . a communication or series of communications rises to the level of a commercial offer for sale." *Id.* (citation omitted). Regardless of whether the Proposals for the Invicta Kit were contingent upon the FAA's approval, it does not change the fact that the Proposals were commercial offers for sale in the context of the UCC. *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.,* 855 F.3d 1356, 1365 (Fed. Cir. 2017), *aff'd*, 586 U.S. 123, (2019) ("There can be no real dispute that an agreement contracting for the sale of the claimed invention contingent on regulatory approval is still a commercial sale as the commercial community would understand that term."). As such, Jetaire's argument—that because the FAA had not yet approved the Invicta Kit, those in the aviation industry would understand the Proposals were incapable of being accepted—is without merit.[9] *Id.* ("It has been implicit in our prior opinions that the absence of FDA or other regulatory approval before the critical date does not prevent a sale or offer for sale from triggering the on-sale bar."); *Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1328 (Fed. Cir. 2001) ("An offer for sale does not have to be accepted to implicate the on sale bar.").

Next, the Court agrees with the Report's finding that the Proposals were commercial offers for sale and not for experimental use. Jetaire contends that the Report erred by failing to analyze all thirteen *Allen* factors and because the determination of whether the Proposals were for "experimental use" is a question of fact for a jury. The Court disagrees. While *Allen* created a list of factors to guide courts in assessing experimentation, it did not require courts to evaluate each factor in every case. *Allen Eng'g Corp.*, 299 F.3d 1336, 1352 (Fed. Cir. 2002) ("In assessing experimentation, this court has considered a number of factors, ***not all of which may apply in***

[9] Mr. Williams, Jetaire's corporate representative, testified that these Proposals were in fact offers. [ECF No. 315-2 at 9–10 (336:23-338:6, 339:8-25; 342:16-344:2)].

***any particular case***.") (emphasis added). As the Report correctly notes, the Federal Circuit has since streamlined the *Allen* factors and found that courts have looked to "the objective evidence of the contract". *Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture, Inc.*, 32 F.4th 1161, 1173 (Fed. Cir. 2022) (citation and quotation omitted). Evaluating the language of the Proposals and the surrounding circumstances, the Report found that the Proposals were not for experimental use as a matter of law.[10]

Jetaire's attempts to create a genuine dispute of material fact fall flat. First, Jetaire maintains that testimony from an AerSale executive, indicating that the Invicta Kit "was a poor design", is evidence of the fact that the Proposals were for experimental use. [ECF No. 395 at 15]. However, the Report already addressed this. [ECF No. 366 at 17]. Jetaire fails to cite any authority that supports the proposition that, because a purchaser does not like a product, it follows that the primary purpose of the offer was for experimental use. *Id.* Furthermore, Mr. Williams' confirmation that testing of his prototype was necessary is also of no consequence.[11] *Lough*, 86 F.3d at 1122 ("[T]he expression by an inventor of his subjective intent to experiment, particularly after institution of litigation, is generally of minimal value.").

The Court also finds that Jetaire lacked control over the Invicta Kit programs detailed in the Proposals. As the Report notes, a critical factor in determining whether an offer is for experimental use is whether the inventor retains control over the use of the patented product for the purpose of testing and experimentation. To show it had control over the alleged experiments, Jetaire asserts that the December 9, 2013 Proposal contemplated that Jetaire was required to

[10] Jetaire is incorrect in its assertion that "experimental use" is a question of fact for the jury. *Lough v. Brunswick Corp.*, 86 F.3d 1113, 1120 (Fed. Cir. 1996) ("To determine whether a use is 'experimental' [is] a question of law.").

[11] Jetaire relies on and cites to the expert report of Bill Ashworth in its Objections. *See* [ECF No. 395 at 14]; [ECF Nos. 197-14, 253-7]. This Court already excluded Bill Ashworth's expert testimony as it pertains to the on-sale bar analysis. [ECF Nos. 296, 297].

provide written reports related to testing. [ECF No. 395 at 16]. However, the December 9, 2013 Proposal states otherwise. That Proposal required Jetaire to provide written reports, which included tests for the status of the program, to the buyer and "as directed by the BUYER's Program Manager." [ECF No. 315-38 at 16]. Based on this language, Jetaire's tests and reports were ultimately controlled by the Buyer.

Finally, the Court agrees with the Report's conclusion that the Invicta Kit was ready for patenting when the Proposals were made.[12] Jetaire argues that the Report failed to show that the Invicta Kit was "reduced to practice" because every step of the method claims was not performed. [ECF No. 395 at 18–19]. However, as the Report aptly notes, AerSale does not argue that the Invicta Kit was reduced to practice. Instead, AerSale argues that the Invicta Kit became ready for patenting when Jetaire applied for an STC[13] for the Invicta Kit, thereby providing a sufficient written description to practice the invention. [ECF No. 366 at 22]. Once more, Jetaire fails to "address head-on" the attachments to Jetaire's STC application, which included detailed drawings of the Invicta Kit and the installation process. *Id.* at 24. At no point in its Objections does Jetaire explain why or how the STC application process fails to equate to the level of detail and quality required by the patent application process, and its failure to do so is telling.

**CONCLUSION**

Accordingly, after careful consideration, it is **ORDERED AND ADJUDGED** as follows:

---

[12] "An invention is 'ready for patenting' when evidence shows that the invention was reduced to practice ***or*** described in a written description sufficient to permit one of ordinary skill in the art to practice the invention without undue experimentation." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 997 (Fed. Cir. 2007) (emphasis added).

[13] "A supplemental type certificate (STC) is a type certificate (TC) issued when an applicant has received FAA approval to modify an aeronautical product from its original design. The STC, which incorporates by reference the related TC, approves not only the modification but also how that modification affects the original design." *Supplemental Type Certificates*, FED. AVIATION ADMIN., https://www.faa.gov/aircraft/air_cert/design_approvals/stc (last visited Jul. 31, 2024).

(1) Plaintiffs/Counter-Defendants Jetaire Aerospace, LLC, Jetaire Flight Systems, LLC, and Michael Williams' Objections to the Report and Recommendation Regarding Summary Judgment for On-Sale Bar, [ECF No. 394], are **OVERRULED**;

(2) Chief Magistrate Judge Torres' Report and Recommendation on Defendant/Counter-Plaintiff's Motion for Summary Judgment, [ECF No. 366], is **AFFIRMED AND ADOPTED** and incorporated into this Order by reference;

(3) Defendant/Counter-Plaintiff AerSale, Inc.'s Motion for Summary Judgment, [ECF No. 196], is **GRANTED** as to Counts I–VI of the Third Amended Counterclaims, [ECF No. 159]; and

(4) In accordance with Federal Rule of Civil Procedure 58, final judgment shall be entered separately. Defendant/Counter-Plaintiff AerSale, Inc. shall submit a proposed final judgment as to the Third Amended Counterclaims within fourteen (14) days of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of August, 2024.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE