# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No. 1:20-cv-25144-GAYLES/TORRES

| | |
|---|---|
| JETAIRE AEROSPACE, LLC, | ) |
| | ) |
|     Plaintiff/Counter-Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| AERSALE, INC., | ) |
| | ) |
|     Defendant/Counter-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JETAIRE AEROSPACE, LLC, | ) |
| JETAIRE FLIGHT SYSTEMS, LLC, | ) |
| and MICHAEL WILLIAMS, | ) |
| | ) |
|     Counter-Defendants. | ) |

---

### DEFENDANT/COUNTER-PLAINTIFF AERSALE, INC.'S
### MOTION FOR ATTORNEYS' FEES

### [PUBLIC REDACTED VERSION]

Amelia Toy Rudolph (FL 57105)
Shawn Rafferty (*pro hac vice*)
Valerie S. Sanders (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree St., NE, Ste. 2300
Atlanta, Georgia 30309-3996
Tel.    404.853.8000
Fax    404.853.8806
amyrudolph@eversheds-sutherland.com
shawnrafferty@eversheds-sutherland.com
valeriesanders@eversheds-sutherland.com

Scott A. Penner (*pro hac vice*)
Regis C. Worley, Jr. (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
12255 El Camino Real, Ste. 100
San Diego, California 92130-2071
Tel.    858.252.6502
Fax    858.252.6503
scottpenner@eversheds-sutherland.com
regisworley@eversheds-sutherland.com

*Attorneys for Defendant/Counter-Plaintiff AerSale, Inc.*

## TABLE OF CONTENTS

I.  INTRODUCTION ...........................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND.................................................2

    A.  Pre-Filing Misconduct .......................................................................................2

        1)  Jetaire Knew of Its Invalidating Offers for Sale Prior to Filing this Action and the Applications for the Asserted Patents. .........................................................2

        2)  Jetaire Had No Reasonable Pre-Filing Basis to Assert Infringement. .........3

        3)  Jetaire's "Invention" Included Material Plagiarized from the SAE Paper Without Disclosing It to the PTO. ............................................................................4

    B.  Post-Filing Misconduct........................................................................................5

        1)  Jetaire Failed to Produce Evidence of Its Invalidating Offers During Discovery. ...............................................................................................................5

        2)  Jetaire Maintained Its Action Based on an Improper Legal Theory............7

        3)  Jetaire Maintained Its Action Following an Adverse Claim Construction..7

III. LEGAL AUTHORITY .................................................................................................8

IV. JETAIRE'S CONDUCT RENDERS THIS CASE EXCEPTIONAL UNDER § 285. .......8

    A.  Jetaire Initiated an Objectively Baseless Action Despite Knowing of Its Prior Offers for Sale.............................................................................................................9

    B.  Jetaire Improperly Withheld Its Invalidating Offers for Sale from the PTO and Failed to Produce Them During Discovery in this Case....................................................10

        1)  Jetaire Misled the PTO.................................................................................10

        2)  Jetaire Failed to Produce Documents Showing its Prior Offers to Sell in Discovery. ...............................................................................................................11

    C.  Jetaire Had No Reasonable Basis to File or Maintain Infringement Claims. ........12

        1)  Jetaire Failed to Conduct an Adequate Pre-suit Infringement Investigation. 12

        2)  Jetaire Continued to Pursue a Legally Flawed Infringement Case After It Obtained AerSale's Technical Documents from *Jetaire I*.....................................13

    D.  Jetaire Improperly Maintained Its Case Following Claim Construction. ..............15

       E.      Jetaire Improperly Hid Its Plagiarism and the SAE Paper from the PTO. ............16

V.      JETAIRE'S COUNSEL'S CONDUCT IS SANCTIONABLE UNDER § 1927..............17

VI.     AERSALE SHOULD BE AWARDED PROFESSIONAL FEES. ...................................18

VII.    CONCLUSION.................................................................................................................20

VIII.   LOCAL RULE 7.3(A)(7) VERIFICATION.....................................................................21

IX.    LOCAL RULE 7.1(A)(2) AND 7.3(A)(8) CERTIFICATION ........................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*,
  808 F.3d 1313 (Fed. Cir. 2015)............................................................................14

*Amlong & Amlong, P.A. v. Denny's, Inc.*,
  500 F.3d 1230 (11th Cir. 2007) ......................................................................17, 18

*Apotex, Inc. v. UCB, Inc.*,
  No. 12-cv-60706, 2015 U.S. Dist. LEXIS 176573 (S.D. Fla. Dec. 4, 2015)..........20

*B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*,
  72 F.3d 1577 (Fed. Cir. 1996)............................................................................11

*Blackbird Tech LLC v. Health in Motion LLC*,
  944 F.3d 910 (Fed. Cir. 2019)........................................................................14, 15

*Burrow, Inc. v. Euro Furniture & Design LLC*,
  No. 21-cv-22500, 2022 U.S. Dist. LEXIS 21409 (S.D. Fla. Feb. 7, 2022) ............20

*Cordoba v. Dillard's, Inc.*,
  419 F.3d 1169 (11th Cir. 2005) ............................................................................8

*Critikon, Inc. v. Becton Dickinson Vascular Access*,
  120 F.3d 1253 (Fed. Cir. 1997)............................................................................11

*Digeo, Inc. v. Audible, Inc.*,
  505 F.3d 1362 (Fed. Cir. 2007) ..........................................................................13

*Domond v. PeopleNetwork APS*,
  750 F. App'x 844 (11th Cir. 2018) ......................................................................18

*FMC Techs., Inc. v. OneSubsea IP UK Ltd.*,
  412 F. Supp. 3d 706 (S.D. Tex. 2019) ..................................................................1

*Fox Indus. v. Structural Pres. Sys.*,
  922 F.2d 801 (Fed. Cir. 1990)............................................................................11

*Genentech, Inc. v. Sandoz Inc.*,
  55 F.4th 1368 (Fed. Cir. 2022) ..........................................................................14

*Hoffmann-La Roche Inc. v. Invamed Inc.*,
  213 F.3d 1359 (Fed. Cir. 2000)..........................................................................13

*Hughes v. Novi Am., Inc.*,
    724 F.2d 122 (Fed. Cir. 1984) ........................................................................................9, 11

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ..............................................................................................12

*IA Labs CA, LLC v. Nintendo Co., Ltd.*,
    No. PJM 10-833, 2012 U.S. Dist. LEXIS 61080 (D. Md. Apr. 30, 2012) .............................9

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*,
    112 F. Supp. 3d 888 (D. Minn. 2015) .............................................................................14, 15

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*,
    496 F. App'x 57 (Fed. Cir. 2012) ........................................................................................15

*Interpart Corp. v. Imos Italia*,
    777 F.2d 678 (Fed. Cir. 1985) ....................................................................................9, 10, 11

*Jetaire Aerospace LLC, et al., v. AerSale, Inc.*,
    Case No. 1:16-cv-02970-LMM (N.D. Ga.) ................................................................ *passim*

*Judin v. United States*,
    110 F.3d 780 (Fed. Cir. 1997) ..............................................................................................13

*Malautea v. Suzuki Motor Co.*,
    987 F.2d 1536 (11th Cir. 1993) ............................................................................................18

*MarcTec, LLC v. Johnson & Johnson*,
    664 F.3d 907 (Fed. Cir. 2012) ..............................................................................................20

*Mathis & Vico Prods. Mfg. Co. v. Spears*,
    857 F.2d 749 (Fed. Circ. 1988) ............................................................................................20

*McDonough v. City of Homestead*,
    No. 17-23227-Civ, 2018 U.S. Dist. LEXIS 164084 (S.D. Fla. Sep. 25, 2018) ..................8, 20

*Norelus v. Denny's, Inc.*,
    628 F.3d 1270 (11th Cir. 2010) ............................................................................................20

*Nova Chems. Corp. v. Dow Chem. Co.*,
    856 F.3d 1012 (Fed. Cir. 2017) .............................................................................................9

*Novitas, Inc. v. Genlyte Grp.*,
    Case No. CV 91-3857 MRP, 1995 U.S. Dist. LEXIS 21089 (C.D. Cal. Mar. 9,
    1995) ......................................................................................................................................9

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) ...................................................................................................8, 9, 10

*Ohio Willow Wood Co. v. Alps S., LLC*,
  813 F.3d 1350 (Fed. Cir. 2016) .................................................................................16, 17

*Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*,
  984 F.2d 1182 (Fed. Cir. 1993) .......................................................................................11

*Perryman v. Kiem (In re Micron Devises, Inc.)*,
  657 B.R. 897 (S.D. Fla. 2024) .........................................................................................17

*Phonometrics, Inc. v. ITT Sheraton Corp.*,
  64 F. App'x 219 (Fed. Cir. 2003) ....................................................................................19

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
  360 F.3d 1295 (Fed. Cir. 2004) .......................................................................................13

*Qualcomm Inc. v. Broadcom Corp.*,
  548 F.3d 1004 (Fed. Cir. 2008) .......................................................................................12

*Raylon, LLC v. Complus Data Innovations, Inc.*,
  700 F.3d 1361 (Fed. Cir. 2012) .......................................................................................15

*Rembrandt Techs., LP v. Comcast of Fla./Pa., LP (In re Rembrandt Techs. LP
  Patent Litig.)*, 899 F.3d 1254 (Fed. Cir. 2018) ...............................................16, 17

*Santini v. Cleveland Clinic Fla.*,
  No. 98-6559-CIV-ZLOCH, 1999 U.S. Dist. LEXIS 23667 (S.D. Fla. Sept. 2,
  1999) .................................................................................................................................18

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
  242 F.3d 1337 (Fed. Cir. 2001) .......................................................................................14

*Shipping & Transit, LLC v. 1A Auto, Inc.*,
  283 F. Supp. 3d 1290 (S.D. Fla. 2017) ............................................................................19

*Taltech Ltd. v. Esquel Enters.*,
  604 F.3d 1324 (Fed. Cir. 2010) .......................................................................................11

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
  726 F.3d 1306 (Fed. Cir. 2013) .................................................................................15, 16

*Theragun, Inc. v. Golovan Ltd.*,
  No. 1:20-cv-22327, 2021 U.S. Dist. LEXIS 92787 (S.D. Fla. May 17, 2021) .................19

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) .......................................................................................16

*ThermoLife Int'l LLC v. GNC Corp.*,
  922 F.3d 1347 (Fed. Cir. 2019) .......................................................................................13

*Tropical Paradise Resorts, Ltd. Liab. Co. v. JBSHBM, Ltd. Liab. Co.*,
  No. 18-CV-60912-BLOOM/VALLE, 2021 U.S. Dist. LEXIS 84584 (S.D. Fla.
  Apr. 30, 2021) ................................................................................................................20

**Statutes**

35 U.S.C. § 102 ............................................................................................................1

35 U.S.C. § 285 ................................................................................................... *passim*

**Other Authorities**

37 C.F.R. § 1.56 ......................................................................................................16, 17

37 C.F.R. § 1.555(a) ....................................................................................................16

## I.  __INTRODUCTION__

Plaintiff Jetaire Aerospace, LLC ("JA") previously sued Defendant AerSale, Inc. for misappropriation of trade secrets and was awarded nothing.[1]  Undaunted, JA filed this action just nine months later, alleging that AerSale was infringing three patents through the same foam-based ignition mitigation technology at issue in the first action.[2]  The Court entered summary judgment in AerSale's favor, invalidating the patent claims on the grounds that JA and Counter-Defendant Jetaire Flight Systems, LLC ("JFS" and, collectively with JA and Michael Williams, "Jetaire") had prematurely offered to sell products that practiced the inventions, triggering the on-sale bar.[3]

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.  As demonstrated herein, Jetaire: (i) claimed patent infringement despite knowing of its invalidating prior offers to sell, (ii) failed to conduct an adequate pre-filing investigation as to the validity of its own patents and AerSale's alleged infringement, (iii) failed to produce critical evidence in its possession of prior offers that established invalidity, and (iv) maintained this action after it knew or should have known that its infringement theories were unreasonable.  Any of these facts are sufficient to render this case "exceptional" under § 285. Jetaire's counsel participated in the litigation misconduct by failing to disclose evidence of prior offers in their possession, failing to conduct a reasonable pre-filing investigation, and maintaining the action following an adverse claim construction.  AerSale is entitled to its reasonable attorneys' fees incurred defending against this baseless action pursuant to § 285, 28 U.S.C. § 1927 ("§ 1927").

---

[1] *Jetaire Aerospace LLC, et al., v. AerSale, Inc.*, Case No. 1:16-cv-02970-LMM (N.D. Ga.) ("*Jetaire I*"), filed in August of 2016.

[2] Jetaire alleged that AerSale infringed three patents: U.S. Patent Nos. 9,849,998 ("the '998 patent"), 10,633,109 ("the '109 patent"), and 10,800,541 ("the '541 patent") (collectively, the "Asserted Patents" and available at ECF 1-1, 1-2, and 1-3, respectively).

[3] Under the "on-sale bar," a patent claim is invalid if the claimed invention was offered for sale prior to the patent filing date.  35 U.S.C. § 102; *FMC Techs., Inc. v. OneSubsea IP UK Ltd.*, 412 F. Supp. 3d 706, 711 n.4 (S.D. Tex. 2019).

## II.     **FACTUAL AND PROCEDURAL BACKGROUND**

Both this action and *Jetaire I* involve foam blocks installed in aircraft fuel tanks for ignition mitigation.  (ECF 1 at ¶¶ 1, 17; ECF 1-1, 1-2, 1-3.)  This technology is not new, as reticulated polyurethane foam ("RPF") has been used in aircraft fuel tanks for ignition mitigation since the mid-1960s.  (*See* Declaration of Regis C. Worley, Jr. in Support of AerSale, Inc's Motion for Attorneys' Fees ("Worley Declaration"), Exhibit A[4] ("SAE Paper"), at section 3.1.)

### A.     **Pre-Filing Misconduct**

#### 1)  Jetaire Knew of Its Invalidating Offers for Sale Prior to Filing this Action and the Applications for the Asserted Patents.

Jetaire knew of its own invalidating offers for sale.  Jetaire developed and marketed its RPF ignition mitigation system under the name "Invicta."  (ECF 415 at 2; ECF 366 at 2.)  In 2013 and 2014, Jetaire offered to sell and install its Invicta systems for the Boeing 737-400 aircraft, which systems JA conceded met all the claim limitations of the asserted claims.  (ECF 415 at 2-4, 9; ECF 366 at 7, 10-13, 16-17.)  Then, on September 11, 2015, Mr. Williams, the CEO and principal of both JA and JFS, filed the first of the Asserted Patents.  (ECF 1-1, 1-2, 1-3.)  Jetaire's offers to sell the Invicta technology (embodying the claimed inventions) prior to filing the first patent application, rendered the Asserted Patents invalid.  (ECF 415; ECF 366.)

As adopted by this Court, Chief Magistrate Judge Torres concluded that, "drawing all reasonable inferences in favor of Jetaire, no reasonable jury could conclude that Jetaire did *not* make an offer to Xtra Airways on December 9[, 2013] and April 11, [2014] and to AerSale on July 14[, 2014]."  (ECF 415 at 9; ECF 366 at 9.)  Mr. Williams, who made the offers on Jetaire's behalf, did not disclose them to the Patent and Trademark Office ("PTO").  (*See* ECF 1-1, 1-2, 1-3 (not listed in "References Cited" portions).)  And Mr. Williams testified that he ████████████████████

---

[4] All exhibits cited herein are the exhibits to the Worley Declaration unless otherwise noted.

2

██████████████████████████████████████████████, but ████████████

████████████████████████. (Ex. B at 57:12-58:11.)   Jetaire admits considering

the July 2014 Offer as part of its pre-filing investigation. (*Compare* Ex. C at 19 (identifying

AERSALE0027937 and AERSALE0027938) *with* ECF 315-28 (the July 2014 Offer).)   Thus,

when JA filed the Complaint in December 2020, JA knew of the invalidating offers, and Jetaire's

counsel knew of at least one invalidating offer as part of its pre-suit analysis. (ECF 135-38 (the

"December 2013 Offer"), 135-39 (the "April 2014 Offer"), 135-28 (the "July 2014 Offer").)

> 2) <u>Jetaire Had No Reasonable Pre-Filing Basis to Assert Infringement.</u>

JA alleged in its complaint that AerSale infringed claims of each of the Asserted Patents.

(ECF 1 at ¶¶ 42-43, 58-59, 73.)   Each of those claims sets forth specific requirements for installing

a foam-based ignition mitigation system (ECF 1-1; ECF 1-2) and/or the shapes of one or more

blocks in such a system (ECF 1-2; ECF 1-3).

But Jetaire did not acquire, examine, or consider any accused AerSafe product as part of

its pre-filing investigation. (Ex. C at 12-20.)   Mr. Williams testified ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████. (Ex. D at 23:2-18, 28:5-29:11.)   JA never analyzed a physical sample of the accused

products or any engineering schematics prior to filing suit. (Ex. C at 12-20 (identifying factual

basis of pre-suit investigation).)   None of the information JA analyzed pre-suit included any details

that identified the shape of the AerSafe blocks or their manner of installation. (*Id.*)   Jetaire's

infringement contentions confirmed this by asserting infringement on "information and belief" and

cartoon drawings as opposed to specifics about the AerSafe product. (ECF 51, 51-1, 51-2, 51-3,

51-4, 51-5, and 51-6.)   Even though the patent claims require specific shapes of foam blocks and

specific installation steps, Jetaire brought this action without knowing the shape of any block in

AerSale's technology, and without knowing how the accused AerSale technology was installed.

   3) Jetaire's "Invention" Included Material Plagiarized from the SAE Paper
       Without Disclosing It to the PTO.

Soon after learning that AerSale intended to compete with Jetaire in the ignition mitigation

field, Mr. Williams filed a patent application directed to the foam-based technology.  Mr. Williams

plagiarized substantial portions of the SAE Paper into his application and called it "the invention."

The SAE Paper was published in 2007, eight years before Jetaire filed for the '998 patent

in 2015.  (Ex. A; ECF 1-1.)  The '998 patent specification repeatedly copies from the SAE Paper.

(*Compare* ECF 1-1 at 3:24-26, 3:31-36, 3:37-48, 3:49-58, 3:59-4:10, 4:38-43, and 4:44-50 *with*

Ex. A at 16, 18, 18, 18, 17, 19, and 30, respectively.)  For example, the following table compares

the "Brief Summary of the Invention" from the '998 patent to the SAE Paper[5]:

| Disclosure in the '998 Patent (4:38-50) | Disclosure in the SAE Paper (pp. 19, 30) |
| --- | --- |
| Another aspect of the present inventive concept is the utilization of a "fully packed" design concept. A fully packed system is defined as one where all potential fuel tank ullage is filled with reticulated polyurethane foam with cutouts for components only. This system is most desirable where minimal or no tank over-pressure can be tolerated. | 3.5.2<br><br>Fully Packed Design Concept: A fully packed system is defined as one where all potential fuel tank ullage is filled with reticulated polyurethane foam with cutouts for components only. This system is most desirable where minimal or no tank over-pressure can be tolerated. |
| Another aspect of the present inventive concept is the utilization of a grossly voided design concept. A grossly voided system is defined as one where the fuel tank contains strategically positioned reticulated foam for explosion suppression. This system provides for minimal weight penalty and fuel retention, and is best suited for a fuel system that can withstand substantial overpressures. | 3.5.3<br><br>Grossly Voided Design Concept: A grossly voided system is defined as one where the fuel tank contains strategically positioned reticulated polyurethane foam for explosion suppression. This system provides for minimal weight penalty and fuel retention, and is best suited for a fuel system that can withstand substantial overpressures. |

---

[5]  Similarities are in red; differences in black; line spacing is changed to show the similarities.

Mr. Williams ███████████████████████.  (Ex. B at 46:11-48:15.)

Mr. Williams had a duty to disclose "material" information to the PTO.  (Ex. B at 49:12-15.)  Despite his awareness of that duty, he failed to disclose the SAE Paper in any Information Disclosure Statement ("IDS") filed during prosecution of the '998 patent.  (*Id*.; Ex. E; ECF 1-1 at 1.)  Mr. Williams never disclosed his plagiarism to the PTO either.

**B.      Post-Filing Misconduct**

**1)      Jetaire Failed to Produce Evidence of Its Invalidating Offers During Discovery.**

Jetaire also failed to disclose its invalidating activities during discovery in this case.  On May 19, 2021, AerSale requested all documents and things concerning any prior "making, using, testing, ***offering to sell, selling***, or disclosure" of any claimed invention (Ex. F at p. 6 (emphasis added)).  On June 21, 2021, JA responded that it would produce responsive documents.  (Ex. G at pp 10-11.)[6]  Despite considering the July 2014 Offer as part of its pre-suit investigation, Jetaire failed to produce it (or the other invalidating offers to sell made prior to the filing date of the earliest patent). (Ex. C at 19; ECF 135-28).  AerSale only learned of the three invalidating prior offers because Jetaire made two of them to one of AerSale's former affiliates, Xtra Airways, and one later to AerSale itself.  AerSale later learned that Jetaire made additional offers prior to the applicable on-sale bar critical date.

During Mr. Williams's depositions on February 7-8, 2023, AerSale's counsel showed him the December 2013 Offer, the April 2014 Offer, and the July 2014 Offer from AerSale's production. (ECF 135-38, 135-39, 135-28.)  When asked why Jetaire had not produced them, Mr. Williams testified ████████████████████████████████████████████████

---

[6] AerSale served identical requests on JFS and Mr. Williams; each stated they would produce responsive documents.  (Ex. M at pp. 13-14.)



, but that he gave his counsel "█████████████████████████████████████████████ █████████████████████████████████." (Ex. H at 338:16-339:4, 340:5-14, 418:24-419:8).  But Jetaire's counsel stated ████████████████████████████████████████████████████████████████ ███████████████████ (*Id*. at 419:9-420:6.)

Fact discovery closed two days after Mr. Williams's depositions.  (ECF 171.)   Jetaire did not supplement its production to AerSale in light of the prior offers shown at Mr. Williams's depositions.  Subsequently, AerSale learned that since at least January 11, 2021, Jetaire's counsel possessed, and had relied on in this case, relevant and responsive documents that it obtained from Jetaire's prior counsel in *Jetaire I*, without producing them to AerSale.[7]  (ECF 241-10 at ¶¶ 7-10.) That set of improperly undisclosed documents included not only the July 2014 prior offer which Jetaire's counsel now admits it considered pre-filing, but numerous additional prior offers for sale, including offers Jetaire had sent to ████████ on June 7, 2013, and August 8, 2013, each of which included a multi-page agreement similar to that of the December 2013 Offer.  (*Compare* Exs. I and J *with* D.E. 315-38.)  ██████████████████████████████████████████████ ███████████████████████████████████████ (Ex. K) ██████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████ (Ex. L).  AerSale did not gain access to those documents until September 2023—after summary judgment motions had already been filed in this

---

[7] AerSale caught Jetaire's current counsel relying on AerSale's confidential documents from *Jetaire I* (in violation of the protective order in that case, which restricted use of confidential documents to counsel in *Jetaire I*, and only for the *Jetaire I* case).  (Documents produced in *Jetaire I* by AerSale had a "AER" Bates prefix and those by JA had a "JAR" prefix.)  Following show cause hearings before the *Jetaire I* Court, Jetaire was ordered on September 12, 2023, to give AerSale access to a large tranche of additional documents from *Jetaire I* for use in this litigation. Because these additional documents were produced after summary judgment motions had been filed, AerSale was unable to seek additional evidence from the companies that had received the offers for sale or to depose Mr. Williams regarding those additional offers for sale.

case, and only as a result of relief granted to AerSale from the show cause motion.

2) Jetaire Maintained Its Action Based on an Improper Legal Theory.

All claims of the '541 patent and claims 1-14 of the '109 patent require a block having an "arcuate cutout." But Jetaire's counsel knew this requirement was not met as of at least January 11, 2021—after the Complaint was filed, but before it was served on AerSale. (*See* ECF 9.) By that date, Jetaire's counsel had obtained AerSale's non-public technical documents from JA's former counsel in *Jetaire I* (in violation of the protective order in that case). (ECF 241-10 at ¶¶ 7-10.) These documents included detailed drawings of AerSale's accused AerSafe system showing the shape of the blocks and the installation steps, and notably confirmed that none of the blocks contain an arcuate cutout. JA nonetheless pursued a doctrine of equivalents ("DOE") infringement theory asserting the claimed ***arcuate*** cutout could be met by a ***rectilinear*** cutout. JA maintained this legally impermissible theory for the remainder of the action.[8]

3) Jetaire Maintained Its Action Following an Adverse Claim Construction.

The '541 patent claims require a block having three specific cutouts. AerSale's Amended Counterclaims, filed April 13, 2021, put Jetaire on notice that the accused products do not have a block with the three specific cutouts required by the asserted '541 claims. (ECF 30 at ¶¶ 83-84.)

Jetaire proposed a claim construction where three different blocks could each have one of the specified cutouts. (ECF 133 at 112-113.) The Special Master rejected Jetaire's proposal:

> Jetaire proposes to interpret this claim language as calling for at least the possibility that three different blocks would be involved in meeting the claim language, one having the arcuate cutout, another having the upper cutouts, and a third having the lower cutouts. *This is an incorrect reading of the claim*. As mentioned above, the claim language mentions only a single block among the array of blocks. This single one must have all three kinds of cutouts. *I do not see how the claim can be read any other way*.

---

[8]  *See* ECF 315-8 at 49-50, 155-157; 315-29 at 24-25, 71-72; 315-30 at 35-36, 104-105; 315-31 at 33-34, 105-106; 315-32 at 31-32, 111-112; 315-33 at 36-37, 100-101; 315-34 at 28-29, 89-90; 315-35 at 36-37, 101-102.

(ECF 133 at 113 (emphasis added).)   This Court adopted the Special Master's recommendation. (ECF 155.)   Jetaire neither objected nor sought reconsideration and therefore accepted the construction.  (ECF 138, 169.)  Nevertheless, Jetaire continued to assert infringement of the '541 patent based on multiple blocks having the specified cutouts.  (*See*, *e.g.*, ECF 201 at 13-18.)

## III.   LEGAL AUTHORITY

"Section 285 of the Patent Act authorizes a district court to award attorney's fees in patent litigation.  It provides, in its entirety, that '[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party.'" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 548 (2014) (quoting § 285).  "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. at 554.  Exceptionality is determined based on the totality of the circumstances.  *Id*. It is "a simple discretionary inquiry" shown by the preponderance of the evidence.  *Id*. at 557.

Section 1927 sanctions are appropriate where an attorney's conduct "'so multiplies the proceedings in any case unreasonably and vexatiously'" such that they "'may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.'"  *McDonough v. City of Homestead*, No. 17-23227-Civ, 2018 U.S. Dist. LEXIS 164084, at *12 (S.D. Fla. Sep. 25, 2018) (quoting § 1927).  A district court has at least as much authority to issue § 1927 sanctions as it does under its own inherent power.  *Id*. (citing *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1178 n.6 (11th Cir. 2005)).

## IV.   JETAIRE'S CONDUCT RENDERS THIS CASE EXCEPTIONAL UNDER § 285.

Despite offering to sell and install its Invicta technology in 2013, in 2015 Jetaire applied for a patent on the same technology without disclosing its prior offers for sale to the PTO.  Jetaire then asserted those patents against AerSale and failed to produce its prior offers for sale to AerSale

in this case, despite having responsive documents evidencing offers for sale that conclusively established the patents' invalidity.  Jetaire also initiated this action without sufficient information regarding AerSale's products as compared to the asserted claims.

Failing to disclose damaging evidence or to conduct a reasonable pre-suit investigation are each sufficient bases *alone* to establish exceptionality.  When both are present, as here, the conclusion is inescapable: this case is exceptional and warrants an award of attorneys' fees.

A.     **Jetaire Initiated an Objectively Baseless Action Despite Knowing of Its Prior Offers for Sale.**

"The substantive strength of a party's litigating position can—i.e., whether it is objectively baseless—independently support an exceptional-case determination." *Nova Chems. Corp. v. Dow Chem. Co.*, 856 F.3d 1012, 1017 (Fed. Cir. 2017) (citing *Octane Fitness*, 572 U.S. at 554).  "Thus, 'a case presenting . . . exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award.'"  *Id.* (quoting *Octane Fitness*, 572 U.S. at 555).  Bringing an infringement action when the patent holder knows or has reason to believe a patent is invalid—as when prior offers for sale were withheld from the PTO during prosecution—is grounds to find a case exceptional.  *Interpart Corp. v. Imos Italia*, 777 F.2d 678, 686 (Fed. Cir. 1985).

Here, it was objectively baseless for Jetaire to initiate this action, and its knowledge of its pre-filing sales renders the case exceptional.  A case is exceptional where a patent owner knows of "evidence of sales and advertising which barred the grant of a patent" prior to filing suit.  *Hughes v. Novi Am., Inc.*, 724 F.2d 122, 125 (Fed. Cir. 1984); *see also Novitas, Inc. v. Genlyte Grp.*, Case No. CV 91-3857 MRP, 1995 U.S. Dist. LEXIS 21089, at *59 (C.D. Cal. Mar. 9, 1995) ("the filing of a lawsuit for infringement of a patent despite knowledge of earlier sales that would invalidate it justifies a holding of an exceptional case"); *see also IA Labs CA, LLC v. Nintendo Co., Ltd.*, No. PJM 10-833, 2012 U.S. Dist. LEXIS 61080, at *7 (D. Md. Apr. 30, 2012) (case was exceptional

when invention was disclosed in publications and offered for sale prior to the filing of the patent application).  Here, Jetaire clearly knew its offers for sale of the Invicta products pre-dated its filing of the patents, and its counsel certainly knew of at least its July 2014 Offer before filing suit.[9]  (Ex. C.)  Following extensive briefing,[10] the Court found that the December 2013 Offer, April 2014 Offer, and July 2014 Offer each constituted an invalidating offer for sale and that no reasonable jury could conclude otherwise.  (ECF 415, *passim*; ECF 366 at 9, 11-12).  Jetaire's protestations that the products were not ready for patenting or that the offers were for experimental use lacked merit.  (*See* ECF 366 at 19, 23, 27.)  For example, the Court explained Jetaire admitted the proposals were unrestricted offers for sale.  (ECF 415 at 6 ("Mr. Williams, Jetaire's corporate representative, testified that these Proposals were in fact offers.") (citing ECF 315-2 at 9–10 (336:23-338:6, 339:8-25; 342:16-344:2).)

This case is exceptional because Jetaire filed this action knowing, or with reason to know, its patents were invalid due to the on-sale bar.  *See Interpart*, 777 F.2d at 686 (exceptional case when patent holder "brought suit on the patent despite its knowledge of the sales").

**B.**      **Jetaire Improperly Withheld Its Invalidating Offers for Sale from the PTO and Failed to Produce Them During Discovery in this Case.**

**1)**   Jetaire Misled the PTO.

Jetaire's improper withholding of its prior offers for sale from the PTO is an independent basis to find this case to be exceptional.  *See Octane Fitness*, 572 U.S. at 554.  The Federal Circuit has raised specific concerns about this exact situation:

> Absent explanation, the evidence of a knowing failure to disclose sales that bear all the earmarks of commercialization reasonably supports an inference that the inventor's attorney intended to mislead the PTO. The concealment of sales information can be particularly egregious because, unlike the applicant's failure to

---

[9] Jetaire did not consider, or did not acknowledge considering, any other offers.  (Ex. C.)

[10] This briefing did not address Jetaire's *additional* prior invalidating uses and offers for sale that were not revealed until after the close of discovery.  *See* Exs. I, J, K, and L.

disclose, for example, a material patent reference, the examiner has no way of securing the information on his own.

*Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1193 (Fed. Cir. 1993).  Neither

Mr. Williams nor anyone on his behalf ever ████████████████████████████████████

████████████████████████████████████████████████████. (Ex. B at 57:12-

58:11; ECF 1-1, 1-2, 1-3; Ex. E.)

Patent "applicants have a duty to disclose to the PTO information of which they are aware which is material to the examination of the application."  *Critikon, Inc. v. Becton Dickinson Vascular Access*, 120 F.3d 1253, 1256 (Fed. Cir. 1997).  Prior sales and offers to sell are material due to the on-sale bar.  *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 72 F.3d 1577, 1584 (Fed. Cir. 1996).  A patent applicant's failure to disclose prior commercialization efforts to the PTO, as Jetaire did here, sufficiently renders a subsequent infringement action "exceptional."  *See Taltech Ltd. v. Esquel Enters.*, 604 F.3d 1324 (Fed. Cir. 2010) (award of attorneys' fees as an exceptional case affirmed on independent ground of patent holder's failure to disclose its prior product to the PTO); *Hughes v. Novi Am., Inc.*, 724 F.2d 122 (Fed. Cir. 1984) (affirming exceptional case finding when prior "sales and advertising" material were withheld from PTO); *Interpart Corp. v. Imos Italia*, 777 F.2d 678, 686 (Fed. Cir. 1985) (affirming exceptional case finding when patent holder knew of but withheld prior commercialization efforts from PTO and then brought infringement suit); *see also Fox Indus. v. Structural Pres. Sys.*, 922 F.2d 801 (Fed. Cir. 1990) (patent infringement action found to be exceptional when inventor withheld from PTO prior sales brochure disclosing elements of asserted patent claims).

### 2) Jetaire Failed to Produce Documents Showing its Prior Offers to Sell in Discovery.

Jetaire admits that it considered the July 2014 Offer as part of its pre-suit investigation. But Jetaire never produced that offer to AerSale.  AerSale only gained access to Jetaire's version of

11

the document once the *Jetaire I* court granted AerSale access, which was only after discovery had closed and summary judgment motions had been filed in this case.  AerSale only learned of the December 2013 Offer, the April 2014 Offer, and July 2014 Offer because Jetaire had made the first two to one of AerSale's operating companies and the third to AerSale itself.  Only after AerSale filed its summary judgment motion—following close of discovery, and solely as a result of the show cause motion—did AerSale gain access to Jetaire's numerous other offers for sale pre-dating even the earliest of the invalidating offers AerSale knew of.  (*See supra* p. 10 & n.10.)

Courts routinely find an exceptional case under § 285 when, as here, a litigant engages in litigation misconduct such as discovery abuses.  *See Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1009 (Fed. Cir. 2008) (exceptional case under § 285 where plaintiff concealed existence of damaging emails); *see also i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 859 (Fed. Cir. 2010) ("Typically, 'litigation misconduct' refers to bringing vexatious or unjustified suits, discovery abuses …, or acts that unnecessarily prolong litigation.").

Withholding from the PTO and failing to produce in discovery highly relevant and material information in a litigant's possession—the very information this Court found to be invalidating prior offers for sale—is sufficient on its own to find this case exceptional.

## C.  Jetaire Had No Reasonable Basis to File or Maintain Infringement Claims.

### 1) Jetaire Failed to Conduct an Adequate Pre-suit Infringement Investigation.

The asserted patents require foam blocks having specific shapes ('109 patent and '541 patent) and installation of those blocks according to specified steps ('998 patent and '109 patent). Despite these requirements, Jetaire initiated its patent infringement action without any knowledge as to the ██████████████████████████████████████████████████ ████. (Ex. D at 28:5-29:11.)  A finding that "plaintiffs did not conduct an adequate pre-suit investigation into infringement … suffice[s] to support the [§ 285] exceptional-case

determination." *ThermoLife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1356 (Fed. Cir. 2019).

Jetaire failed to compare a sample of an accused product to the asserted claims prior to filing the Complaint.  It is black letter law that infringement must be determined by comparing an accused product to the patent claims.  Courts have held that failure "to obtain, or attempt[ ] to obtain, a sample of the accused device … so that its actual design and functioning could be compared with the claims of the patent" does not meet the minimum standards of Rule 11.[11]  *See Judin v. United States*, 110 F.3d 780, 784-85 (Fed. Cir. 1997); *cf. Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1302-03 (Fed. Cir. 2004) (pre-suit investigation sufficient under § 285 when plaintiff obtained and tested accused product before filing suit); *Hoffmann-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1363-66 (Fed. Cir. 2000) (pre-suit investigation sufficient for Rule 11 and § 285 when plaintiff *attempted* to obtain confidential information regarding the accused process and then described in the complaint why those efforts were unsuccessful).  Jetaire's failure to obtain or inspect samples, or at the very least to ask for samples, before filing suit renders its pre-suit investigation inadequate and this case exceptional.  *Judin*, 110 F.3d at 784-85; *Q-Pharma*, 360 F.3d at 1302-03; *Hoffmann-La Roche*, 213 F.3d at 1363-66.

    **2)** <u>Jetaire Continued to Pursue a Legally Flawed Infringement Case After It Obtained AerSale's Technical Documents from *Jetaire I*.</u>

In January 2021, Jetaire obtained AerSale's technical schematics (in clear violation of the *Jetaire I* protective order) and then improperly maintained its infringement claims despite being on notice that: (1) the accused systems do not include "a scaled engineering drawing of a vertically-oriented cross-sectional profile of the fuel tank at each linear increment" as required by the '998 patent; (2) those technical drawings do not show a "channel void" as required by the '109 patent,

---

[11] Failure to satisfy Rule 11 is sufficient to find a case exceptional under § 285.  *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007) ("Rule 11 conduct, if so found by the district court, could [serve] as the basis for a separate, § 285 motion").

and (3) the AerSafe products have no block with the three cutouts required by the '541 patent.  *See Genentech, Inc. v. Sandoz Inc.*, 55 F.4th 1368, 1379 (Fed. Cir. 2022) (infringement "requires a finding that accused subject matter would meet the terms of a claim").  Jetaire was also on notice of these missing elements from AerSale's amended counterclaims.  *See* ECF 30 at ¶¶ 59-64 (drawings prepared outside of USA and are not scaled); 71-74 (no channel void); 83-84 (no block with three specified cutouts).  Had Jetaire performed even a superficial comparison of the schematics of the accused products to the asserted claims, the lack of these necessary elements and the implausibility of its infringement allegations would have been clear.  *See Blackbird Tech LLC v. Health in Motion LLC*, 944 F.3d 910, 916 (Fed. Cir. 2019) ("the exercise of even a modicum of due diligence by [plaintiff], as part of a pre-suit investigation, would have revealed the weaknesses in its litigation position").

Jetaire's unreasonable litigation strategy extended to a legally impermissible infringement theory that *ignored claim limitations* by omitting the "arcuate" requirement from the claims.[12]  *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1346 (Fed. Cir. 2001) ("[B]y defining the claim in a way that clearly excluded certain subject matter, the patent implicitly disclaimed the subject matter that was excluded and thereby barred the patentee from asserting infringement" under the DOE); *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1321 (Fed. Cir. 2015) (DOE cannot be used to "ignore the precise and specific structural limitations in the claims").  If Jetaire had wanted the claims to cover a rectilinear cutout, it could have omitted the word "arcuate" to broaden the claims.  *See Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 112 F. Supp. 3d 888, 894-95 (D. Minn. 2015) ("*Icon I*") (finding the case exceptional and noting the patent claim required "linear reciprocating displacement" and if the patentee

---

[12] *See, e.g.*, ECF 197 at ¶¶ 55-59.

"'wanted the claim to cover other types of nonlinear motion, such as an arcuate path, it could have simply omitted the term 'linear' to broaden the claims'") (quoting *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 496 F. App'x 57, 62-63 (Fed. Cir. 2012) ("*Icon II*")).  Asserting infringement based on an unreasonable claim construction, as Jetaire did here, is grounds for finding a case exceptional.  *See id.*; *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368-71 (Fed. Cir. 2012) (reversing denial of Rule 11 sanctions and remanding to reassess denial of a § 285 exceptional case when patentee relied on a proposed construction that "does not conform to the standard canons of claim construction").  Jetaire's improper attempt to omit the "arcuate" claim limitation supports an exceptional case finding.  *See, Icon II*, 496 F. App'x at 62-63.

Jetaire's improper infringement theory makes this case exceptional under § 285.  *Blackbird Tech*, 944 F.3d 910 (plaintiff's "flawed" claim construction position and infringement theory support finding of exceptional case); *Icon Health & Fitness*, 112 F. Supp. 3d at 894-95.

### D.      Jetaire Improperly Maintained Its Case Following Claim Construction.

Jetaire's unreasonable assertion that three blocks each having a cutout could satisfy the '541 patent's requirement for one block having three cutouts became more untenable after claim construction.  A plaintiff "must continually assess the soundness of pending infringement claims, especially after an adverse claim construction."  *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328-29 (Fed. Cir. 2013) (finding § 285 case when patent holder maintained baseless infringement claims following adverse claim construction).  Jetaire's assertion of its flawed theories after the adverse claim construction here further supports a finding of an exceptional case.

The plain language of the '541 patent requires a single block having three specific cutouts. Jetaire proposed the limitation could be met by three blocks, each with one of the required cutouts. (ECF 133 at 113.)  And while Jetaire *may* have mistakenly believed it had a good faith basis to assert infringement based on its proposed construction, any such basis evaporated entirely after

the claim construction process.  The Special Master found Jetaire's proposal to be "an incorrect reading of the claim" because "the claim language mentions only a single block among the array of blocks.  This single one must have all three kinds of cutouts. I do not see how the claim can be read any other way."  (*Id.*)  The Court then adopted the Special Master's recommendation, which fully endorsed AerSale's construction.  (*Id.* at 114; ECF 155.)  And Jetaire did not object or move for reconsideration, thereby accepting the construction.  (*See* ECF 169.)

Yet, Jetaire continued to assert infringement based on cutouts in multiple blocks, rather than a single block as required by this Court's construction.  (*See*, *e.g.*, ECF 197 at ¶¶ 53-54.) Maintaining those allegations in the face of an adverse claim construction supports an exceptional case finding.  *Taurus IP*, 726 F.3d at 1328-29.

### E.      Jetaire Improperly Hid Its Plagiarism and the SAE Paper from the PTO.

Mr. Williams committed inequitable conduct by copying large portions of the SAE Paper directly into the '998 patent—the parent of both the '109 and '541 patents—but never disclosed his plagiarism to the PTO.  Where, as here, an inventor engages in "pervasive misbehavior or inequitable conduct that affects all of the patents in suit," it is proper to find the case exceptional and award "all of the fees incurred" by the defendant.  *Rembrandt Techs., LP v. Comcast of Fla./Pa., LP (In re Rembrandt Techs. LP Patent Litig.)*, 899 F.3d 1254, 1280 (Fed. Cir. 2018); *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011) (inequitable conduct can spread to other patents in the same family).  Mr. Williams never disclosed that he copied portions from the SAE Paper and never informed the PTO that part of what he identified as the "Brief Summary of *the Invention*" (ECF 1-1 at columns 3-4 (emphasis added)) was taken word-for-word from the SAE Paper.

Patent applicants have a duty of candor to the PTO.  *Ohio Willow Wood Co. v. Alps S., LLC*, 813 F.3d 1350, 1358 n.4 (Fed. Cir. 2016) (duty of candor under 37 C.F.R. § 1.555(a) and 37

16

C.F.R. § 1.56); 37 C.F.R. § 1.56 (inventor's duty of candor to PTO includes duty to disclose "all information known to that individual to be material to patentability").  Mr. Williams was aware of ████████████████████████████████████████████ but failed to disclose his plagiarism of the SAE Paper (or the prior sales) in an IDS.  (ECF 315-3 at 49:16-50:3; ECF 1-1 at 1 ("References Cited").)  Awareness of the duty of candor coupled with a failure to disclose material information supports a finding of deceptive intent under a clear and convincing standard.  *Ohio Willow Wood Co. v. Alps S., LLC*, 813 F.3d 1350, 1358-59 (Fed. Cir. 2016) (awarding exceptional case fees after finding patent holder representative committed inequitable conduct by knowing of his duty of disclosure and failing to disclose documents contradicting patent holder's representations to the PTO).  There can be no dispute that the SAE Paper was material: Mr. Williams quoted it as describing "the Invention." (ECF 1-1 at col. 3-4.)  Moreover, AerSale's expert explained how the SAE Paper anticipated the '998 patent claims (ECF 315-12 at ¶¶ 77, 121, 141-143).  Coupled with his failure to disclose the prior sales, Mr. Williams's plagiarism demonstrates "pervasive misbehavior [and] inequitable conduct that affects all of the patents in suit," thereby making it proper for this Court to find the case exceptional and award "all of the fees [AerSale] incurred." *See In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d at 1280.

## V.      JETAIRE'S COUNSEL'S CONDUCT IS SANCTIONABLE UNDER § 1927.

Jetaire's counsel actively participated in the litigation misconduct, warranting § 1927 sanctions.  Sanctions under § 1927 should be awarded when counsel "'multiplies the proceedings … unreasonably and vexatiously.'" *Perryman v. Kiem (In re Micron Devises, Inc.)*, 657 B.R. 897, 902 (S.D. Fla. 2024) (quoting § 1927).  An attorney multiplies proceedings "unreasonably and vexatiously" by conduct that is "tantamount to bad faith." *See Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).  "[F]or purposes of § 1927, bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct"; "the district court must

17

compare the attorney's conduct against the conduct of a 'reasonable' attorney and make a judgment about whether the conduct was acceptable under some objective standard." *Id*. at 1239-40.

First, Jetaire's supplemental interrogatory response, provided over Jetaire's objection pursuant to Court order on November 12, 2024, reveals that Jetaire's counsel knew of and had considered at least the July 2014 Offer as part of its pre-filing investigation, but failed to produce it, or the other prior offers, during discovery, despite their clear relevance and responsiveness to AerSale's discovery requests and their damaging nature to Jetaire's case.  (*See supra* §§ II.A.1, II.B.1.)  Suppression of damaging evidence by litigants, counsel, and law firms is sanctionable under § 1927.  *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1543-44 (11th Cir. 1993) (sanctions awarded when "testing, design, and marketing" evidence was withheld from discovery and counsel "participated in the cover up of this damaging evidence"); *Santini v. Cleveland Clinic Fla.*, No. 98-6559-CIV-ZLOCH, 1999 U.S. Dist. LEXIS 23667, at *62-66 (S.D. Fla. Sept. 2, 1999) (counsel's concealment of damaging evidence constitutes bad faith; sanctioned under § 1927).

Second, after filing the case but before serving the complaint, Jetaire's counsel knew— thanks to documents they obtained in violation of the *Jetaire I* protective order—that none of AerSale's blocks contained an arcuate cutout as required to support infringement.  (*See supra* §§ II.B.2, IV.C.2.)  And third, Jetaire's counsel unreasonably continued to pursue the action after the adverse claim construction made clear that the '541 patent claims required one block with three specific cutouts—which AerSale's product did not have.  (*See supra* §§ II.B.3, IV.C.2.)

## VI.   **AERSALE SHOULD BE AWARDED PROFESSIONAL FEES.**

As shown above, there is ample justification to award AerSale its reasonable attorneys' fees under § 285 and § 1927.  Reasonable attorneys' fees are determined by the "lodestar" method in which the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate.  *Domond v. PeopleNetwork APS*, 750 F. App'x 844, 847-48 (11th Cir. 2018) (in 2018

noting that an average partner's rate in Miami was $655/hour); *Theragun, Inc. v. Golovan Ltd.*, No. 1:20-cv-22327, 2021 U.S. Dist. LEXIS 92787, at *4 (S.D. Fla. May 17, 2021).

Attorneys' fees are appropriate under § 1927 beginning at the point at which maintenance of an action is unjustified. *Phonometrics, Inc. v. ITT Sheraton Corp.*, 64 F. App'x 219 (Fed. Cir. 2003) (maintenance of patent infringement action unjustified in that action following adverse claim construction under Eleventh Circuit law). Here, this action was unjustified from January 26, 2021, when JA served the Complaint. (*See* ECF 9.) Had JA fairly evaluated its case in December 2020 prior to filing the Complaint, or even in January 2021 after improperly obtaining AerSale's nonpublic technical documents (but before serving the Complaint), AerSale would not have had to defend this meritless action. Since then, AerSale has incurred attorneys' fees defending this case of $2,256,127.21 (Declaration of Shawn Rafferty in Support of AerSale, Inc's Motion for Attorneys' Fees ("Rafferty Decl."), ¶ 25), as detailed in Rafferty Decl. Exhibits A and J. In the alternative, should the Court accept Jetaire's position that its pre-claim-construction infringement theories were reasonable, then AerSale respectfully requests its attorneys' fees starting from March 9, 2022, when the Special Master filed his claim construction recommendation, foreclosing Jetaire's infringement theories (which it maintained throughout the litigation).[13] The latter fees total $1,660,310.99 (Rafferty Decl. ¶ 26), as detailed in Rafferty Decl. Exhibits A and J.

The hourly rates for AerSale's counsel are reasonable and consistent with other awards in this District. Courts in this District recognize that patent litigation is a specialized area of the law that continues to command high attorney rates in South Florida. *Shipping & Transit, LLC v. 1A Auto, Inc.*, 283 F. Supp. 3d 1290, 1304 (S.D. Fla. 2017) (approving hourly rates of $830 for a

---

[13] While Jetaire objected to a portion of the Special Master's Report and Recommendation, it did not object to the portion requiring a single block having three specified cutouts. (*See* ECF 138.) Thus, there was no further dispute between the partied over that claim construction.

litigator with 30 years of experience and $530 for a sixth-year associate); *Tropical Paradise Resorts, Ltd. Liab. Co. v. JBSHBM, Ltd. Liab. Co.*, No. 18-CV-60912-BLOOM/VALLE, 2021 U.S. Dist. LEXIS 84584, at *24-26 (S.D. Fla. Apr. 30, 2021) (approving hourly rates of $841.50 and $787.50 for a litigators with 30 years and 19 years of experience, respectively); *Burrow, Inc. v. Euro Furniture & Design LLC*, No. 21-cv-22500, 2022 U.S. Dist. LEXIS 21409, at *9 (S.D. Fla. Feb. 7, 2022) (approving hourly rates of $790 for litigators with 30 years of experience, $650 for a litigator with 15 years of experience, and $550 for a litigator with 10 years of experience).

Expert fees are also recoverable under § 1927 and this Court's inherent authority. *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 910 (Fed. Cir. 2012) ("Because the district court did not err in finding this case exceptional under 35 U.S.C. § 285, and did not abuse its discretion in awarding expert witness fees under its inherent authority, we affirm."); *McDonough*, 2018 U.S. Dist. LEXIS 164084, at *12 (noting court has at least as much authority to issue § 1927 sanctions as it does under its own inherent power). Expert fees related to AerSale's defense of its patent case total $211,506.25 as set forth in greater detail in Rafferty Decl. Exhibits K-L.

AerSale also seeks its fees, to be determined, for bringing this motion. *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1301 (11th Cir. 2010) (allowing parties to recover cost of fee motions); *McDonough*, 2024 U.S. Dist. LEXIS 174420, at *5. In addition, AerSale seeks prejudgment and post-judgment interest on any amount awarded pursuant to § 285. *See, e.g.*, *Mathis & Vico Prods. Mfg. Co. v. Spears*, 857 F.2d 749, 761 (Fed. Circ. 1988) (a district court may award prejudgment interest on an award made under § 285); *Apotex, Inc. v. UCB, Inc.*, No. 12-cv-60706, 2015 U.S. Dist. LEXIS 176573, at *10 (S.D. Fla. Dec. 4, 2015) (awarding prejudgment interest under § 285).

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, AerSale respectfully requests that the Court finds this case to be "exceptional," and award AerSale its reasonable attorneys' fees incurred defending this action.

## VIII.   LOCAL RULE 7.3(A)(7) VERIFICATION

Counsel for AerSale has reviewed the detailed records of attorneys' fees and costs accrued in this case and verifies that those records are accurate.

## IX.   LOCAL RULE 7.1(A)(2) AND 7.3(A)(8) CERTIFICATION

The undersigned counsel certifies that the draft motion with draft attachments was served on Jetaire on November 22, 2024, and that the AerSale's counsel conferred in good faith with Jetaire's counsel to try to agree on entitlement to and the amount of fees.

<div style="margin-left: 40%">

*/s/ Amelia Toy Rudolph*
Amelia Toy Rudolph (Florida Bar No. 57015)
Shawn Rafferty (*pro hac vice*)
Valerie S. Sanders (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia  30309-3996
404-853-8000 (telephone)
404-853-8806 (facsimile)
amyrudolph@eversheds-sutherland.com
shawnrafferty@eversheds-sutherland.com
valeriesanders@eversheds-sutherland.com

and

Scott A. Penner (*pro hac vice*)
Regis C. Worley, Jr. (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
12255 El Camino Real, Suite 100
San Diego, California  92130-2071
858-252-6502 (telephone)
858-252-6503 (facsimile)
scottpenner@eversheds-sutherland.com
regisworley@eversheds-sutherland.com

*Attorneys for Defendant/Counter-Plaintiff AerSale, Inc.*

</div>

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 23, 2024, the foregoing **Defendant/Counter-Plaintiff AerSale, Inc.'s Motion for Attorneys' Fees** was electronically filed with the Clerk of Court using the CM/ECF filing system. I further certify that the foregoing document was served on all counsel of record via transmission of the Notice of Electronic Filing generated by the Court's CM/ECF system.

*/s/ Amelia Toy Rudolph*
Amelia Toy Rudolph
Florida Bar No. 57015